**FILED**

**NOVEMBER 7, 2007**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**07 C 6304**

**JUDGE MANNING**
**MAGISTRATE JUDGE DENLOW**

**J. N.**

EXHIBIT A



# NISSAN
# DEALER TERM SALES & SERVICE AGREEMENT

THIS AGREEMENT is entered into effective the day last set forth below by and between the Nissan Division of NISSAN MOTOR CORPORATION IN U.S.A., a California corporation, hereinafter called Seller, and the natural person or entity identified as "Dealer" in the Final Article of this Agreement.

## INTRODUCTION

The purpose of this Agreement is to establish Dealer as an authorized dealer of Nissan Products and to provide for the sale and servicing of Nissan Products in a manner that will best serve the interests of Seller, Dealer, other Authorized Nissan Dealers and owners and purchasers of Nissan Products. This Agreement sets forth: the rights which Dealer will enjoy as an Authorized Nissan Dealer; the responsibilities which Dealer assumes in consideration of its receipt of these rights; and the respective conditions, rights and obligations of Seller and Dealer that apply to Seller's grant to Dealer of such rights and Dealer's assumption of such responsibilities. It is understood that Dealer wishes an opportunity to qualify for a regular Nissan Dealer Sales & Service Agreement for Nissan Products and understands that for that purpose Dealer first must fulfill all of Dealer's undertakings hereinafter described.

This is a personal services Agreement. In entering into this Agreement and appointing Dealer as provided below, Seller is relying upon the personal qualifications, expertise, reputation, integrity, experience, ability and representations of the individual(s) named herein as Principal Owner(s) and Executive Manager.

Achievement of the purposes of this Agreement is premised upon mutual understanding and cooperation between Seller and Dealer. Dealer has entered into this Agreement in reliance upon Seller's integrity and expressed intention to deal fairly with Dealer and the consuming public. Seller has entered into this Agreement in reliance upon Dealer's integrity and ability and expressed intention to deal fairly with Seller and the consuming public.

It is the responsibility of Seller to market Nissan Products throughout the Territory. It is the responsibility of Dealer to actively promote the retail sale of Nissan Products and to provide courteous and efficient service of Nissan Products. The success of Seller and Dealer will depend on how well they each fulfill their respective responsibilities under this Agreement. It is recognized that: Nissan Motor Co., Ltd. (hereinafter called "Manufacturer") will endeavor to provide motor vehicles that offer outstanding value to the consuming public; Seller will endeavor to establish a national network of Authorized Nissan Dealers that can provide effective sales and service effort at the retail level; and Dealer will endeavor to fulfill its responsibilities through aggressive, sound, ethical selling practices and through conscientious regard for customer service.

Seller and Dealer shall refrain from engaging in conduct or activities which might be detrimental to or reflect adversely upon the reputation of Seller, Manufacturer, Dealer or Nissan Products and shall engage in no discourteous, deceptive, misleading or unethical practices or activities.

For consistency and clarity, terms which are used frequently in this Agreement have been defined in Section 1 of the Standard Provisions. All terms used herein which are defined in the Standard Provisions shall have the meaning stated in said Standard Provisions. These definitions should be read carefully for a proper understanding of the provisions in which they appear.

To achieve the purposes referred to above, Seller and Dealer agree as follows:

**ARTICLE FIRST: Appointment of Dealer**

Subject to the conditions and provisions of this Agreement, Seller:

(a) appoints Dealer as an Authorized Nissan Dealer and grants Dealer the non-exclusive right to buy from Seller those Nissan Products specified in Dealer's current Product Addendum hereto, for resale, rental or lease at or from the Dealership Location(s) established and described in accordance with Section 2 of the Standard Provisions; and

(b) grants Dealer a non-exclusive right, subject to and in accordance with Section 6.K of the Standard Provisions, to identify itself as an Authorized Nissan Dealer, to display the Nissan Marks in the conduct of its Dealership Operations and to use the Nissan Marks in the advertising, promotion and sale of Nissan Products in the manner provided in this Agreement.

**ARTICLE SECOND: Assumption of Responsibilities by Dealer**

Dealer hereby accepts from Seller its appointment as an Authorized Nissan Dealer and, in consideration of its appointment and subject to the other conditions and provisions of this Agreement, hereby assumes the responsibility for:

(a) establishing and maintaining at the Dealership Location(s) the Dealership Facilities in accordance with Section 2 of the Standard Provisions;

(b) actively and effectively promoting the sale at retail (and, if Dealer elects, the leasing and rental) of Nissan Vehicles within Dealer's Primary Market Area in accordance with Section 3 of the Standard Provisions;

(c) servicing Nissan Vehicles and for selling and servicing Genuine Nissan Parts and Accessories in accordance with Section 5 of the Standard Provisions;

(d) building and maintaining consumer confidence in Dealer and in Nissan Products in accordance with Section 5 of the Standard Provisions; and

(e) performance of the additional responsibilities set forth in this Agreement, including those specified in Section 6 of the Standard Provisions.

**ARTICLE THIRD: Ownership**

(a) Owners. This Agreement has been entered into by Seller in reliance upon, and in consideration of, the personal qualifications, expertise, reputation, integrity, experience, ability and representations with respect thereto of the Principal Owner(s) named in the Final Article of this Agreement and in reliance upon Dealer's representations concerning the ownership of Dealer as follows:

(i) Dealer represents and agrees that the person(s) named as Principal Owner(s) in the Final Article of this Agreement, and only those person(s), shall be the Principal Owner(s) of Dealer;

(ii) Dealer represents and agrees that the person(s) named as Other Owner(s) in the Final Article of this Agreement, and only those person(s), shall be the Other Owner(s) of Dealer.

(b) Holding Company. Seller requires that a natural person be named as the Principal Owner(s) of Dealer because Seller relies on the personal qualifications, expertise, reputation, integrity, experience, ability and representations of such individuals. If one or more of the owner(s) of Dealer is a corporation, partnership or other entity and not a natural person (hereinafter called "Holding Company"), Dealer and Seller agree that the natural persons listed in the Holding Company Addendum of this Agreement as owners of the Holding Company shall be deemed to be the Principal Owner(s) and Other Owner(s) of Dealer, as the case may be, and that

and Sections 12 and 15 of the Standard Provisions, shall apply to the owner(s) of the Holding Company as well as to Dealer. Dealer represents to Seller and agrees that the Holding Company is owned as indicated in the Holding Company Addendum to this Agreement.

(c) *Changes in Ownership.* In view of the fact that this is a personal services agreement and in view of its objectives and purposes, this Agreement and the rights and privileges conferred on Dealer hereunder are not assignable, transferable or salable by Dealer, and no property right or interest is or shall be deemed to be sold, conveyed or transferred to Dealer under this Agreement. Dealer agrees that any change in the owner-ship of Dealer specified herein requires the prior written consent of Seller, excepting only changes in the record or beneficial ownership interests of Other Owners not effecting a change in majority control or interest. Dealer shall give Seller prior notice of any proposed change in said ownership requiring the consent of Seller and immediate notice of the death or incapacity of any Principal Owner. No such change, and no assignment of this Agreement or of any right or interest herein, shall be effective against Seller unless and until embodied in an appropriate amendment to or assignment of this Agreement, as the case may be, duly executed and delivered by Seller and by Dealer. Seller shall not, however, unreasonably withhold its consent to any such change. Seller shall have no obligation to transact business with any person who is not named either as a Principal Owner or Executive Manager of Dealer hereunder or otherwise to give effect to any proposed sale or transfer of the ownership or management of Dealer prior to having concluded the evaluation of such a proposal as provided in Section 15 of the Standard Provisions.

## ARTICLE FOURTH: Management

(a) *Executive Manager.* Seller and Dealer agree that the retention by Dealer of qualified management is of critical importance to the successful operation of Dealer and to the achievement of the purposes and objec-tives of this Agreement. This Agreement has been entered into by Seller in reliance upon, and in consideration of, the personal qualifications, expertise, reputation, integrity, experience, ability and representations with respect thereto of the person named as Executive Manager in the Final Article of this Agreement and on Dealer's representation to Seller and agreement that the person identified as Executive Manager shall be Dealer's executive manager, shall have full managerial authority for the Dealership Operations, and shall continually provide his or her personal services in operating the dealership and will be physically present at the Dealership Facilities.

(b) *Changes in Management.* In view of the fact that this is a personal services Agreement and in view of its objectives and purposes, Dealer agrees that any change in the Executive Manager from that specified in the Final Article of this Agreement requires the prior written consent of Seller. Dealer shall give Seller prior notice of any proposed change in Executive Manager and immediate notice of the death or incapacity of any Executive Manager. No change in Executive Manager shall be effective unless and until embodied in an appropriate amendment to this Agreement duly executed and delivered by Seller and by Dealer. Subject to the foregoing, Dealer shall make its own, independent decisions concerning the hiring and firing of its employees, including without limitation, its Executive Manager.

To enable Seller to evaluate and respond to Dealer concerning any proposed change in Executive Manager, Dealer agrees to provide, in the form requested by Seller and in a timely manner, all applications and information customarily requested by Seller to evaluate the proposed change. While Seller shall not unreasonably withhold its consent to any such change, it is agreed that any successor Executive Manager must possess personal qualifica-tions, expertise, reputation, integrity, experience and ability which are, in the opinion of Seller, satisfactory. Seller will determine whether, in its opinion, the proposed change is likely to result in a successful dealership operation with capable management that will satisfactorily perform Dealer's obligations under this Agreement. Seller shall have no obligation to transact business with any person who is not named as an Executive Manager of Dealer hereunder prior to having concluded its evaluation of such person.

(c) *Evaluation of Management.* Dealer and Seller understand and acknowledge that the personal qualifica-tions, expertise, reputation, ability, integrity, experience and ability of the Executive Manager and his or her ability to effectively manage Dealer's day-to-day Dealership Operations is critical to the success of Dealer in performing its obligations under this Agreement. Seller may from time to time develop standards and/or pro-cedures for evaluating the performance of the Executive Manager and of Dealer's personnel generally. Seller may, from time to time, evaluate the performance of the Executive Manager and will advise Dealer and the Executive Manager of the results of such evaluations, and Dealer shall promptly take such action as may be required to correct any deficiencies in the Executive Manager's performance to the reasonable satisfaction of Seller.

## ARTICLE FIFTH: Additional Provisions

The additional provisions set forth in the attached "Nissan Dealer Sales and Service Agreement Standard Provisions", bearing form number NDA-4S/9-88 are hereby incorporated in and made a part of this Agreement excepting only the provisions contained in Sections 4, 14 and 16, which sections are deleted in their entirety from this Agreement and shall be of *no* force and effect. The Notice of Primary Market Area, Dealership Facilities Addendum, Product Addendum, Dealer Identification Addendum, Holding Company Addendum, if applicable, and all Guides referred to in this Agreement (including references contained in the Standard Provisions referred to above) are hereby incorporated in and made a part of this Agreement. Dealer further agrees to be bound by and comply with: the Warranty Manual; Seller's Manuals or Instructions heretofore or hereafter issued by Seller to Dealer; any amendment, revision or supplement to any of the foregoing; and any other manuals heretofore or hereafter issued by Seller to Dealer.

## ARTICLE SIXTH: Termination of Prior Agreements

This Agreement cancels, supersedes and annuls all prior contracts, agreements and understandings except as stated herein, all negotiations, representations and understandings being merged herein. No waiver, modifica-tion or change of any of the terms of this Agreement or change or erasure of any printed part of this Agreement or addition to it (except filling of blank spaces and lines) will be valid or binding on Seller unless approved in writing by the President or an authorized Vice-President of Seller.

## ARTICLE SEVENTH: Term

This Agreement shall have a term commencing on the effective date hereof and, subject to its earlier termina-tion in accordance with the provisions of this Agreement, expiring on the expiration date indicated in the Final Article of this Agreement. Subject to other applicable provisions of this Agreement, this Agreement shall automatically terminate at the end of such stipulated term without any action by either Dealer or Seller.

## ARTICLE EIGHTH: License of Dealer

If Dealer is required to secure or maintain a license for the conduct of its business as contemplated by this Agreement in any state or jurisdiction where any of its Dealership Operations are to be conducted or any of its Dealership Facilities are located, this Agreement shall not be valid until and unless Dealer shall have furnished Seller with written notice specifying the date and number, if any, of such license or licenses issued to Dealer, Dealer shall notify Seller immediately in writing if Dealer shall fail to secure or maintain any and all such licenses or renewal thereof or, if such license or licenses are suspended or revoked, specifying the

**ARTICLE NINTH: Initiation of Legal Proceedings**

Should a proceeding of any nature be filed with or initiated by any Court or administrative body seeking to prevent or delay Seller from entering into a Nissan Dealer Sales & Service Agreement with Dealer and/or seeking damages resulting from Seller doing so, Seller shall be under no obligation to do so, so long as such proceeding is pending, and if, as a result of such proceeding, Seller shall be enjoined or prevented from entering into a Nissan Dealer Sales & Service Agreement with Dealer, any offer made pursuant to Article Twelfth shall be void, and Seller shall have no liability to Dealer for any damages which Dealer may suffer thereby.

**ARTICLE TENTH: Breach By Dealer**

Dealer's failure to carry out fully all of the terms and provisions of this Agreement, including those terms and provisions incorporated herein by reference, shall be a breach of the entire Agreement, and Seller shall be under no obligation to Dealer to extend this Agreement in whole or in part or to enter into a regular Nissan Dealer Sales & Service Agreement with Dealer or be under any other obligation to Dealer.

Upon Dealer's failure to meet any interim deadlines set forth in Article Twelfth of this Agreement or the occurrence of any of the other events warranting termination of this agreement as set forth in Section 12 of the Standard Provisions, Seller may terminate this Agreement, prior to the expiration date hereof, by giving Dealer written notice thereof, such termination to be effective upon the date specified in such notice, or such latter date as may be required by any applicable statute.

**ARTICLE ELEVENTH: Execution of Agreement**

This Agreement, and any Addendum or amendment or notice with respect thereto, shall be valid and binding on Seller only when it bears the signature of either the President or an authorized Vice-President of Seller and, when such signature is a facsimile, the manual countersignature of an authorized employee of Seller and a duplicate original thereof is delivered personally or by mail to the Dealership Location. This Agreement shall bind Dealer only when it is signed by: a duly authorized officer or executive of Dealer if a corporation; one of the general partners of Dealer if a partnership; or Dealer if an individual.

**ARTICLE TWELFTH: Conditions of Seller's Offer**

If this Agreement is not terminated prior to the expiration date set forth in the Final Article, Seller may offer to enter into as of such date a Nissan Dealer Sales & Service Agreement in such form as may be in use by Seller at such time. Seller will make the offer and Dealer may accept such offer only if Dealer has fulfilled and continues to fulfill, during the term of this Agreement and at the expiration thereof, all of the following conditions, each of which Dealer understands and agrees to be reasonable and necessary:

(a) Comply with Seller's net working capital and net worth requirements as specified in Section 6.E and in amount not less than the Guides therefor as specified in the Final Article of this Agreement;

(b) Provide Seller, on or before the tenth day of each month, on such forms as may be designated by Seller, with the financial and operating statement specified in Section 6.G.1 of the Standard Provisions;

(c) If New Dealership Facilities are required under Article Twelfth (d), below:

(i) Complete the acquisition and installation, at the New Dealership Facilities, of signs, furniture, furnishings, tools and equipment as required by Seller for Dealer's New Dealership Facilities;

(ii) Employ that number of qualified persons to operate the dealership as required by Seller for Dealer's New Dealership Facilities;

(iii) Comply with all other of Seller's requirements for Dealer to operate the New Dealership Facilities and qualify in all other respects for a Nissan Dealer Sales & Service Agreement;

(iv) Comply with all federal, state and local governmental licensing and other requirements for Dealer to do business as an Authorized Nissan Dealer at the New Dealership Facilities;

(d) New Dealership Facilities (or upgrade to existing Dealership Facilities, if applicable):

   **See Exhibit A which is incorporated by this reference into this Agreement for all purposes**

(e) Other Conditions (if any):

**ARTICLE THIRTEENTH: Special Conditions**

## FINAL ARTICLE

Dealer ___Jim M'Lady Oldsmobile, Inc._____ is

a(an) (SELECT ONE) [ ] individual   [ ] partnership   [X] corporation,

incorporated or formed under the laws of the State of ___Delaware___ doing business

as ___Jim M'Lady Nissan_____

("Dealer"). Dealer is located in ___Crystal Lake___   ___IL___
                                       City              State

The Principal Owner(s) of Dealer are as follows:

| NAME | RESIDENCE | PERCENTAGE INTEREST |
|------|-----------|---------------------|
| James G. M'Lady | 7312 Inverway<br>Crystal Lake, IL 60014 | 100.00% |

The Other Owner(s) of Dealer are as follows:

| NAME | RESIDENCE | PERCENTAGE INTEREST |
|------|-----------|---------------------|
|      |           |                     |

The Executive Manager of Dealer is as follows:

| NAME | RESIDENCE | PERCENTAGE INTEREST |
|------|-----------|---------------------|
| James G. M'Lady | 7312 Inverway<br>Crystal Lake, IL 60014 | 100.00% |

Expiration Date                              April 1, 1995
Working Capital Guide Requirement:           $ 583,960
Net Worth Guide Requirement:                 $ 785,770

IN WITNESS WHEREOF, the parties hereto have executed this Agreement in triplicate as of
May 21       19 92   at Carson, California.

DEALER:       Jim M'Lady Oldsmobile, Inc.

By _____

Title ___President___

SELLER:
NISSAN DIVISION
NISSAN MOTOR CORPORATION IN U.S.A.

By ___Earl J. Hertzberg_____
        Vice President
Title ___General Manager, Nissan Division___

By _____

MANAGER DEALER



## EXHIBIT A

This Exhibit is incorporated by reference in and is a part of the Nissan Dealer Term Sales & Service Agreement between Dealer and Seller dated _____ May 21 _____, 19 92 .

Article ____ Twelfth ____ ( ___ d ___ ) is hereby amended to read as follows:

Provide new exclusive Nissan Dealership Facilities of a size, appearance, and layout meeting Seller's approval and in accordance with the Guides established by Seller. "Provide" as used herein shall mean either (a) complete construction of a new Dealership Facilities on a site and according to plans approved by Seller; or (b) complete acquisition of a separate Nissan showroom on a site and of a style and layout approved by Seller; or (c) complete remodeling of Dealership Facilities to a size, style, and layout approved by Seller, all in accordance with final architectural plans to be submitted and approved by Seller as follows:

    (a)  Dealer shall submit plans for the construction of the Dealership Facilities for Seller's approval on or before April 1, 1994; and

    (b)  Dealer shall submit a signed contract for the construction of the Dealership Facilities on or before July 1, 1994; and

    (c)  Dealer shall commence construction of the Dealership Facilities on or before October 1, 1994; and

    (d)  Dealer shall complete construction of the Dealership Facilities on or before April 1, 1995; and

The new Dealership Facilities must be fully operational on or before the expiration of the term of this Agreement. Failure by the Dealer to meet any of the deadlines set forth above shall constitute a material breach of the agreement.

**DEALER:**

Jim M'Lady Oldsmobile, Inc.
(Name)

Jim M'Lady Nissan
(Doing Business As)

By _Jim M'Lady Pres_
(SIGNATURE)

Jim M'Lady, President
(TYPE NAME & TITLE)

Crystal Lake, Illinois
City                State

3079
Dealer Code

**SELLER:**
NISSAN DIVISION
NISSAN MOTOR CORPORATION IN U.S.A.

By _Earl J. Hesterberg_
VICE PRESIDENT
General Manager, Nissan Division
(TYPE NAME & TITLE)

By _____
(SIGNATURE)
MANAGER, DEALER
MARKET REPRESENTATION



**PRODUCT ADDENDUM
TO
NISSAN SALES AND SERVICE AGREEMENT**

Pursuant to Sections I.B, I.C and I.X of the Nissan Dealer Sales & Service Agreement (the "Agreement") in effect between the Authorized Nissan Dealer named below and Nissan North America, Inc. ("Seller"), Seller hereby grants Dealer the non-exclusive right to buy for resale the Nissan Products identified below:

(1) Nissan Cars and Trucks

| VERSA | MAXIMA | XTERRA | TITAN |
|-------|--------|--------|-------|
| SENTRA | 350Z | PATHFINDER | ARMADA |
| ALTIMA | FRONTIER | MURANO | QUEST |

(2) Genuine Nissan Parts for Nissan Cars and Trucks;
(3) Genuine Nissan Accessories for such Vehicles (this includes all other products offered by Nissan for dealers and consumers), and.
(4) All other products and services branded with Nissan and offered by Nissan North America or Nissan Extended Service North America (NESNA) for sale to consumers; promoted through an authorized Nissan dealer.

This Product Addendum shall remain in effect unless and until superseded by a new Product Addendum issued to Dealer by Seller. This Product Addendum cancels and supersedes any previous Product Addendum furnished to Dealer by Seller pursuant to the existing terms of the Agreement.

This Product Addendum is effective as of July 6, 2006 or such later date, as may be required by any applicable statute.

**DEALER:**
**JIM M'LADY OLDSMOBILE, INC.**

Doing Business As:
**JIM M'LADY NISSAN**

City:
**CRYSTAL LAKE**

State:
**IL**

Dealer Code:
**3079**

**SELLER:**
NISSAN DIVISION
NISSAN NORTH AMERICA, INC.

By: Brad Bradshaw
Vice President
General Manager, Nissan Division

By: Allen H. Childs
Regional Vice President
North Central Region

(File this Addendum with Current Sales & Service Agreement)

EXHIBIT B

# AMENDMENT NO. 1
## TO
## NISSAN DEALER TERM
## SALES AND SERVICE AGREEMENT

This Agreement of Amendment is entered into and effective May 12, 1994 by and between the Nissan Division of NISSAN MOTOR CORPORATION IN U.S.A., a California corporation (hereinafter "Seller"), and JIM M'LADY OLDSMOBILE, INC., an Illinois corporation (hereinafter "Dealer") dba Jim M'Lady Nissan .

## RECITALS

Effective May 21, 1992, Seller and Dealer entered into a Nissan Dealer Term Sales and Service Agreement (hereinafter "the Agreement"). Seller and Dealer desire to amend the Agreement to reflect a term extension and changes to Article Twelfth (d).

THEREFORE, the parties hereby agree to amend the Agreement as follows:

1.      The "Expiration Date" as stated in the Final Article is hereby amended to read as follows:

"Expiration Date:  November 1, 1996."

2.      ARTICLE TWELFTH (d) is hereby amended to read as follows:

Dealer shall complete the expansion and remodeling of the Dealership Facilities so as to provide Dealership Facilities of a size, appearance and layout meeting Seller's approval in accordance with the Guides established by Seller and all in accordance with final architectural plans to be submitted and approved in advance by Seller, as follows:

2.1     SERVICE FACILITIES

(a)     On or before June 1, 1994 Dealer shall commence construction/renovation of the Dealership Service Facilities; and

(b)     On or before October 1, 1994 Dealer shall complete construction/renovation of the Dealership Service Facilities and have them fully operational.

2.2     SALES FACILITIES

(a)     On or before January 1, 1996 Dealer shall submit for Seller's approval plans for the construction/renovation of the Exclusive Nissan Showroom; and

(b)     On or before March 1, 1996 Dealer shall submit to Seller a signed contract for the construction/renovation of the Exclusive Nissan Showroom; and

(c)     On or before June 1, 1996 Dealer shall commence construction/renovation of the Exclusive Nissan Showroom; and

(d)     On or before November 1, 1996 Dealer shall complete the construction/renovation of the Exclusive Nissan Showroom and have it fully operational.

The Dealership Facilities must be fully operational on or before the expiration of the term of this Agreement. Failure by Dealer to meet any of the interim deadlines set forth above shall constitute a material breach of this Agreement.

Amendment Number : 1
Dealer : JIM M'LADY OLDSMOBILE, INC.


The terms and conditions of the Agreement, to the extent not modified herein, shall remain in full force and effect and shall continue to bind the parties hereto.

IN WITNESS WHEREOF, the parties have executed this Agreement in duplicate as of the day and year first above written.

DEALER

JIM M'LADY OLDSMOBILE, INC.
dba Jim M'Lady Nissan


By _____
James G. M'Lady
President

SELLER

NISSAN DIVISION
NISSAN MOTOR CORPORATION IN U.S.A.


By _____
Earl J. Hesterberg
Vice President
General Manager, Nissan Division


By _____
Roger Jolicoeur
Regional General Manager
North Central Region

EXHIBIT C

**AMENDMENT NO. 2**
**TO**
**NISSAN DEALER TERM**
**SALES AND SERVICE AGREEMENT**

This Agreement of Amendment is entered into and effective September 27, 1994 by and between the Nissan Division of NISSAN MOTOR CORPORATION IN U.S.A., a California corporation (hereinafter "Seller"), and JIM M'LADY OLDSMOBILE, INC., an Illinois corporation (hereinafter "Dealer") dba Jim M'Lady Nissan .

**RECITALS**

Effective May 21, 1992, Seller and Dealer entered into a Nissan Dealer Term Sales and Service Agreement (hereinafter "the Agreement") which was amended May 12, 1994. Seller and Dealer desire to amend the Agreement to reflect changes to Article Twelfth (d).

THEREFORE, the parties hereby agree to amend the Agreement as follows:

1.     ARTICLE TWELFTH (d) is hereby amended to read as follows:

Dealer shall complete the expansion and remodeling of the Dealership Facilities so as to provide Dealership Facilities of a size, appearance and layout meeting Seller's approval in accordance with the Guides established by Seller and all in accordance with final architectural plans to be submitted and approved in advance by Seller, as follows:

2.1   SERVICE FACILITIES

(a)     On or before March 31, 1995 Dealer shall complete construction/renovation of the Dealership Service Facilities and have them fully operational.

2.2   SALES FACILITIES

(a)     On or before January 1, 1996 Dealer shall submit for Seller's approval plans for the construction/renovation of the Exclusive Nissan Showroom; and

(b)     On or before March 1, 1996 Dealer shall submit to Seller a signed contract for the construction/renovation of the Exclusive Nissan Showroom; and

(c)     On or before June 1, 1996 Dealer shall commence construction/renovation of the Exclusive Nissan Showroom; and

(d)     On or before November 1, 1996 Dealer shall complete the construction/renovation of the Exclusive Nissan Showroom and have it fully operational.

The Dealership Facilities must be fully operational on or before the expiration of the term of this Agreement. Failure by Dealer to meet any of the interim deadlines set forth above shall constitute a material breach of this Agreement.

The terms and conditions of the Agreement, to the extent not modified herein, shall remain in full force and effect and shall continue to bind the parties hereto.

Amendment Number : 1
Dealer : JIM M'LADY OLDSMOBILE, INC.


IN WITNESS WHEREOF, the parties have executed this Agreement in duplicate as of the day and year first above written.

DEALER

JIM M'LADY OLDSMOBILE, INC.
dba Jim M'Lady Nissan


By _____
James G. M'Lady
President

SELLER

NISSAN DIVISION
NISSAN MOTOR CORPORATION IN U.S.A.


By _____
Earl J. Hesterberg
Vice President
General Manager, Nissan Division


By _____
Roger Jolicoeur
Regional General Manager
North Central Region

EXHIBIT D

# AMENDMENT NO. 3

## TO

## NISSAN DEALER TERM

## SALES AND SERVICE AGREEMENT

This Agreement of Amendment is entered into and effective April 27, 1995 by and between the Nissan Division of NISSAN MOTOR CORPORATION IN U.S.A., a California corporation (hereinafter "Seller"), and JIM M'LADY OLDSMOBILE, INC., an Illinois corporation (hereinafter "Dealer") dba Jim M'Lady Nissan.

## RECITALS

Effective May 21, 1992, Seller and Dealer entered into a Nissan Dealer Term Sales and Service Agreement (hereinafter "the Agreement") which was amended September 27, 1994, May 12, 1994. Seller and Dealer desire to amend the Agreement to reflect a personal address change.

THEREFORE, the parties hereby agree to amend the Agreement as follows:

1.     The identification of Owner(s) and Executive Manager in the Final Article is hereby amended to read as follows:

"The Principal Owner(s) of Dealer are as follows:

| NAME | RESIDENCE | PERCENTAGE INTEREST |
|------|-----------|---------------------|
| James G. M'Lady | 6 Raintree Barrington Hills, IL 60010 | 100.00% |

The Other Owner(s) of Dealer are as follows:

| NAME | RESIDENCE | PERCENTAGE INTEREST |
|------|-----------|---------------------|
| NONE | NONE | NONE |

The Executive Manager of Dealer is as follows:

| NAME | RESIDENCE | PERCENTAGE INTEREST |
|------|-----------|---------------------|
| James G. M'Lady | 6 Raintree Barrington Hills, IL 60010 | 100.00% |

The terms and conditions of the Agreement, to the extent not modified herein, shall remain in full force and effect and shall continue to bind the parties hereto.

Amendment Number : 3
Dealer : JIM M'LADY OLDSMOBILE, INC.


       IN WITNESS WHEREOF, the parties have executed this Agreement in duplicate as of the day and year first above written.

DEALER

JIM M'LADY OLDSMOBILE, INC.
dba Jim M'Lady Nissan

By   _____
James G. M'Lady
President

SELLER

NISSAN DIVISION
NISSAN MOTOR CORPORATION IN U.S.A.

By   _____
Earl J. Hesterberg
Vice President
General Manager, Nissan Division

By   _____
Patrick W. Doody
Regional General Manager
North Central Region

EXHIBIT E

AMENDMENT NO. 4
TO
NISSAN DEALER TERM
SALES AND SERVICE AGREEMENT

This Agreement of Amendment is entered into and effective May 18, 1998 by and between the Nissan Division of NISSAN MOTOR CORPORATION U.S.A., a California corporation (hereinafter "Seller"), and JIM M'LADY OLDSMOBILE, INC., an Illinois corporation (hereinafter "Dealer") dba Jim M'Lady Nissan.

## RECITALS

Effective May 21, 1992, Seller and Dealer entered into a Nissan Dealer Term Sales and Service Agreement (hereinafter "the Agreement") which was amended April 27, 1995, September 27, 1994, and May 12, 1994. Seller and Dealer desire to amend the Agreement to reflect a term extension and changes to Article Twelfth (d).

THEREFORE, the parties hereby agree to amend the Agreement as follows:

1.     The "Expiration Date" as stated in the Final Article is hereby amended to read as follows:

"Expiration Date:  May 1, 1999."

2.     ARTICLE TWELFTH (d) is hereby amended to read as follows:

2.1  SERVICE FACILITIES

(a)  The terms and conditions have been completed and are deleted in their entirety.

2.2  SALES FACILITIES

(a)  On or before July 1, 1998 Dealer shall submit for Seller's approval plans for the construction/renovation of the Exclusive Nissan Showroom; and

(b)  On or before September 1, 1998 Dealer shall submit to Seller a signed contract for the construction/renovation of the Exclusive Nissan Showroom; and

(c)  On or before November 1, 1998 Dealer shall commence construction/renovation of the Exclusive Nissan Showroom; and

(d)  On or before May 1, 1999 Dealer shall complete the construction/renovation of the Exclusive Nissan Showroom and have it fully operational.

2.3  BINDING ARBITRATION

Exclusive Remedy

The parties acknowledge that, at the state and federal levels, various courts and agencies would, in the absence of this Amendment No. 4, be available to them to resolve claims or controversies which might arise between them.  The parties agree that it is inconsistent with their relationship for either to use courts or governmental agencies to resolve such claims or controversies.

NU. 959   P002

Amendment Number : 4
Dealer : JIM M'LADY OLDSMOBILE, INC.

THEREFORE, CONSISTENT WITH THE PROVISIONS OF THE UNITED STATES ARBITRATION ACT (9 U.S.C. §§ 1 et seq.), NISSAN AND DEALER AGREE THAT BINDING ARBITRATION AS OUTLINED IN THIS AMENDMENT NO. 4 SHALL BE THE EXCLUSIVE MECHANISM FOR RESOLVING ANY DISPUTE, CONTROVERSY OR CLAIM ARISING OUT OF OR RELATING IN ANY WAY TO THIS AGREEMENT AND AMENDMENT NO. 4, INCLUDING BUT NOT LIMITED TO CLAIMS UNDER ANY STATE OR FEDERAL STATUTES (hereinafter "Disputes").

All Disputes arising out of the Nissan Dealer Sales and Service Agreement, including this Amendment No. 4, (hereinafter referred to collectively as the "Agreement") must be submitted to Binding Arbitration with JAMS/ENDISPUTE, an independent and professional agency providing arbitration services, unless that step is waived by written agreement of the parties. Should any party need to enforce this "Agreement" through arbitration, then the prevailing party shall be entitled to recover all of its costs (including attorney fees) from the other party. All awards of the arbitration are binding and non-appealable except as otherwise provided in the United States Arbitration Act. Judgment upon any award rendered by the arbitrator(s) may be entered and enforced in any court having jurisdiction.

Section 16 of the Standard Provisions is deleted in its entirety.

The new Dealership Facilities must be fully operational on or before the expiration of the term of this Agreement. Failure by Dealer to meet any of the interim deadlines set forth above to provide the facilities described, by May 1, 1999, shall constitute a material breach of the Agreement and shall constitute good cause for termination under Sections 710/4(e)(6) and 710/12 of the 815 Illinois Comp. Statute or any successor statute. Nissan will not be obligated to offer any further extensions.

The terms and conditions of the Agreement, to the extent not modified herein, shall remain in full force and effect and shall continue to bind the parties hereto.

IN WITNESS WHEREOF, the parties have executed this Agreement in triplicate as of the day and year first above written.

DEALER

JIM M'LADY OLDSMOBILE, INC.
dba Jim M'Lady Nissan

By _____
James G. M'Lady
President

SELLER

NISSAN DIVISION
NISSAN MOTOR CORPORATION U.S.A.

By _____
Michael J. Scergy
Vice President
General Manager, Nissan Division

By _____
Patrick W. Doody
Regional Vice President
North Central Region

EXHIBIT F



# NISSAN NORTH AMERICA, INC.

April 14, 1999

*Personal and Confidential*
*Via Certified Mail – Return Receipt Requested*

Mr. James G. M'Lady, Dealer Principal
Jim M'Lady Oldsmobile, Inc. dba Jim M'Lady Nissan
5656 Northwest Hwy
Crystal Lake, IL 60014

Re: **Notice of Default Pursuant to the Nissan Dealer Sales and Service Agreement and Chapter 815, Sections 710 et seq. of the Illinois Compiled Statutes**

Dear Mr. M'Lady:

On May 21, 1992, Jim M'Lady Nissan ("Dealer") entered into a Nissan Dealer Term Sales and Service Agreement (the "Agreement") with Nissan North America, Inc., formerly Nissan Motor Corporation in U.S.A., ("Nissan" and "Seller") which established Dealer as an authorized dealer of Nissan Products. Dealer agreed under the terms and conditions of the Agreement, to assume certain obligations and responsibilities as a Nissan Dealer in exchange for the rights granted to it under the Agreement. Nissan believes that Dealer has failed to comply with its obligations under the Agreement as follows:

## ARTICLE TWELFTH (d)  2.2  SALES FACILITIES

Dealer was originally placed on a Term Agreement to provide new exclusive Nissan Dealership Facilities on or before the expiration date of the Agreement on April 1, 1995. At dealer's request, the deadline for completion and operation of the new exclusive Nissan Dealership Facilities was extended and the Agreement was amended on May 12, 1994 with separate deadlines established for Service Facilities (October 1, 1994) and for Sales Facilities (November 1, 1996). At dealer's request again, the Agreement was amended on September 27, 1994 to extend the completion date of the service portion to March 31, 1995. Dealer's new Nissan service facilities were completed and operational on November 20, 1995. At dealer's request, the Agreement was amended for the third time to provide new Nissan exclusive sales facilities; Amendment No. 4 was executed on May 18, 1998 for a further extension for the completion date of the sales facilities to May 1, 1999. Dealer's current Term Agreement is scheduled to expire on May 1, 1999.

Under Amendment No. 4, effective May 18, 1998, Dealer agreed to provide new exclusive Nissan Dealership Sales Facilities of a size, appearance, and layout meeting Seller's approval and in accordance with the Guides established by Seller and to complete the construction of the Sales Facilities in accordance with the following schedule:

Mr. James G. M'Lady
April 14, 1999
Page 2

## ARTICLE TWELFTH (d)  2.2  SALES FACILITIES

(a)    On or before July 1, 1998 Dealer shall submit for Seller's approval plans for the construction/renovation of the Exclusive Nissan Showroom; and

(b)    On or before September 1, 1998 Dealer shall submit to Seller a signed contract for the construction/renovation of the Exclusive Nissan Showroom; and

(c)    On or before November 1, 1998 Dealer shall commence construction/renovation of the Exclusive Nissan Showroom; and

(d)    On or before May 1, 1999 Dealer shall complete the construction/renovation of the Exclusive Nissan Showroom and have it fully operational.

The new Dealership Facilities must be fully operational on or before the expiration of the term of this Agreement.  Failure by Dealer to meet any of the interim deadlines set forth above to provide the facilities described by May 1, 1999, shall constitute a material breach of the Agreement and shall constitute good cause for termination under Sections 710/4(e)(6) and 710/12 of the 815 Illinois Comp. Statute or any successor statute.  Nissan will not be obligated to offer any further extensions.

Since 1995, Nissan has tried to work with you to accommodate the delays and difficulties that arose regarding the acquisition of the property for the Nissan Showroom. In reliance upon your representations regarding the need for additional time due to the pending dispute and litigation over an option to purchase the land with the owner of the real estate where the Nissan dealership facilities is located, Nissan granted your requests for extensions on several occasions.  Subsequently, you prevailed in that litigation and on appeal, the matter settled and in September 1998, you advised Nissan's North Central regional office that the property for the Nissan Showroom was scheduled to close on October 16, 1998 and you committed to immediately begin the Showroom construction once the property was secured.  As of this date, you have failed to complete your obligations for the first three interim deadlines and it appears that it will be impossible for you to complete the construction of the new Showroom and have it fully operational before the final deadline and expiration of the Term Agreement on May 1, 1999.  In addition, dealer has continued to ignore Nissan's written and oral requests upon expiration of each interim step to provide a status and written proposal outlining how dealer intends to provide fully completed and operational new Nissan sales facilities on or before May 1,

451539v1

Mr. James G. M'Lady
April 14, 1999
Page 3

1999.  Dealer's term agreement is now scheduled to expire in two weeks, and dealer still has not commenced construction or provided a commitment to a scheduled completion of a new Nissan sales facility.

Based on the foregoing, Nissan believes that Dealer has breached the Agreement under Article Twelfth (d) in a manner that warrants termination of your Agreement.  To correct this default, and in accordance with Chapter 815, Section 710/2 (v) of the Illinois Compiled Statutes, Nissan will require Dealer within sixty (60) days of receipt of this Notice of Default to fulfill your obligations to complete the new exclusive Nissan Showroom or provide your commitment to commence construction within 60 days and a scheduled completion date of the Showroom satisfactory to Nissan.  Your failure to complete these requirements within the 60-day period will constitute a material breach of your Agreement, and may result in Nissan issuing a Notice of Termination under Section 12.A of the Agreement.

Nissan does not waive any additional breaches of the Agreement that may exist now or in the future, or to its right to issue a Notice of Termination or Notice of Default as to such breach or breaches at a later time.

If any clarification or assistance is required regarding the foregoing, please contact the North Central Region, Regional Vice President, Patrick Doody.

Sincerely,

NISSAN NORTH AMERICA, INC.
NISSAN DIVISION


Michael J. Seergy
Vice President
General Manager, Nissan Division

Patrick W. Doody
Regional Vice President
North Central Region


cc:    *Certified Mail-Return Receipt Requested*
       James G. M'Lady
       6 Raintree, Barrington Hills, IL 60010

       P. Roche

bc:    J. Connor
       K. Hamilton
       V. Schmitt
       National Market Rep.
       Dealer file

EXHIBIT G



# NISSAN NORTH AMERICA, INC.

June 25, 1999

<u>***Sent Certified Mail – Return Receipt Requested***</u>

Mr. James G. M'Lady, Dealer Principal
Jim M'Lady Oldsmobile, Inc. dba Jim M'Lady Nissan
5656 Northwest Highway
Crystal Lake, IL 60014

Re: **Extension of Notice of Default Pursuant to Chapter 815,**
    **Sections 710 et seq. of the Illinois Compiled Statutes**

Dear Mr. M'Lady:

By letter dated April 14, 1999, Nissan provided you with written notice that you breached the Nissan Dealer Term Sales and Service Agreement ("the Agreement") between Jim M'Lady Oldsmobile, Inc. dba Jim M'Lady Nissan ("Dealer") and Nissan North America, Inc. formerly, Nissan Motor Corporation in U.S.A. ('Nissan") under Article Twelfth (d) in a manner that warranted termination of your Agreement. Nissan offered you a sixty (60) day period within which to correct the default and fulfill your obligations to complete the new exclusive Nissan Showroom or provide your commitment to commence construction within 60 days and a scheduled completion date of the Showroom satisfactory to Nissan.

In a letter to Nissan's North Central Region dated May 17, 1999, you advised Nissan that you have contracted with Yother-Strate & Associates and submitted a $5,000 deposit to that design firm to begin the design process for the new exclusive Nissan Showroom. You expect to have a final set of plans by August 1999, and begin construction by December 1999.

In reliance upon your commitment to fulfill your obligations under the Agreement to provide new exclusive Nissan Dealership Sales Facilities, Nissan is willing to provide you with an additional period to substantially correct Dealer's failure to fulfill its responsibilities under Article Twelfth (d) of the Agreement with respect to the new exclusive Nissan Showroom.

Accordingly, this is to notify you that Nissan will give you an additional one hundred-eighty (180) day extension, expiring on December 14, 1999, upon which to either commence construction or provide Nissan with a new Nissan Exclusive Showroom Facility. We will be in touch with you on an ongoing basis during the additional 180 day

Mr. James G. M'Lady, Dealer Principal
June 25, 1999
Page 2

period to record and monitor your progress. Should the dealership fail to correct the default and cure the operational deficiencies upon which the dealership currently is operating under by December 14, 1999, Nissan will have no alternative but to pursue its remedies afforded under Section 12 of the Agreement, including but not limited to, termination of the Agreement.

Nissan does not waive its right to raise any additional breaches of the Agreement that may exist now or in the future, or to issue a Notice of Termination or Notice of Default pertaining to such breach or breaches at a later time.

If any clarification or assistance is required regarding the foregoing, please contact the North Central Regional Vice President, Patrick W. Doody.


Sincerely,

NISSAN NORTH AMERICA, INC.
NISSAN DIVISION


Patrick W. Doody                           Jed E. Connelly, Vice President
Regional Vice-President                    General Manager, Nissan Division
North Central Region


c:    Pat Roche
      James G. M'Lady  (Sent Certified Mail - Return Receipt Requested)
      6 Raintree, Barrington Hills, IL 60010

bc:   J. Connor
      K. Hamilton
      V. Schmitt
      National Market Rep.
      Dealer File

EXHIBIT H

# STATE OF ILLINOIS
## MOTOR VEHICLE REVIEW BOARD
### August 1, 2007

Jim M'Lady Oldsmobile Inc.
      Complainant

vs.

FILE NO. MVRB 186-07

Nissan North America, Inc.
      Respondent

## ORDER SCHEDULING A HEARING

YOU ARE HEREBY NOTIFIED THAT pursuant to a request by the Complainant a hearing in the above matter will be held on the 10th day of September, 2007, at 10:00 a.m., in Suite 1200, 17 N. State Street, Chicago, IL before Mark Kuchler, a duly appointed Hearing Officer, whose address is 205 W. Wacker Drive, Suite 1015, Chicago, IL 60606.

THE HEARING IS ORDERED under the authority of Sections 12 and 29 of the Motor Vehicle Franchise Act (Act) (815 ILCS 710/12, 29) due to receipt of a notice of protest filed by the Complainant alleging a violation of Section 4(d)(6)(B) of the Act (815 ILCS 710/4).

YOU ARE FURTHER ADVISED THAT you may bring an attorney to represent you. You will be given an opportunity to present in person or by counsel such evidence as may be pertinent to your case and to cross-examine any witness. Your failure to appear will result in an Order of Default. Continuances must be requested in writing and received by the Hearing Officer at the address above at least five days before the scheduled hearing or if made on the day of the Hearing, only for good cause shown.

ATTENTION: PLEASE BE PROMPT IN APPEARING AT THE SPECIFIED TIME.

DATED: This 1st day of August, A.D., 2007.

_Terrence M. O'Brien_
Terrence M. O'Brien, Chairperson
Motor Vehicle Review Board

## CERTIFICATE OF MAILING

The undersigned, an employee of the Secretary of State, of the State of Illinois, hereby certifies that on the 1st day of August, A.D., 2007, I deposited in the United States Mail at the Capitol Post Office, Springfield, Illinois, a true and correct copy of the foregoing Order Scheduling A Hearing, in a sealed envelope with postage prepaid, addressed to each of the below named persons at his/her address as shown by the records of the Office of the Secretary of State, pursuant to Section 2-114, Illinois Vehicle Code.


_____
Employee, Office of the Secretary of State

Mailed certified to:

Ira M. Levin
Burke, Warren, MacKay &
Serritella P.C.
330 N. Wabash Avenue, 22nd FL
Chicago, IL  60611-3607

Matthew Jacobson
Swanson, Martin & Bell LLP
2525 Cabot Drive, Suite 204
Lisle, IL  60532


Mailed regular mail to:

Chairman Terrence O'Brien
Monitor Thomas Howard
Hearing Officer Mark Kuchler