UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NISSAN NORTH AMERICA, INC., | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | No. 07 C 6304 |
| | ) | |
| | ) | Hon. Joan Gottschall |
| JIM M'LADY OLDSMOBILE, INC. d/b/a | ) | |
| JIM M'LADY NISSAN, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## M'LADY'S 12(b)(1) MOTION TO DISMISS

Defendant Jim M'Lady Oldsmobile, Inc. d/b/a/ Jim M'Lady Nissan ("M'Lady") submits this Memorandum Of Law in Support of Its Motion to Dismiss Nissan North America, Inc.'s ("NNA") Complaint for Declaratory Judgment for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

### INTRODUCTION

NNA seeks to have this federal court usurp the jurisdiction of an Illinois administrative agency -- the Illinois Motor Vehicle Review Board (the "Board") -- to decide the identical issues that are currently being considered by the Board. Pending before the Board are two protests that M'Lady timely filed under the Illinois Motor Vehicle Franchise Act, 815 ILCS 710/1 et. seq. (the "IMVFA"). The Board has not yet issued a final order in either protest and NNA has raised the same issues before this Court that it has already raised before the Board. NNA's filing ignores long-standing Illinois and federal doctrines of ripeness and exhaustion of administrative remedies that preclude the use of declaratory judgment actions to "circumvent[] statutory created administrative proceedings." *AEH Constr. Inc. v. Illinois Department of Labor*, 743 N.E.2d 1102, 1107 (Ill. App. Ct. 2001). *See also CHA-Tonie Hotel Apartments Bldg. Corp. v. Shogren*,

204 F.2d 256, 259 (7th Cir. 1953) ("the declaratory judgment procedure will not be used to preempt or prejudge issues that are committed for initial decision to an administrative proceeding").

In addition, under the *Burford* abstention doctrine courts are to dismiss federal actions where the state has a unified scheme for review of its administrative orders and federal judicial review would have a disruptive effect on the state's efforts to establish a coherent policy on a matter of substantial state concern. *See Property & Casualty Ins. Ltd. v. Cen. Nat'l Ins. Co. of Omaha*, 936 F.2d 319, 322 (7th Cir. 1991). Under the express provisions of the IMVFA only a final order by the Board would trigger NNA's right to administrative review, and then only in either the Circuit Court of Cook County or the Circuit Court of Sangamon County. 815 ILCS 710/31. Therefore, NNA's attempt to have this or any court take over matters that are before the Board is procedurally improper and, even when a final order is issued by the Board, NNA is limited to filing an action for administrative review in select Illinois state courts.

NNA's confusion about filing this new action in federal court is apparently as a result of the prior action between NNA and M'Lady that was litigated before this district court and in the Seventh Circuit. However, that prior action involved a separate and distinct contractual issue involving an arbitration clause that expressly referenced the Federal Arbitration Act (the "FAA"). There, NNA, under the FAA, sought to compel M'Lady to arbitrate and lost. This new action filed by NNA in federal court does not seek to vindicate  any federal rights or address issues arising under federal law; to the contrary, it only involves matters that are expressly governed by the IMVFA and are within the subject matter jurisdiction of the Board. Indeed, a review of NNA's complaint shows that NNA seeks a declaration from this Court of M'Lady and NNA's' rights under the IMVFA and the Illinois Administrative Procedures Act. To rule on NNA's new complaint, this Court would have to apply and interpret the IMVFA and its regulations, which

the Illinois Legislature specifically vested the Board with the power to enforce and interpret, *See* 815 ILCS 710/16-18; *General Motors Corp. v. Illinois Motor Vehicle Review Board*, 862 N.E.2d 209, 219 (Ill. 2007). Indeed, NNA asks this Court to adjudicate M'Lady's two pending administrative protests before the Illinois Board has even had an opportunity to consider the issues, let alone issue a final ruling.

Accordingly, this Court should dismiss NNA's new complaint because it is an improper attempt to circumvent M'Lady's previously filed protests currently pending before the Board, which should be left free from "judicial interference until [it] has [issued a] formalized administrative decision." *General Motors Corp. v. Illinois Motor Vehicle Review Board*, 836 N.E.2d 903, 920 (Ill. App. Ct. 2005). Once a final order is entered by the Board, should NNA seek a review of that order, it may then proceed to file an action for administrative review before the two Illinois Circuit courts that are provided for in the IMVFA to specifically review the Board's final decisions. *See* 815 ILCS 710/31.

## BACKGROUND

Well before NNA filed its Complaint before this Court, M'Lady filed two Protests before the Board: (1) a protest filed in 2000 against NNA's attempt to terminate M'Lady's franchise, which NNA has now abandoned after this Court and the Seventh Circuit rejected NNA's complaint to compel arbitration in *Nissan North America v. Jim M'Lady Oldsmobile*, No. 01-C-1290, 2004 WL 609279 (N.D. Ill. March 25, 2004) *aff'd*, 486 F.3d 989 (7th Cir. 2007), with the only remaining issue being M'Lady's recovery of attorneys fees as allowed for under the IMVFA; and (2) a protest filed on July 11, 2007 in which M'Lady is contending that NNA's demand that M'Lady execute a specific new written dealer agreement or face termination of its franchise is a violation of the IMVFA. Copies of M'Lady's Request for Attorneys' Fees in connection with the 2000 protest and the 2007 protest itself (including NNA's letter of May 25,

2007 and NNA's Response to the 2007 protest) are attached hereto as <u>Exhibits A, B, C and D</u> and made a part hereof.

NNA's Complaint requests that this Court, not the Board, deny M'Lady's pending Protests by ruling that: (1) the Board lacks jurisdiction to decide the Protests because the parties did not have a "written or oral" franchise as "defined in the Illinois Motor Vehicle Franchise Act" (Compl. at pp. 11-12); (2) the Board lacks jurisdiction to hear the Protests because the Board "failed to conduct a hearing" and/or M'Lady has not sought a hearing within 90 days, as allegedly required by 92 Ill. Adm. Code § 10001.760(a)(2)(C) (<u>id.</u> at pp. 13-17); and (3) NNA "possesses 'good cause' [under the Act] for termination of M'Lady as a Nissan dealer." (Compl. at pp. 18-19.)

NNA's Complaint, however, omits any reference to or mention of NNA's motions to dismiss M'Lady's protests, that are currently pending before the Board in which NNA is also requesting the Board to rule that: (1) the Board lacks jurisdiction because M'Lady has not demanded and the Board has not set a hearing within 90 days as allegedly required by 92 Ill. Adm. Code § 10001.760(a)(2)(C) (Mot. to Dismiss at ¶¶ 6-13 (<u>Exhibit E,</u> hereto) and Mot. to Dismiss at ¶¶ 8-12 (<u>Exhibit F,</u> hereto)); and (2) the issues raised in the 2007 protest "are now moot" because the 2007 protest terminated NNA's offer to enter into a written franchise agreement, and therefore, NNA now has "good cause" under the Illinois Motor Vehicle Franchise Act for terminating its relationship with M'Lady. (<u>See</u> Mot. to Dismiss at ¶ 6 (<u>Exhibit F,</u> hereto).)

## ARGUMENT

I.  **NNA'S Request For Declaratory Relief Is Procedurally Improper.**

As noted above, "principles of ripeness and exhaustion of remedies" seek to prevent "premature actions," *AEH Constr. Inc.*, 743 N.E.2d at 1107, and to "protect" administrative agencies, including the Illinois Motor Vehicle Review Board, from "judicial interference" before the agencies have issued a final decision. *See General Motors Corp.*, 836 N.E.2d at 920. "Where the legislature has vested the agency with the authority to administer the statute . . . . judicial interference must be withheld until the administrative process has run its course." *Id.* (reversing declaratory judgment as premature until Illinois Department of Labor ruled on previously filed administrative complaint). Therefore, "declaratory judgment proceedings cannot be commenced subsequently in the circuit court to obtain findings and opinions to affect, control or guide the outcome of the proceeding before the administrative body." *Eckells v. City of East St. Louis*, 163 N.E.2d 107, 109 (Ill. App. Ct. 1959) (reversing grant of declaratory judgment with directions to dismiss because previously filed administrative action pending). *See also CHA-Tonie Hotel Apartments Bldg. Corp. v. Shogren*, 204 F.2d 256, 259 (7th Cir. 1953) (affirming motion to dismiss declaratory judgment action, the Seventh Circuit held that "the declaratory judgment procedure will not be used to preempt or prejudge issues that are committed for initial decision to an administrative proceeding").

Section 31 of the IMVFA specifically sets forth the review process of any "final administrative decision" of the Board:

> Review under Administrative Review Law; appeal as in civil cases. Any person affected by a final administrative decision of the Board may seek judicial review of the decision in the Circuit Court of Sangamon County or in the Circuit Court of Cook County only under and in accordance with the Administrative Review Law, if the person files, within 10 days of receipt of service of a copy of the final decision sought to be reviewed, a written notice with the Board of intent to seek review under such law. The provisions of the Administrative Review Law and the rules adopted pursuant thereto, shall apply to and govern all proceedings for the

judicial review of final administrative decisions of the Board under this Act. The term "administrative decision" is defined as in Section 3-101 of the Code of Civil Procedure.

815 ILCS 710/31 "A final administrative decision" "means any decision, order or determination" by the Board "which affects the legal rights, duties or privileges of parties and which terminates the proceedings before the administrative agency." 735 ILCS 5/3-101. Failure to comply with 735 ILCS 5/3-101 ("the Illinois Administrative Procedures Act"), which applies equally to federal actions, results in dismissal of the complaint for lack of subject matter jurisdiction. *See Rizzi v. Calumet City*, 11 F. Supp. 994, 995 (N.D. Ill. 1998) (dismissing complaint for lack of subject matter jurisdiction for failure to exhaust administrative remedies as required by 735 ILCS 5/3-101); *Forcade-Osborn v. Madison County Electoral Bd.*, 778 N.E.2d 768, 770 (Ill. App. Ct. 2002) (holding that trial court lacked subject matter jurisdiction to hear action to review administrative proceeding until the administrative review board enters a final order).

Like the Illinois Administrative Review Act, the Federal Administrative Procedures Act permits federal judicial review of agency proceedings only when the agency issues a "final" ruling. *See* 5 U.S.C. §§ 702, 704. A "final" order requires the agency to complete "its decision making process" and issue a ruling that determines "rights and obligations" and results in "legal consequences." *See Home Builders Assoc. of Greater Chicago v. U.S. Army Corps of Engineers*, 335 F.3d 607, 614 (7th Cir. 2003).

In *General Motors Corp.*, 836 N.E.2d at 907-08, the plaintiff (General Motors Corporation) requested that the Illinois trial court vacate a decision by the Illinois Motor Review Board and hold that "the protesting dealers are not entitled to attorney fees and costs." On appeal, the Illinois Appellate Court affirmed the Board's decision on the merits but vacated the trial court's award of attorneys' fees on the grounds that "the attorney-fees issues . . . *are not ripe* for

6

judicial review at this time" because "the [Motor Vehicle] *Review Board has yet to decide the issues raised* by [the plaintiff with respect to attorneys' fees] and thus [the plaintiff] has not felt the effect of the Review Board's decision." *Id.* at 920 (emphasis added).  In so holding, the appellate court held that the purpose of the "ripeness doctrine" is to:

> (1) prevent, by *avoiding premature litigation*, the courts from getting involved in abstract disagreements over administrative policies and (2) *protect the agencies from judicial interference* until the agency has *formalized an administrative decision*, of which the challenging parties have felt the effects.

*Id.* (emphasis added).

Similarly, in *AEH Construction, Inc.*, 743 N.E.2d at 1104, the Illinois Department of Labor notified the plaintiff/employer that the Illinois Wage Act applied to a contract it had with a municipality for the cleaning of bricks and that it was liable for underpayment of wages. Before, however, the Illinois Department of Labor issued a "final ruling," the plaintiff/employer brought a declaratory judgment action "seeking an interpretation of the Act to brick cleaners." *Id.*  Reversing the trial court's denial of the Department's motion to dismiss on the grounds that the complaint was premature, the Illinois Appellate Court held that "the declaratory judgment action was premature because [the plaintiff] did not exhaust its administrative remedies" as required by the Illinois Administrative Review Act. *Id.* at 1106-07.

In so holding, the court noted that the Illinois Wage Act vested the Department with authority to enforce the Wage Act and provided for "judicial review of a final administrative determination," as defined by the Administrative Review Act. *Id.*   Therefore, *"[r]elief by declaratory judgment [was] not available  . . . . until the administrative process has run its course."* *Id.* at 1106 (emphasis added).  To hold otherwise, would improperly allow the plaintiff to "circumvent[] the statutory created administrative proceeding [and] deprive[] the agency of [] jurisdiction" given it by the Wage Act. *Id.* at 1107.

Here, as detailed above, NNA seeks a declaration from this Court for the same issues currently pending before the Board in M'Lady's protests under the Illinois Motor Vehicle Franchise Act, which vests the Board the power to enforce the Act and whose interpretation of the Act must be given deference by this Court. *General Motors Corp.*, 836 N.E.2d at 920.

For example, NNA contends, both in its Complaint and motions to dismiss before the Board, that the Board "lacks jurisdiction to rule" on M'Lady's protests because the Board "failed to conduct a hearing" and/or M'Lady has not sought a hearing within 90 days, as allegedly required by 92 Ill. Adm. Code § 10001.760(a)(2)(C).  (Compl. at pp. 13-17; Mot. to Dismiss 2000 Pet. at ¶¶ 6-13 (Exhibit E, hereto) and Mot. to Dismiss 2007 Pet. at ¶¶ 8-12 (Exhibit F, hereto).)  Section 10001.760, which is titled "Hearing Procedures," however, does not divest the Board of jurisdiction for failure to follow the proscribed procedures.  Instead, Section 10001.760(a)(2), states that if a protest properly falls under the IMVFA and is "timely filed" and properly noticed, the "Chairperson" of the Board "shall":

    A) Assign a monitor and a hearing officer to the case. The hearing officer shall be selected from a list of possible hearing officers supplied by the Secretary. The selection shall be made on a rotating basis taking into consideration expertise and qualifications needed for each case.

    B) Have the Secretary enter an order setting the date, time and place of the hearing. Said date shall be within 60 days after the date of the order. The hearing shall be held at a location determined by the Secretary. Any motion to dismiss or strike the notice of protest must be filed within 21 days from the date of receipt of the order setting the hearing.

    C) The hearing officer *may continue the hearing date more than 90 days* from the date of the Board's initial order scheduling the hearing only if the parties agree to the continuance and the hearing officer finds that due to the complexity of the issue(s) involved meaningful hearing could not be held prior thereto.
(Emphasis added.)

If the Board's failure to follow its own *discretionary procedures* divests the Board of its statutory authority under the Act, the Board, not this Court, must be given the opportunity to

initially make this decision as required under 815 ILCS 710/31, which further provides that any judicial review of a final decision by the Board should be made to the Illinois Circuit Court of Cook County or Sangamon County, not to this Court. Indeed, M'Lady has not found a single decision in which, absent an issue of federal law (i.e., the plaintiff's civil rights were allegedly violated), a United States District Court reviewed a decision by the Board, let alone decided an issue under the Illinois Motor Vehicle Franchise Act that was pending before the Board. Instead, litigants bringing cases in federal court to adjudicate the Illinois Vehicle Franchise Act do so only when there was not a prior or current proceedings before the Board. *See, e.g.*, *Olympic Chevrolet, Inc. v. General Motors Corp.*, 959 F. Supp. 918, 920 (N.D. Ill. 1997) (dealer brought diversity action against manufacturer under numerous theories including the Illinois Motor Franchise Act.

Accordingly, because the Board, which is empowered to enforce and interpret the Act, has not ruled on the issues before it, this Court should dismiss NNA's Complaint. To allow this matter to proceed, would result in NNA being allowed to improperly use the federal courts to circumvent the Board and prevent it from ruling on the issues properly before it under the Illinois Motor Vehicle Franchise Act in M'Lady's previously filed protests.[1]

---

[1] Anticipating problems with this Court's subject matter jurisdiction over its Complaint, NNA cites to *People v. NL Industries*, 152 Ill.2d 82 (Ill. 1992) and *Employers Mutual Ins. Comp. v. Skilling*, 163 Ill.2d 284 (Ill. 1994) in support of its contention that this Court has jurisdiction over the issues before the Board. (Compl. at ¶¶ 7-8.) These cases, which did not involve the Illinois Motor Vehicle Franchise Act, do not support jurisdiction in this case because, unlike NAA's Complaint, they did not request a court to decide the same issues as are before a state administrative body in a previously filed, concurrently pending administrative action. Indeed, *NL Industries* did not even involve a current pending administrative action. Instead, the state sued the defendant directly in the circuit court under the Illinois Environmental Protection Act. 152 Ill.2d at 86. In *Employers Mutual*, the court held that a circuit court could hear a declaratory judgment action to determine whether an employer's insurance policy covered an employee's pending personal injury claim for workers compensation pending before the Illinois Industrial Commission. 163 Ill.2d at 285. The court held that the state court had jurisdiction over the insurance coverage action because this issue was not before the administrative body. *Id.* at 289-90.

## II.    The *Burford* Abstention Doctrine Requires Dismissal.

This Court should also dismiss the Complaint under the *Burford* abstention doctrine. Similar to the ripeness and exhaustion of remedies doctrines, the *Burford* abstention doctrine requires courts to dismiss federal actions where the state has a unified scheme for review of its administrative orders and federal judicial review would have a disruptive effect on the state's efforts to establish a coherent policy on a matter of substantial state concern. *See Property & Casualty Ins. Ltd. v. Cen. Nat'l Ins. Co. of Omaha*, 936 F.2d 319, 322 (7th Cir. 1991). Factors to consider under *Burford* include: (1) the presence of a complex and important issue of traditional state concern; (2) the creation of a specialized state agency and the consequent superior competence of state tribunals; (3) the possibility of disruption to the state's administrative scheme by the exercise of federal judicial review; and (4) the need for coherent state doctrine in the area. *See Adams v. Attorney Registration & Disciplinary Comm'n of Supreme Court*, 600 F. Supp. 390, 396 (N.D. Ill. 1984) *aff'd on other grounds*, 801 F.2d 968 (7th Cir. 1986).

Here, the above factors mandate dismissal under *Burford*.   As articulated by the Illinois Legislature, the Illinois Motor Vehicle Franchise Act is intended to address a "complex and important state concern" in need of a "coherent state doctrine" (factors 1 and 4) -- the "distribution and sale of vehicles within this State vitally affects the general economy of the State and the public interest and welfare, and that in order to promote the public interest and welfare, and in the exercise of its police powers, it is necessary to regulate motor vehicle [franchises]." 815 ILCS 710/1.1.  *See also Yamaha Motor Corp. U.S.A. v. Stroud*, 179 F.3d 598, 602-03 (8th Cir. 1999) (affirming abstention, the Eighth Circuit held that based on the Arkansas Motor Vehicle Franchise Act, the state has "an interest in regulating the motor vehicle sales industry").

To protect this important state concern and enforce the Act, the Illinois Legislature created the Illinois Motor Vehicle Review Board (factors 2-3) in 815 ILCS 710/16-18 and gave the Illinois Circuit Courts of Cook County and Sangamon County, the power to review the Board's "final decisions." 815 ILCS 710/31. The Act specifically vests the Board with the power to hear protests under Sections 4 and 12 of the Act -- which controls M'Lady's 2007 Protest and the "good cause" standard under which NNA requests this Court to dismiss the 2007 Protest (Compl. at pp. 18-19). *See* 815 ILCS 710/4, 12 and 16. Indeed, when interpreting the Act, this Court must give deference to the Board's interpretation of the Act. *See General Motors Corp.*, 862 N.E.2d at 219.

As a result, if this Court grants the relief requested in the Complaint before the Board decides the Protests, this Court will unduly disrupt the important state concern (factor 3) protected by the Illinois Motor Vehicle Franchise Act, which provides for judicial review only after the board issues a final decision (815 ILCS 710/31). This Court should thus dismiss this action under the *Burford* abstention doctrine, which requires dismissal rather than a stay. *See United States v. Riverside Lab., Inc.*, 678 F. Supp. 1352, 1361 (N.D. Ill. 1988).

### III.    Alternatively, *Colorado River* Abstention Doctrine Requires That This Court Stay This Action.

In the event that this Court does not dismiss NNA's Complaint, which it should, it should nevertheless stay this action under the *Colorado River* abstention doctrine. Under *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813 (1976), a federal court will abstain from exercising jurisdiction if: (1) there are "parallel proceedings" in state and federal tribunals; and (2) "exceptional circumstances" warranting abstention exist. *Tyrer v. City of South Beloit,* 456 F.3d 744, 751 (7th Cir. 2006).

The purpose of abstention under *Colorado River* is to avoid "a grand waste of the efforts of both the courts and the parties" by having two courts decide the same issues. *Riverside Lab.,*

*Inc.*, 678 F. Supp. at 1358. Therefore, "[t]o be parallel, it is not necessary that there be formal symmetry between the two actions." *Tyrer,* 456 F.3d at 752. Rather, state and federal proceedings are parallel "if **substantially the same parties are litigating substantially the same issues simultaneously in two fora.**" *Finova Capital Corp. v. Ryan Helicopters U.S.A., Inc.*, 180 F.3d 896, 898 (7th Cir. 1999) (emphasis added). To determine whether the actions are "parallel," courts look at the "central issues" in both actions, *id.*, and whether the same law and/or evidence controls the two actions. *Tyrer,* 456 F.3d at 752. For purposes of abstention, state "administrative proceedings that declare and enforce liabilities" constitute a parallel state proceeding. *See Yamaha Motor Corp. U.S.A.*, 179 F.3d at 602 (a proceeding before the Arkansas motor vehicle review board).

Here, as detailed above, the protests currently pending before the Illinois Motor Vehicle Review Board and NNA's Complaint both: (1) require an interpretation and application of the parties' rights and liabilities under the same sections of the IMVFA and the Illinois Administrative Review Act; and (2) hinge on the same set of operative facts. Accordingly, this Court should find that the Protests and the Complaint are parallel proceedings and examine the exception circumstances surrounding this case.

The Seventh Circuit has set forth the following 10 factors to determine if "exceptional circumstances" exist:

> 1) whether the state has assumed jurisdiction over property; 2) the inconvenience of the federal forum; 3) the desirability of avoiding piecemeal litigation; 4) the order in which jurisdiction was obtained by the concurrent forums; 5) the source of governing law, state or federal; 6) the adequacy of state-court action to protect the federal plaintiff's rights; 7) the relative progress of state and federal proceedings; 8) the presence or absence of concurrent jurisdiction; 9) the availability of removal; and 10) the vexatious or contrived nature of the federal claim.

*Tyrer,* 456 F.3d at 754. Applying the above factors, however, courts must remember that "no single factor is determinative." *Id.*

Applying the above 10 factors to this case, factors 3, 4, 5, 6, 7, and 10 support abstention under *Colorado River*, while the remaining factors (1, 2, 8, and 9) are not applicable to this case. Because the same issues under the IMVFA and the Illinois Administrative Review Act are before the Board and this Court, a decision by the Board will negate this Court having to decide these issues (factor 3). The Board had jurisdiction before NNA filed this action (factor 4). This action only pertains to legal issues under the IMVFA and the Illinois Administrative Review Act, and does not involve any federal legal issues (factor 5). The IMVFA provides an adequate forum to protect NNA's rights and permits NNA to appeal the Board's final decision (factor 6). The legal and factual issues raised in the Complaint are currently before the Board in the protests and NNA's motions to dismiss the protests (factor 7).

Finally, with respect to factor 10 (the vexatious or contrived nature of the federal claim), as detailed above, NNA prematurely filed its Complaint, in complete disregard of the ripeness and exhaustion doctrines and 815 ILCS 710/31, 735 ILCS 5/3-101, and 5 U.S.C. §§ 702, 704, solely to circumvent the Board from deciding the issues before it under the IMVFA and the Illinois Administrative Review Act. While no one factor is determinative, the Supreme Court has explicitly recognized that the argument "that the vexatious or reactive nature of either the federal or the state litigation may influence the decision whether to defer to a parallel state litigation under *Colorado River* – **has considerable merit**." *Moses H. Cone Mem'l Hosp. V. Mercury Constr. Corp.*, 460 U.S. 1, 17 n. 20 (1983) (emphasis added). *See also Medana v. Medana Builders, Inc.*, 854 F.2d 210, 213 (7th Cir. 1988) (*Colorado River* doctrine necessary to ensure judicial economy and deter abusive "reactive" litigation); *Villa Marina Yacht Sales, Inc. v. Hatteras Yachts*, 947 F.2d 529, 533 (1st Cir. 1991) (stay upheld as proper response to vexatious use of federal forum when plaintiff commenced federal action only after the state court rejected its application for a preliminary injunction); *Fuller Co. v. Ramon I. Gil, Inc.*, 782 F.2d

13

306, 309-10 (1st Cir. 1986) (affirming dismissal and criticizing practice of filing federal action in reaction to adverse state ruling).

Accordingly, if this Court does not dismiss this action for NNA's failure to exhaust its administrative remedies or pursuant to the *Burford* abstention doctrine, it should stay this action under the *Colorado River* abstention doctrine until the Board has had an opportunity to make a final ruling on the issues currently before this Court.

## CONCLUSION

For the reasons set forth above, Defendant Jim M'Lady Oldsmobile, Inc. d/b/a/ Jim M'Lady Nissan requests that this Court dismiss Plaintiff NNA's Complaint for Declaratory Judgment, or, in the alternative, to stay this matter until NNA exhausts all of its administrative and state judicial remedies provided for under the Illinois Motor Vehicle Franchise Act and Illinois Administrative Review Act.

Dated: January 8, 2008

Respectfully submitted,

JIM M'LADY OLDSMOBILE, INC.

By:___ /s/Ira M. Levin _____
         One of its Attorneys

Ira M. Levin
Aaron Stanton
Burke, Warren, MacKay & Serritella, P.C.
330 North Wabash Avenue, 22nd Floor
Chicago, Illinois 60611
(312) 840-7000
(312) 840-7900 (FAX)
11021/1/456421

# EXHIBIT A

## MOTOR VEHICLE REVIEW BOARD
## STATE OF ILLINOIS

JIM M'LADY OLDSMOBILE, INC., d/b/a )
JIM M'LADY NISSAN,                  )
                                    )
     Complainant,                  )
                                    )    **Administrative Hearing**
v.                                  )    **MVRB 78-00**
                                    )    **Hearing Officer: Mark A. Kuchler**
NISSAN NORTH AMERICA, INC.,         )
                                    )
     Respondent,                   )

## M'LADY NISSAN'S RESPONSE TO NISSAN'S MOTION TO DISMISS

    Complainant, Jim M'Lady Oldsmobile, Inc., d/b/a Jim M'Lady Nissan ("M'Lady") for its

response to Respondent Nissan North America, Inc.'s ("NNA") motion to dismiss, states as

follows:

    1.    Although M'Lady does not completely agree with NNA's recitation of facts and

other statements contained in NNA's motion, M'Lady has no objection to the dismissal of the

pending protest.  However, because NNA has now elected to cease its efforts to terminate

M'Lady's franchise under the notice of termination that gave rise to this protest, NNA is

responsible to pay M'Lady's fees and costs.

    2.    Section 13 of the Illinois Motor Vehicle Franchise Act provides in relevant part:

> Where the franchisee or dealer substantially prevails, the . . . Motor Vehicle
> Review Board shall award attorneys' fees and assess costs . . . against the
> opposing party.  Moreover, for the purposes of the award of attorneys' fees . . . the
> franchisee or dealer may be considered to have prevailed when the
> manufacturer. . . ceases the conduct, act or practice which is alleged to be in
> violation of any Section of this Act.

    3.    Exhibit A to NNA's motion is NNA's recent correspondence to M'Lady in which

NNA states "Nissan is hereby withdrawing its October 3, 2000 Final Notice of Termination."

(NNA Motion to Dismiss, Exhibit A, p. 2)  Accordingly, because NNA has ceased the conduct

that M'Lady alleged was in violation of the Act, M'Lady is entitled to recover its attorneys' fees and costs. In addition, NNA is responsible to pay all of the Motor Vehicle Review Board's expenses.

    4.    Pursuant to 92 Ill. Admin. Code 1001.770(b)(6), M'Lady requests that the hearing officer advise NNA that M'Lady has substantially prevailed and that it will be awarded attorneys' fees and costs in accordance with Section 13 of the Act. In addition and pursuant to Section 13 of the Act, M'Lady requests that the Board's expenses be assessed against NNA.

JIM M'LADY OLDSMOBILE, INC., d/b/a
Jim M'Lady Nissan, Respondent

By:_____
     One of its attorneys

Ira M. Levin
Burke, Warren, MacKay & Serritella, P.C.
Attorneys for Respondent
330 N. Wabash Avenue, 22nd Floor
Chicago, IL 60611-3607
(312) 840-7000

## CERTIFICATE OF SERVICE

Ira M. Levin, one of the attorneys for complainant, certifies that he caused a copy of the foregoing Notice of Filing, together with the document referred to therein to be served on:

> Bruce Terlep
> Matthew D. Jacobson
> Swanson, Martin & Bell
> 2525 Cabot Drive, Suite 204
> Lisle, IL 60532
> Facsimile: (630) 799-6901

by facsimile transmission and by depositing true and correct copies of same in the U.S. Mail chute at 330 N. Wabash Avenue, Chicago, Illinois in a properly addressed envelope with postage fully prepaid before the hour of 5:00 p.m. this 16th day of August, 2007.

_____
Ira M. Levin

3

# EXHIBIT B

## NOTICE OF PROTEST

### ILLINOIS MOTOR VEHICLE FRANCHISE ACT (MVFA)

Jim M'Lady Oldsmobile, Inc.                                      08
_____                    _____
Protesting Dealer/Franchisee                       Illinois Dealer License No.

5656 Northwest Highway
_____
Street Address

Crystal Lake, IL  60014                            (815) 459-2288
_____                    _____
City/State/Zip                                     Telephone No.

Nissan North America, Inc.                          (630) 851-8000
_____
Manufacturer/Distributor

600 N. Enterprise                                  Aurora, IL  60504-8139
_____                    _____
Street Address                                     City/State/Zip

Date notified by manufacturer of proposed action: _____June 11, 2007_____

Date of current franchise/service agreement: _____n/a_____

A hearing request under Sections 12 and 29 of the MVFA before the Motor Vehicle Review Board is hereby made alleging violations of the following Sections of the MVFA, which are the only violations authorized to be heard by the Board (mark those applicable):

__x_ §4  (d)(6)(B)_____ (please specify sub-part(s))

___ §5      ___ §6      ___ §7      ___ §8      ___ §9      ___ §10.1      ___ §11

Attached to this notice are the following documents/information:

1. A brief description of the facts supporting the alleged violations; See Attached

2. A copy of all documents received from as well as those sent to the manufacturer/distributor and any other dealer/franchisee involved, relevant to this notice of protest; See Attached

3. The name and address of any other dealer/franchisee involved. n/a

_____                    7-10-07
Signature/Title of Dealer or Attorney              Date

Attorney Name/Address:  Ira M. Levin/Burke, Warren, MacKay & Serritella, P.C.

330 N. Wabash Avenue, 22nd Floor

Chicago, IL  60611-3607

The **original and four copies** of this notice with attachments must be submitted in one of the following ways:  sent or delivered to the Illinois Secretary of State, Room 200, Howlett Building, Springfield, Illinois, 62756; delivered to the Illinois Secretary of State, Room 1200, 17 N. State, Chicago, Illinois, 60602; or faxed to the Springfield office at (217)782-2192.

## FACTS SUPPORTING ALLEGED VIOLATION

On June 11, 2007, counsel for Jim M'Lady Oldsmobile, d/b/a Jim M'Lady Nissan ("M'Lady") received by certified mail a letter dated May 25, 2007 from counsel for Nissan North America, Inc. ("Nissan"), a copy of which is attached. The letter enclosed a proposed new form of dealer agreement, which Nissan's counsel demanded that M'Lady sign or Nissan would initiate action to terminate its existing dealer agreement with M'Lady. M'Lady contends that Nissan's letter fails to comply with the applicable requirements of the Illinois Motor Vehicle Franchise Act, including but not limited to the failure of Nissan itself to send the letter directly to M'Lady instead of to its counsel and because there is no expiration date of the current franchise relationship between Nissan and M'Lady. M'Lady further contends that Nissan cannot prove good cause for its proposed action because the proposed dealer agreement would substantially change or modify the existing obligations of M'Lady.

# EXHIBIT C

# SWANSON, MARTIN & BELL, LLP

ATTORNEYS AT LAW
2525 CABOT DRIVE, SUITE 204
LISLE, ILLINOIS 60532
(630) 799-6900 • FAX (630) 799-6901

May 25, 2007

*Via Certified Mail*
*Return Receipt Requested*

Ira Levin
BURKE, WARREN, MACKAY &
   SERRITELLA, P.C.
330 North Wabash Avenue
22nd Floor
Chicago, Illinois 60611-3607

RE: *Nissan North America, Inc. v. Jim M'Lady Nissan*
      **MVRB No. 78-00**

Dear Mr. Levin:

Please be advised that Bruce Terlep and I have been retained by Nissan North America, Inc. ("NNA") as counsel to represent its interests in the above-referenced matter involving your client, Jim M'Lady Nissan (Jim M'Lady).

We have reviewed the 7th Circuit Court of Appeals' opinion which holds that Jim M'Lady's October 20, 2000 Notice of Protest would not be subject to arbitration. By virtue of the 7th Circuit's opinion, the issue of whether NNA possessed "good cause" pursuant to 815 ILCS 710/4(d)(6)(C) for issuing the October 3, 2000 Final Notice of Termination would necessarily be decided by the Motor Vehicle Review Board as opposed to an arbitration panel. This case is currently pending as MVRB No. 78-00.

As you are well aware, one of the original primary issues of dispute between NNA and Jim M'Lady involved the time frame in which Jim M'Lady was to complete construction of a showroom exclusively for the Nissan line of products. At the time, Jim M'Lady did not have an exclusive showroom for Nissan products. Instead, Nissan shared showroom space with Jim M'Lady's Oldsmobile and Isuzu product lines. At no time prior to the issuance of the October 3, 2000 Final Notice of Termination did Jim M'Lady construct a showroom exclusively for the Nissan line of products.

415 WASHINGTON STREET • SUITE 1B • WAUKEGAN, ILLINOIS 60085 • (847) 949-0025 • FAX (847) 247-0555

ONE IBM PLAZA • SUITE 3300 • 330 NORTH WABASH • CHICAGO, ILLINOIS 60611 • (312) 321-9100 • FAX (312) 321-0990

1860 WEST WINCHESTER ROAD • SUITE 201 • LIBERTYVILLE, ILLINOIS 60048 • (847) 949-0025 • FAX (847) 247-0555

Ira Levin
NNA v. Jim M'Lady
MVRB No. 78-00
May 23, 2007
Page 2 of 3

# SWANSON, MARTIN & BELL, LLP

Since NNA issued the Final Notice of Termination nearly seven years ago, Jim M'Lady's circumstances have materially changed. In those seven years, General Motors discontinued the Oldsmobile line of products and Isuzu's role in the marketplace has been vastly minimized. Consequently, Jim M'Lady has essentially satisfied, by default, NNA's original exclusivity demands due to the changes in the marketplace. The passage of time and occurrence of the above-described events have mooted the original issue presented to the Board.

Due to the material change in circumstances involving the Jim M'Lady Nissan dealership outlined above, NNA is hereby withdrawing its October 3, 2000 Final Notice of Termination. Additionally, given that the issue involving exclusivity has been satisfied by Jim M'Lady, NNA sees no good reason in further litigating the issue of whether "good cause" for issuance of the Final Notice of Termination existed as of October 3, 2000.

In its opinion, the 7th Circuit Court of Appeals essentially held that NNA and Jim M'Lady are currently operating under some form of an oral franchise agreement, the terms of which have not been proved and the enforceability of which the court appears to question. It is NNA's position that, to the extent that the parties are operating under an oral franchise agreement, the terms of such oral franchise conform in all material manner to the original 1992 Dealer Agreement with the exceptions of Exhibit A and Amendments 1, 2 and 4 which no longer apply.

Notwithstanding this position, continuing to operate a multimillion dollar enterprise under an oral agreement is completely impractical and unacceptable to NNA. Enclosed please find a new written Dealership Agreement, an updated Facilities Addendum, a new Exhibit A and related documents ("New Dealer Agreement"). Please note that the New Dealer Agreement is NNA's standard dealership agreement and is essentially identical to the agreement that Jim M'Lady previously reviewed and approved last year. In fact, the New Dealer Agreement is in substantially the same format as all other standard dealer agreements between NNA and its existing Nissan dealers throughout Illinois and the rest of the country.

This New Dealer Agreement is being submitted to Jim M'Lady pursuant to 815 ILCS 710/4(d)(6)(B). Please be advised that the execution of the written Dealership Agreement is a condition to the extension of the existing franchise relationship between NNA and Jim M'Lady. Please be advised that, pursuant to 815 ILCS 710/4(d)(6)(B), Jim M'Lady has 30 days from receipt of such agreement to file with the Motor Vehicle Review Board a written protest against the proposed action. If Jim M'Lady does not file a timely protest with the Board and also refuses to execute the written New Dealership Agreement within the following 60 days, NNA will have no other option but to terminate the existing franchise agreement in accordance with 815 ILCS 710/4 *et seq.*

Ira Levin
NNA v. Jim M'Lady
MVRB No. 78-00
May 23, 2007
Page 3 of 3

# SWANSON, MARTIN & BELL, LLP

If you have any questions or comments, please do not hesitate to contact me.

Very Truly Yours,

**SWANSON, MARTIN & BELL, LLP**

Matthew D. Jacobson

MDJ/bac
Enclosures
Cc:  Motor Vehicle Review Board
        Case No. 78-00

# EXHIBIT D

STATE OF ILLINOIS
MOTOR VEHICLE REVIEW BOARD

| | |
|---|---|
| JIM M'LADY OLDSMOBILE,<br>INC. d/b/a JIM M'LADY NISSAN,<br><br>Plaintiff,<br><br>vs.<br><br>NISSAN NORTH AMERICA, INC. ,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

FILE NO. 186-07

## RESPONSE TO NOTICE OF PROTEST

Defendant, NISSAN NORTH AMERICA, INC. ("Nissan") responds in opposition to plaintiff JIM M'LADY OLDSMOBILE, INC.'s ("M'Lady") Notice of Protest as follows:

### I.    Introduction

1.    The subject of the present dispute involves a relatively straight-forward and simple issue; namely, whether it is commercially reasonable for M'Lady to sign a replacement Nissan Dealer Sales and Service Agreement ("Dealer Agreement") for its expired Dealer Agreement.

2.    On or about May 1, 1992, M'Lady entered into a Nissan Dealer Term Sales and Service Agreement (the "Term Agreement") requiring M'Lady to provide Nissan facilities dedicated to the representation of Nissan products.  The Term Agreement contained an expiration date of April 1, 1995.  Subsequently, M'Lady executed four amendments to the Term Agreement which all included the requirement that M'Lady construct a facility dedicated to the representation of Nissan products.

3.    In August, 2000, Nissan tendered M'Lady a 5th Amendment to the Term Agreement.  M'Lady refused to sign the tendered amendment.  Since then, the reasons for the term condition have been satisfied and the need for a term agreement has become moot.

4.    On or about May 25, 2007, Nissan tendered a "standard" Nissan Dealer Sales and Service Agreement (the "Standard Agreement") to M'Lady.  A copy of the Standard Agreement is attached hereto and incorporated by reference herein as Exhibit A. The correspondence accompanying the proposed Standard Agreement is attached hereto and incorporated by reference herein as Exhibit B.

5.    The Standard Agreement is in the same form and format, and substantially similar in all material aspects to agreements offered to other similarly situated Nissan dealers in Illinois and is virtually identical to the Term Agreement entered into by and between M'Lady and Nissan in 1992 with the following material exception: the Term Agreement included a termination date and a condition to be satisfied.  Neither the termination date nor the condition applies in the Standard Agreement sent to M'Lady on May 25, 2007.  A copy of the Term Agreement is attached hereto and incorporated by reference herein as Exhibit C.

6.    After receiving the Standard Agreement on or about June 11, 2007, M'Lady has: (1) refused to sign the Standard Agreement and (2) filed a Notice of Protest with the Illinois Motor Vehicle Review Board on or about July 11, 2007.  A copy of M'Lady's Notice of Protest is attached hereto and incorporated by reference herein as Exhibit D.

7.    In their Notice of Protest, M'Lady claims:  (1) the Illinois Motor Vehicle

Franchise Act requires Nissan to send the Standard Agreement to M'Lady directly as

opposed to having Nissan's counsel send the Standard Agreement directly to M'Lady's

counsel; (2) the Standard Agreement differs materially from the existing dealer

arrangement in that there is "no expiration date of the current franchise relationship

between Nissan and M'Lady;" and (3) Nissan cannot prove good cause for requiring

M'Lady to sign the Standard Agreement. *See* Exhibit D.

## II.    Notice to M'Lady

8.    815 ILCS 710/4(d)(6)(B) reads as follows:

> If a manufacturer . . . intends to change substantially or
> modify the sales and service obligations or capital
> requirements of a motor vehicle dealer as a condition to
> extending or renewing the existing franchise or selling
> agreement of such motor vehicle dealer, it shall send a
> letter by certified mail, return receipt requested, to the
> effected franchisee at least 60 days before the expiration
> of the franchise or selling agreement.  Each notice of
> proposed action shall include a detailed statement setting
> forth the specific grounds for the proposed action and
> shall state that the dealer has only 30 days from receipt of
> the notice to file with the Motor Vehicle Review Board a
> written protest against the proposed action.

9.    On or about May 25, 2007, Nissan's counsel sent to M'Lady's counsel a

letter fully complying with the above-referenced section. *See* Exhibit B.  The May 25,

2007 correspondence includes a detailed statement setting forth the reasons why Nissan

is requiring M'Lady to sign the Standard Agreement. *See* Exhibit B.  Nissan's counsel

received a return receipt identifying that M'Lady's counsel received this communication

on or about June 11, 2007.  A copy of the return receipt is attached hereto and

incorporated by reference herein as Exhibit E.  Further, in compliance with 815 ILCS

710/4(C), M'Lady filed a written protest against the proposed action with the Illinois Motor Vehicle Review Board. *See* Exhibit D.

10.     M'Lady's objection to the form of notice constitutes the ultimate elevation of form over substance and is legally deficient. 815 ILCS 710/4(d)(6)(B) provides the mechanism for providing notice to a dealer of a manufacturer's intent to take proposed action which may be adverse to the dealer's interests. 815 ILCS 710/49d)(6)(B) is intended to provide an adequate amount of time for a dealer to respond to the proposed action by filing a Notice of Protest with the Illinois Motor Vehicle Review Board. Strikingly absent from the statute is any specific requirement that the dealer must be notified at the dealer's business address, the president's home address on file with the State of Illinois or with the dealer's attorney of record. Instead, the statute provides that written notice must be provided to a dealer by certified mail with return receipt requested. This procedure is clearly set out such that a dealer can be assured of receiving notice of the proposed action before adverse consequences take place. Upon receipt of the certified notice, the 30-day clock for taking action with the Illinois Motor Vehicle Review Board begins to run.

11.     Here, there is no contention that M'Lady did not receive notice of Nissan's proposed action. Indeed, the exact opposite is true. M'Lady's agent received the Standard Agreement, via certified mail, along with a detailed statement of Nissan's proposed action with M'Lady on June 11, 2007. See Exhibit E.

12.     As allowed by statute, M'Lady, through the same agent which received the communication, filed a Notice of Protest in a timely fashion. Consequently, there can

be no question that M'Lady received the appropriate notice and responded in a timely fashion.

13.    M'Lady's suggestion that Nissan has somehow failed to comply with the notice provisions contained in 815 ILCS 710/4(D)(6)(b) is simply not supported by the specific language of the statute nor by their subsequent actions.   Irrespective, Nissan sent another Notice to M'Lady to address this expressed meritless concern.

## III.    Expiration Date

14.    In its Notice of Protest, M'Lady wrongfully contends that it should not be obligated to sign the Standard Agreement as "there is no expiration date of the current franchise relationship between Nissan and M'Lady." An open question exists as to what terms govern any existing dealer relationship. The current relationship, whatever it may be, is an undefined aberration that was not intentionally entered into by either party. Arguably, in the absence of a written dealer agreement, there is no dealer relationship between the parties.

15.    Certainly, if M'Lady seeks less than what Nissan has offered to it, Nissan can add a duration and date for the new agreement to expire, provided all parties agree the new agreement expires on that date.

16.    In any event, whether or not the current dealer relationship, to the extent there is one, has an expiration date is immaterial to the present dispute because the Standard Agreement tendered to M'Lady on May 25, 2007 contains neither an expiration date nor a termination date  *See* Exhibit A.  Thus, any suggestion by M'Lady that the Standard Agreement materially differs from any existing dealer relationship due to

Nissan adding either a termination date or an expiration date is directly refuted by the clear and unambiguous language contained in the Standard Agreement. *See* Exhibit A.

### III.    Good Cause for Requiring M'Lady to Sign the Standard Agreement

17.    The Nissan dealership currently operated by M'Lady is a multi-million dollar operation. Due to (1) the enormous complexities necessarily involved with operating a multi-million dollar business operation, (2) the need for clearly defined rights and obligations for Nissan; (3) the need for clearly defined rights and obligations for M'Lady; and (4) the protection of Illinois consumers doing business with Nissan and M'Lady, it is commercially reasonable and an eminently reasonable business practice to require M'Lady to sign the Standard Agreement.

18.    The offer of the Standard Agreement to M'Lady cannot be deemed to be arbitrary or random. Nissan tendered a standard Dealer Agreement to M'Lady which is substantially similar, if not identical, to the dealer agreements tendered to its dealer body across Illinois. If anything, the terms of the Standard Agreement sent to M'Lady are more favorable than the 1992 Agreement in that there is no termination date nor condition to be satisfied. *Compare* Exhibits A and C.

19.    Nissan possesses good cause for requiring M'Lady to sign the Standard Agreement. The contents of the Standard Agreement are neither unfair nor commercially unreasonable. The Standard Agreement benefits both M'Lady and Nissan in that it clearly articulates the specific definitive rights, duties and obligations of both M'Lady and Nissan in their multi-million dollar business relationship.

20.    In the alternative, Nissan seeks a ruling by the Board that no agreement exists between M'Lady and Nissan, since no written dealer agreement exists between the parties.

### IV.    Conclusion

21.    Requiring M'Lady to sign a written agreement similar to all other dealers in Illinois definitively delineating the rights and obligations of the parties is far from an "aggressive franchise practice;" it is simply a commercially sound business practice. Indeed, having the parties mutually execute the Standard Agreement will only serve to protect M'Lady in that the agreement will clearly define the rights and obligations of M'Lady. Further, a mutually executed Dealer Agreement will serve to benefit Illinois consumers doing business with M'Lady and Nissan in that they can be assured that both M'Lady and Nissan are meeting obligations imposed upon them by the Illinois Motor Vehicle Franchise Act, the Magnuson Moss Warranty Act, the Illinois Consumer Fraud Act and other consumer protection statutes. In the absence of such an agreement, there exists a strong potential that consumers will ultimately suffer due to ill-defined, vague and ambiguous dealer obligations. There can be no question that a clearly defined business relationship between M'Lady and Nissan serves to benefit Illinois consumers.

22.    Nissan clearly possesses good cause for requiring M'Lady to sign a Dealer Agreement; a prerequisite Nissan requires of all of its dealers in Illinois. It is eminently fair to both parties and is sound commercial practice for the parties to operate under a written agreement. In contrast, operating a multi-million dollar business enterprise in the absence of clearly defined written rights and obligations is commercially unreasonable, fraught with peril, and violates the Statute of Frauds. Any and all vagueness or

ambiguity which may currently exist in the parties' existing business relationship would be rectified simply by having the parties mutually execute the Standard Agreement and would further allow the parties to move forward with their business relationship.

WHEREFORE, defendant, NISSAN NORTH AMERICA, INC., denies that M'Lady's Notice of Protest is well-founded in either fact or law and prays that for a finding in its favor.

Respectfully submitted,

SWANSON, MARTIN & BELL, LLP


By:  _____
     Matthew D. Jacobson


Matthew D. Jacobson
SWANSON, MARTIN & BELL, LLP
2525 Cabot Drive, Suite 204
Lisle, Illinois 60532
(630) 799-6900

# EXHIBIT E

STATE OF ILLINOIS
MOTOR VEHICLE REVIEW BOARD

JIM M'LADY OLDSMOBILE,
INC. d/b/a JIM M'LADY NISSAN,

Plaintiff,

vs.                                              FILE NO. MVRB 78-00

NISSAN NORTH AMERICA, INC.,

Defendant.

## NOTICE OF FILING

To:     Mark Kuchler, RONALDSON & KUCHLER, 205 West Wacker Drive, Suite 1015,
            Chicago, Illinois 60606
        Ira M. Levin, Burke, Warren, MacKay & Serritella, PC, 330 North Wabash, 22nd Floor,
            Chicago, Illinois 60611-3607

    PLEASE TAKE NOTICE that on the 7th day of November, 2007, I caused to be filed

with the Motor Vehicle Review Board, 17 North State Street, Chicago, Illinois, the attached

**Defendant's Motion to Dismiss or, in the Alternative, Motion to Stay,** in the above entitled

action, a copy of which is hereby served upon you.

                                    By:     _____
                                                    Bruce S. Terlep

### CERTIFICATE OF DELIVERY

    The undersigned hereby certifies under penalties of perjury as provided by law pursuant to 735 ILCS,
paragraph 5/1-109, that the above notice and attached pleading were hand delivered to the parties at the addresses set
forth above at or before 5:00 p.m. on the 7th day of November, 2007.

                                    _____

Bruce S. Terlep
Matthew D. Jacobson
**SWANSON, MARTIN & BELL, LLP**
2525 Cabot Drive, Suite 204
Lisle, Illinois 60532
(630) 799-6900

STATE OF ILLINOIS
MOTOR VEHICLE REVIEW BOARD

JIM M'LADY OLDSMOBILE,
INC. d/b/a JIM M'LADY NISSAN,

Plaintiff

vs.                                                    FILE NO. MVRB 78-00

NISSAN NORTH AMERICA, INC.,

Defendant.

**MOTION TO DISMISS OR,
IN THE ALTERNATIVE,
MOTION TO STAY**

Defendant, NISSAN NORTH AMERICA, INC. ("NNA") hereby moves to

dismiss, or in the alternative, moves to stay the present proceedings as follows:

**MOTION TO DISMISS**

1.      On June 21, 2001, the United States District Court for the Northern District of

Illinois entered an order staying the present matter pending a final determination as to the

whether NNA and M'Lady had agreed to submit disputes arising under the dealer agreement to

arbitration. A copy of the June 21, 2001 order is attached hereto as Exhibit A.

2.      On May 11, 2007, the 7th Circuit Court of Appeals issued its opinion in *Nissan*

*North America, Inc. v. Jim M'Lady Oldsmobile, Inc. d/b/a Jim M'Lady Nissan*, 486 F.3d 989 (7th

Cir. 2007). A copy of the opinion is attached hereto as Exhibit B.

3.      In its opinion, the 7th Circuit Court of Appeals affirmed the District Court's ruling

that the arbitration agreement contained in Amendment No. 4 expired on May 11, 1999 and was

no longer in effect. *North America, Inc. v. Jim M'Lady Oldsmobile, Inc. d/b/a Jim M'Lady Nissan*, 486 F.3d 989 (7th Cir. 2007).  Exhibit B.

4.    The 7th Circuit Court of Appeals' opinion in *North America, Inc. v. Jim M'Lady Oldsmobile, Inc. d/b/a Jim M'Lady Nissan*, 486 F.3d 989 (7th Cir. 2007) effectively lifted the United States District Court's June 21, 2001 stay of this matter and remanded the matter back to the Board.

5.    After the 7th Circuit Court of Appeals issued its May 11, 2007 opinion in *North America, Inc. v. Jim M'Lady Oldsmobile, Inc. d/b/a Jim M'Lady Nissan*, 486 F.3d 989 (7th Cir. 2007), it became incumbent upon M'Lady to timely prosecute any pending issues remaining in this case.

6.    On or about August 6, 2007, NNA moved to dismiss Protest #1 on grounds, *inter alia,* that Protest #1 was moot.  By response dated August 16, 2007, M'Lady agreed to the dismissal of Protest #1, but sought an order granting its recovery of attorneys' fees in the Protest, to which order NNA objects on the basis NNA is the prevailing party.

7.    At no time after August 16, 2007 has M'Lady presented either the Hearing Officer or the Board with any evidence of its claimed attorney's fees or with any petition for fees.

8.    At no time after August 16, 2007 has M'Lady filed a pleading with the Board requesting a hearing date for a determination of whether M'Lady was entitled to an award of fees.

9.    More than 90 days has passed since (a) the Initial Order and (b) the 7th Circuit Court of Appeals filed its May 11, 2007 opinion in *North America, Inc. v. Jim M'Lady Oldsmobile, Inc. d/b/a Jim M'Lady Nissan*, 486 F.3d 989 (7th Cir. 2007).

10.     At no time after May 11, 2007 has NNA agreed to continue a hearing past 90 days on any pending issue in this matter. *See* 92 Illinois Administrative Code Section 1001.760(2)(C).

11.     M'Lady has never sought a determination from the Hearing Officer that the issue regarding whether M'Lady is entitled to attorney's fees in Protest #1 is so complex that a meaningful hearing could not take place within 90 days.   Consequently, the Hearing Officer has never entered a finding that the issue regarding whether M'Lady is entitled to attorney's fees in Protest #1 is so complex that a meaningful hearing could not take place within 90 days.

12.     No hearing has been scheduled on the issue of whether M'Lady is entitled to attorney's fees in Protest #1.

13.     By virtue of M'Lady's failure to timely pursue Protest #1 by having the Illinois Motor Vehicle Review Board conduct a hearing on the issue of whether M'Lady is entitled to attorney's fees within 90 days, the Board now lacks jurisdiction to rule on M'Lady's Protest #1.

## MOTION TO STAY

14.     On November 7, 2007, defendant NNA filed a Complaint for Declaratory Judgment in the United States District Court for the Northern District of Illinois against Jim M'Lady Oldsmobile, Inc. d/b/a Jim M'Lady Nissan ("M'Lady").  A copy of the Complaint for Declaratory Relief is attached hereto and incorporated by reference herein as Exhibit A.

15.     NNA's Complaint for Declaratory Relief seeks an order from the federal district court declaring that the Illinois Motor Vehicle Review Board does not possess jurisdiction to rule on Jim M'Lady's October 20, 2000 Notice of Protest.

16.     The Complaint for Declaratory Relief raises issues of statutory construction nvolving the Illinois Motor Vehicle Franchise Act.  Illinois courts are presumed to possess

3

original jurisdiction over all justiciable matters. *People v. N L Industries,* 152 Ill.2d 82 (1992); *Employers Mutual Companies v. Skilling,* 163 Ill.2d 284 (1994). Illinois courts only lose their jurisdictional power where a legislative act specifically and unequivocally vests sole and exclusive jurisdiction in an administrative agency. *People v. N L Industries,* 152 Ill.2d 82 (1992); *Employers Mutual Companies v. Skilling,* 163 Ill.2d 284 (1994). The Illinois Motor Vehicle Franchise Act ("Franchise Act") does not vest sole and exclusive jurisdiction with the Illinois Motor Vehicle Review Board. *See* 810 ILCS 710/13. When a statute, such as the Illinois Motor Vehicle Franchise Act, does not vest sole and exclusive jurisdiction with an administrative agency, Illinois courts possesses concurrent jurisdiction. *People v. N L Industries,* 152 Ill.2d 82 (1992); *Employers Mutual Companies v. Skilling,* 163 Ill.2d 284 (1994). The United States District Court for the Northern District of Illinois, pursuant to *Erie v. Tompkins,* 304 U.S. 64 (1938), sits with the powers of an Illinois Circuit Court and need not defer the initial jurisdiction of the dispute to the Illinois Motor Vehicle Review Board.

17.     Deciding questions of law are the particular province of the courts. *Employers Mutual Companies v. Skilling,* 163 Ill.2d 284 (1994). The Illinois Motor Vehicle Review Board neither possesses specialized knowledge nor technical expertise to determine issues of statutory construction or subject matter jurisdiction. *Employers Mutual Companies v. Skilling,* 163 Ill.2d 284 (1994). The declaratory relief sought in NNA's Complaint must be decided by the United States District Court for the Northern District of Illinois.

18.     Plaintiff, Jim M'Lady, will suffer no prejudice by staying the proceedings while the parties await ruling on NNA's Complaint for Declaratory Relief. M'Lady has already agreed to a dismissal of this protest, subject only to resolution of the parties' dispute as to whether M'Lady is entitled to recover his attorneys' fees incurred in connection therewith. Obtaining a

declaration of certain rights of the parties will either conclude or materially advance the conclusion of this dispute. Indeed, common sense dictates that this matter should be stayed until the federal district court has issued a definitive answer as to whether this tribunal possesses jurisdiction to rule on Jim M'Lady's October 20, 2000 Notice of Protest.

WHEREFORE, NISSAN NORTH AMERICA, INC., respectfully requests the Board to enter an order dismissing the present proceedings for lack of jurisdiction, or in the alternative staying this matter while the United States District Court for the Northern District of Illinois issues a final ruling in response to NNA's Complaint for Declaratory Judgment.

Respectfully submitted,

SWANSON, MARTIN & BELL, LLP

By: _____
Bruce S. Terlep

Bruce S. Terlep
Matthew D. Jacobson
SWANSON, MARTIN & BELL, LLP
2525 Cabot Drive, Suite 204
Lisle, Illinois 60532
(630) 799-6900

5

# EXHIBIT F

STATE OF ILLINOIS
MOTOR VEHICLE REVIEW BOARD

JIM M'LADY OLDSMOBILE,
INC. d/b/a JIM M'LADY NISSAN,

    Plaintiff,

vs.          FILE NO. MVRB 186-07

NISSAN NORTH AMERICA, INC.,

    Defendant.

### **NOTICE OF FILING**

To: Mark Kuchler, RONALDSON & KUCHLER, 205 West Wacker Drive, Suite 1015,
    Chicago, Illinois 60606
  Ira M. Levin, Burke, Warren, MacKay & Serritella, PC, 330 North Wabash, 22nd Floor,
    Chicago, Illinois 60611-3607

PLEASE TAKE NOTICE that on the 7th day of November, 2007, I caused to be filed

with the Motor Vehicle Review Board, 17 North State Street, Chicago, Illinois, the attached

**Defendant's Motion to Dismiss or, in the Alternative, Motion to Stay**, in the above entitled

action, a copy of which is hereby served upon you.

       By: _____
           Bruce S. Terlep

### **CERTIFICATE OF DELIVERY**

  The undersigned hereby certifies under penalties of perjury as provided by law pursuant to 735 ILCS,
paragraph 5/1-109, that the above notice and attached pleading were hand delivered to the parties at the addresses set
forth above at or before 5:00 p.m. on the 7th day of November, 2007.

Bruce S. Terlep
Matthew D. Jacobson
**SWANSON, MARTIN & BELL, LLP**
2525 Cabot Drive, Suite 204
Lisle, Illinois 60532
(630) 799-6900

STATE OF ILLINOIS
MOTOR VEHICLE REVIEW BOARD

JIM M'LADY OLDSMOBILE,
INC. d/b/a JIM M'LADY NISSAN,

Plaintiff,

vs.                                                                 FILE NO. MVRB 186-07

NISSAN NORTH AMERICA, INC.,

Defendant.

### MOTION TO DISMISS OR,
### IN THE ALTERNATIVE,
### MOTION TO STAY

Defendant, NISSAN NORTH AMERICA, INC. ("NNA") hereby moves to dismiss, or in the alternative, moves to stay the present proceedings as follows:

### MOTION TO DISMISS

1.      On or about May 25, 2007, NNA offered a Nissan Dealer Sales and Service Agreement to Jim M'Lady Oldsmobile, Inc. d/b/a Jim M'Lady Nissan ("M'Lady").

2.      M'Lady refused to sign the Dealer Agreement and rejected the Dealer Agreement offer.

3.      On July 11, 2007, M'Lady filed a Notice of Protest with the Motor Vehicle Review Board objecting to the terms of the Dealer Agreement.

4.      On November 7, 2007, NNA sent notice to M'Lady confirming M'Lady's rejection of the Dealer Agreement offer and stating that NNA would not reinstate or agree to modify the Dealer Agreement and that there was no longer any Dealer Agreement on the table. *See* letter of Bruce S. Terlep to Ira M. Levin dated November 7, 2007 attached hereto as "Exhibit

A." In this letter, NNA further stated that it would not proceed with termination of sales to

M'Lady until a declaratory judgment action filed by NNA against M'Lady in the United Stated

District Court for the Northern District of Illinois is concluded or until further notice by NNA.

*Id.*

5.      In the November 7, 2007 correspondence, NNA further advised M'Lady that

NNA had contemporaneously filed a Complaint for Declaratory Judgment in the United States

District Court for the Northern District of Illinois seeking a declaration that the Motor Vehicle

Review Board lacks jurisdiction.   A copy of the Complaint for Declaratory Judgment is attached

hereto as "Exhibit B."

6.      By virtue of M'Lady's rejection of the Dealer Agreement offer, the absence of

any current offer outstanding from NNA, and the absence of any termination proceeding against

M'Lady, there are no issues for determination by the Board pursuant to M'Lady's Notice of

Protest.  The issues raised by M'Lady's objection to the Dealer Agreement are now moot and the

parties have been returned to the *status quo ante* with regard to the subject protest.  Accordingly,

for these reasons, the subject Protest should be dismissed without prejudice until such time as the

referenced declaratory judgment action is concluded.

7.      Furthermore, in contravention to 92 Illinois Administrative Code Section

1001.760(a)(2)(C), no hearing date has been conducted in this matter.

8.      On August 1, 2007, the Illinois Motor Vehicle Review Board issued its Order

Scheduling a Hearing.  A copy of the Order Scheduling a Hearing is attached hereto and

incorporated by reference herein as Exhibit B.

9.      92 Illinois Administrative Code Section 1001.760(a)(2)(C) provides as follows:

2

**The hearing officer may continue the hearing date more than 90 days from the**

**date of the Board's initial order scheduling the hearing only if the parties agree to**

**the continuance and the hearing officer finds that due to the complexity of the**

**issue(s) involved meaningful hearing could not be held prior thereto.**

10.     In the absence of an agreement by the parties and a finding by the Hearing Officer

that the case presents complex issues requiring protracted discovery, the hearing was required to

take place on or before Wednesday, October 31, 2007.

11.     NNA never agreed to continue the hearing date to a date after October 31, 2007.

12.     M'Lady never filed any pleading wherein it sought to have the hearing date

extended beyond October 31, 2007.  Because no hearing was conducted within the statutorily

defined period the Board does not retain jurisdiction over this matter and it should be dismissed.

## MOTION TO STAY

13.     NNA's Complaint for Declaratory Judgment seeks an order from the federal

district court declaring that the Illinois Motor Vehicle Review Board does not possess

jurisdiction to rule on Jim M'Lady's July 11, 2007 Notice of Protest.

14.     The Complaint for Declaratory Judgment raises issues of statutory construction

involving the Illinois Motor Vehicle Franchise Act.  Illinois courts are presumed to possess

original jurisdiction over all justiciable matters. *People v. N L Industries*, 152 Ill.2d 82 (1992);

*Employers Mutual Companies v. Skilling*, 163 Ill.2d 284 (1994).  Illinois courts only lose their

jurisdictional power where a legislative act specifically and unequivocally vests sole and

exclusive jurisdiction in an administrative agency. *People v. N L Industries*, 152 Ill.2d 82

(1992); *Employers Mutual Companies v. Skilling*, 163 Ill.2d 284 (1994).   The Illinois Motor

Vehicle Franchise Act ("Franchise Act") does not vest sole and exclusive jurisdiction with the

3

Illinois Motor Vehicle Review Board. *See, e.g.,* 810 ILCS 710/13. When a statute, such as the

Illinois Motor Vehicle Franchise Act, does not vest sole and exclusive jurisdiction with an

administrative agency, Illinois courts possesses concurrent jurisdiction. *People v. N L Industries,*

152 Ill.2d 82 (1992); *Employers Mutual Companies v. Skilling,* 163 Ill.2d 284 (1994).   The

United States District Court for the Northern District of Illinois, pursuant to *Erie v. Tompkins,*

304 U.S. 64 (1938), sits with the powers of an Illinois Circuit Court and need not defer the initial

jurisdiction of the dispute to the Illinois Motor Vehicle Review Board.

     15.     Deciding questions of law are the particular province of the courts. *Employers*

*Mutual Companies v. Skilling,* 163 Ill.2d 284 (1994).   The Illinois Motor Vehicle Review Board

neither possesses specialized knowledge nor technical expertise to determine issues of statutory

construction or subject matter jurisdiction. *Employers Mutual Companies v. Skilling,* 163 Ill.2d

284 (1994).   The declaratory relief sought in NNA's Complaint must be decided by the United

States District Court for the Northern District of Illinois.

     16.     M'Lady, will suffer no prejudice by staying the proceedings while the parties

await ruling on NNA's Complaint for Declaratory Judgment.  Obtaining a declaration of certain

rights of the parties will either conclude or materially advance the resolution of this dispute.

Indeed, common sense dictates that this matter should be stayed until the federal district court

has issued a definitive answer as to whether this administrative body possesses jurisdiction to

rule on M'Lady's July 11, 2007 Notice of Protest.

4

WHEREFORE, NISSAN NORTH AMERICA, INC., respectfully requests the

Board to enter an order dismissing the present proceedings, or in the alternative staying this

matter while the United States District Court for the Northern District of Illinois issues a final

ruling in response to NNA's Complaint for Declaratory Judgment.

Respectfully submitted,

**SWANSON, MARTIN & BELL, LLP**

By: _____

Bruce S. Terlep

Bruce S. Terlep
Matthew D. Jacobson
**SWANSON, MARTIN & BELL, LLP**
2525 Cabot Drive, Suite 204
Lisle, Illinois 60532
(630) 799-6900

5