UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NISSAN NORTH AMERICA, INCORPORATED, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | NO.  07 C 6304 |
| v. | ) | |
| | ) | Hon. Joan Gottschall |
| JIM M'LADY OLDSMOBILE, INCORPORATED D/B/A/ JIM M'LADY NISSAN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OF PLAINTIFF NISSAN NORTH AMERICA IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

# **TABLE OF CONTENTS**

I.  INTRODUCTION ............................................................................................ 1

II. FACTUAL BACKGROUND ........................................................................... 1

  A.  Any Written Contract Between the Parties Expired, as Held by the United States Court of Appeals for the Seventh Circuit .................................................... 1

  B.  After Issuance of the Decision by the Court of Appeals, the Parties Agreed to Dismissal of Protest #1 ...................................................................................... 3

  C.  Protest #2, Filed by M'Lady, is Based upon a Non-Existent Contract and an Offer that was Rejected and Rescinded ............................................................. 3

  D.  The IMVRB and M'Lady Failed to Set Hearing Dates in Accordance with the Illinois Administrative Code Requirement ..................................................... 4

  E.  The Conduct of M'Lady Further Evidences the Lack of Any Agreement Between the Parties .............................................................................................. 4

III. ARGUMENT .................................................................................................. 5

  A.  The Claims in the Complaint Raise Issues of Contract and Subject Matter Jurisdiction, Over which this Court has Jurisdiction ............................................ 6

    1.  A Declaration that there is No Written or Oral Franchise Agreement Under the Franchise Act is Within the Jurisdiction of this Court ................................................................................................. 6

    2.  Because the Declaratory Relief Requested in the Complaint is Within the Expertise of this Court, the Doctrine of Primary Jurisdiction Does Not Apply ...................................................................... 9

  B.  Principles of Ripeness and Exhaustion of Remedies are Irrelevant to Actions in which the Court has Concurrent Jurisdiction with an Administrative Agency ......................................................................................... 12

  C.  The IMVRB Lacks Jurisdiction Over the Issues Raised in the Complaint Because: (1) There is No Franchise Agreement as Defined by the Act; (2) The Issues Raised in Protest #1 and Protest #2 are Moot or Irrelevant; and (3) The Board Waived Jurisdiction by Failing to Set and Conduct Hearings ............................................................................................................ 13

  D.  The *Burford* Abstention Doctrine Does Not Apply as the Issues of State Law Do Not Transcend the Result in the Individual Case ................................... 15

  E.  *Colorado River* Does Not Apply Because There Are No Parallel Proceedings and No Exceptional Circumstances Warranting Abstention .......... 17

IV. CONCLUSION ............................................................................................. 19

A/72403109.1

## TABLE OF AUTHORITIES

**CASES**

*Adams v. Attorney Registration & Disciplinary Comm'n of Supreme Court*,
60 F. Supp. 390 (N.D.Ill. 1984) *aff'd on other grounds*, 801 F.2d 968
(7th Cir. 1986)............................................................................................................16

*Burford v. Sun Oil Co.*,
319 U.S. 315 (1943)....................................................................................................15

*Chrysler Credit Corp. v. Anthony Dodge, Inc.*,
1996 WL 509888 (N.D.Ill. Sept. 4, 1996) ..............................................................11, 16

*Colorado River Water Conservation District v. United States*,
424 U.S. 800 (1976)....................................................................................................17

*Employers Mutual Cos. v. Skilling*,
644 N.E.2d 1163 (Ill. 1994) ............................................................6, 7, 9, 10, 11, 12

*Ezekiel v. Michel*,
66 F.3d 894 (7th Cir. 1995) .......................................................................................5, 13

*Finova Capital Corp. v. Ryan Helicopters U.S.A., Inc.*,
180 F.3d 896 (7th Cir.1999) ......................................................................................17, 18

*General Motors Corp v. Illinois Motor Vehicle Review Board*,
836 N.E.2d 903 (Ill. App. Ct. 2005) ........................................................................13

*Kellerman v. MCI Telecommunications Corp.*,
493 N.E.2d 1045 (Ill. 1986) ......................................................................................10

*Kerr-McGee Chemical Corp. v. Department of Nuclear Safety*,
561 N.E.2d 1370 (Ill. 1990) ......................................................................................10

*MedImmune, Inc. v. Genentech, Inc.*,
127 S.Ct. 764 (2007)....................................................................................................6

*Nader v. Allegheny Airlines, Inc.*,
426 U.S. 290 (1976)....................................................................................................10

*Nissan North America, Inc. v. Jim M'Lady Oldsmobile, Inc.*,
486 F.3d 989 (7th Cir. 2007) .................................................................................1, 3, 15

*Nissan North America, Inc. v. Jim M'Lady Oldsmobile, Inc.*,
2001 WL 7094826 (N.D.Ill. June 25, 2001) ............................................................16

*Northwestern Buick, Inc. v. Nissan Motor Corp. in the U.S.A.*,
1990 WL 43316 (N.D.Ill. March 29, 1990)............................................................11, 16

*NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*,
28 F.3d 572 (7th Cir. 1994) ......................................................................................17

*People v. NL Industries*,
    604 N.E.2d 349 (Ill. 1992) ...................................................................6, 9, 12

*Rolls-Royce v. Luxury Motors, Inc.*,
    2004 WL 13755402 (N.D.Ill. June 17, 2004) ...........................8, 9, 11 12, 16, 18

*Servpro Indust., Inc. v. Schmidt*,
    1997 WL 158316 (N.D.Ill. March 31, 1997) .......................................11, 16

*Steward v. Allstate Insurance Co.*,
    415 N.E.2d 1206 (Ill. 1980) ...............................................................11

*Village of Itasca v. Village of Lisle*,
    817 N.E.2d 160 (Ill. App. Ct. 2004) ...................................................7, 9

*Wilton v. Seven Falls Co.*,
    515 U.S. 277 (1995) .........................................................................17

## STATUTES, REGULATIONS

28 U.S.C. §2201(a) ..................................................................................17

815 ILCS 710 *et seq.* ...................................................................5, 8, 9, 13, 14

820 ILCS 305/18 .................................................................................7, 8

Ill. Const. 1970, art. VI, §9 .....................................................................6

92 Illinois Administrative Code Section 1001.760(a)(2)(C) ...................................4, 14

A/72403109.1

I.     INTRODUCTION

On May 11, 2007, the United States Court of Appeals for the Seventh Circuit affirmed a threshold issue between Nissan North America, Incorporated ("NNA") and M'Lady Oldsmobile, Incorporated, d/b/a Jim M'Lady Nissan ("M'Lady"), *i.e.*, that there was no written franchise contract between the two entities. *Nissan North America, Inc. v. Jim M'Lady Oldsmobile, Inc.*, 486 F.3d 989, 997 (7th Cir. 2007).   In bringing its Complaint for Declaratory Judgment (the "Complaint") in the above-captioned action, NNA requests that this Court make another threshold determination:  that there is no oral franchise agreement between NNA and M'Lady.  M'Lady now moves to dismiss the Complaint for lack of subject matter jurisdiction, or in the alternative, for abstention.  In support of its argument that the Court does not have subject matter jurisdiction over issues of contract formation, M'Lady relies upon two protests filed with the Illinois Motor Vehicle Review Board ("IMVRB") which concern matters separate and apart from those raised in the Complaint.   M'Lady argues that these "parallel proceedings" should prevent this Court from exercising its legitimate jurisdiction over this case.  To the contrary, Illinois law is clear that the threshold contractual issues and issues of administrative agency subject matter jurisdiction raised in the Complaint are properly before this Court and M'Lady's Motion to Dismiss should be denied.

II.    FACTUAL BACKGROUND

A.     **Any Written Contract Between the Parties Expired, as Held by the United States Court of Appeals for the Seventh Circuit.**

On or about May 21, 1992, NNA and M'Lady entered into a written Nissan Sales and Service Agreement.  Complaint, ¶12, and Exhibit A thereto (with Amendments 1-4, the "Dealer Agreement").  The May 21, 1992 agreement contained a termination date of April 1, 1995 by which time M'Lady was required to have completed construction of an exclusive Nissan showroom, and required that all revisions and amendments be in writing.  Complaint, ¶¶13-15.

1

The parties amended the agreement in writing on several occasions, agreeing in certain amendments to extend the date by which the exclusive Nissan showroom must be constructed, *i.e.*, the termination date:

| Contract/ Amendment No. | Date Executed | Agreement Termination Date |
| --- | --- | --- |
| Original Contract | May 21, 1992 | April 1, 1995 |
| Amendment No. 1 | May 12, 1994 | November 1, 1996 |
| Amendment No. 2 | September 27, 1994 | November 1, 1996 |
| Amendment No. 3 | April 27, 1995 | November 1, 1996 |
| Amendment No. 4 | May 18, 1998 | May 1, 1999 |

Complaint, ¶¶12-24, and Exhibits A-E thereto.

On April 14, 1999, with the extended termination date of May 1, 1999 looming on the horizon and no completed exclusive Nissan showroom, NNA sent M'Lady a Notice of Default pursuant to M'Lady's Dealer Agreement. Complaint, ¶¶25-26 and Exhibit F thereto. NNA then gave M'Lady another chance, and by letter dated June 25, 1999 offered it an additional one hundred eighty (180) days (expiring on December 14, 1999) to either begin construction of an exclusive Nissan showroom or to provide an exclusive Nissan showroom at the M'Lady facility. Complaint, ¶27 and Exhibit G thereto. M'Lady neither accepted this offer nor complied with its contractual obligation to build the exclusive Nissan showroom by May 1, 1999. Complaint, ¶28.

Instead, M'Lady filed a notice of protest on October 20, 2000 with the IMVRB based upon NNA's notice of termination ("Protest #1"). Complaint, ¶29. Within a month, NNA submitted the dispute to arbitration based upon the arbitration clause contained in the Dealer Agreement, and moved to stay the proceedings under Protest #1 with the IMVRB. Complaint, ¶30. After the IMVRB denied NNA's motion to stay, NNA initiated an action in this Court to compel arbitration. Complaint, ¶30. *See also Nissan North America, Inc. v. Jim M'Lady Oldsmobile, Inc. d/b/a/ Jim M'Lady Nissan*, Civil Action No. 01 C 01290. Six and one-half years of litigation followed,

2

during which the parties extensively litigated the issue of whether there was any operative written agreement between NNA and M'Lady.  Complaint, ¶31.  On May 11, 2007 the United States Court of Appeals for the Seventh Circuit held that there was no valid existing written agreement between the parties, and thus no written arbitration agreement to enforce.  Complaint, ¶32; *Nissan North America, Inc.*, 486 F.3d at 997.  The Court of Appeals held, *inter alia*:

- "[The] contract … by its own terms expired in 1999 … [and] M'Lady did not accept any offer to extend the term of the Dealer Agreement" Complaint, ¶33; *Nissan North America, Inc.*, 486 F.3d at 994-96;

- "The Dealer Agreement specified that it would automatically terminate at the end of the stipulated term without any action by either party." Complaint, ¶33; *Nissan North America, Inc.*, 486 F.3d at 990;

- "[T]he Dealer Agreement … required all changes to the agreement to be made in writing signed by both parties.  There is no evidence that the parties ever agreed to alter that requirement to allow oral modifications or modifications implied in fact."  Complaint, ¶33; *Nissan North America, Inc.*, 486 F.3d at 996-97.

**B.    After Issuance of the Decision by the Court of Appeals, the Parties Agreed to Dismissal of Protest #1.**

NNA, after issuance of the decision from the Court of Appeals, moved to dismiss Protest #1 on the grounds that the basis for the protest was moot.  Complaint, ¶34.  M'Lady agreed to dismissal of Protest #1, reserving its claim for attorneys' fees in the Protest.  Complaint, ¶34. Although NNA opposes an award of attorney's fees in connection with that Protest, NNA does not raise this issue in the Complaint, and contrary to M'Lady's arguments, that issue is not before this Court.  Complaint, ¶¶34, 53-106.

**C.    Protest #2, Filed by M'Lady, is Based upon a Non-Existent Contract and an Offer that was Rejected and Rescinded.**

Just as the basis for Protest #1 is moot, so is the second protest filed by M'Lady.  This second protest followed the decision issued in May 2007 by the Court of Appeals.  On May 25, 2007, NNA offered a written Sales and Service Agreement to M'Lady.  Complaint, ¶36.

3

M'Lady rejected the offer and filed a Notice of Protest with the IMVRB on July 11, 2007 ("Protest #2) objecting to the terms of the written Sales and Service Agreement. Complaint, ¶36. M'Lady asserted in Protest #2 that the written Sales and Service Agreement sent on May 25, 2007 substantially changed or modified the existing obligations of M'Lady. Complaint, ¶36. That M'Lady believes the terms of this Sales and Service Agreement to be substantially different than its existing obligations evidences the lack of any agreement, written or oral, between the parties, as there is no meeting of the minds on the terms. Complaint, ¶37. On or about November 1, 2007, NNA sent a letter to M'Lady confirming M'Lady's rejection of the Sales and Service Agreement offer, and confirming the fact that there were no outstanding offers between the parties. Complaint, ¶45. NNA also stated that it would not proceed with termination of sales to M'Lady until this litigation concluded or until further notice from NNA. Complaint, ¶45. Because the offer on which Protest #2 was filed is no longer outstanding, the issues raised in Protest #2 are moot. There is nothing before the IMVRB for determination on Protest #2 and the only action left for the IMVRB is dismissal.

**D.    The IMVRB and M'Lady Failed to Set Hearing Dates in Accordance with the Illinois Administrative Code Requirement.**

As detailed above, the franchise issues raised in both Protest #1 and Protest #2 are moot and, accordingly, there is no franchise issue over which the IMVRB retains jurisdiction. In addition, the IMVRB does not have jurisdiction over these matters because no hearing dates were set, and no hearings conducted in accordance with 92 Illinois Administrative Code Section 1001.760(a)(2)(C) for either Protest #1 or Protest #2. Complaint, ¶40-44, 69-75, 85-90.

**E.    The Conduct of M'Lady Further Evidences the Lack of Any Agreement Between the Parties.**

After the expiration of the May 21, 1992 Sales and Service Agreement on May 1, 1999, M'Lady prevented NNA from conducting business with M'Lady in NNA's customary and

routine manner.    Complaint, ¶46.    After expiration of the agreement M'Lady was not professional in its dealings with NNA personnel, and refused to even meet or confer with certain representatives of NNA.    Complaint, ¶¶47-48.    This flat refusal by M'Lady continues to date. Complaint, ¶48.    M'Lady has since May 1, 1999 to date, been confrontational, irrational and argumentative to the point that it has frustrated the business relationship, and evidenced a lack of good faith by M'Lady.    Complaint, ¶¶48-51.    There is no agreement, written or oral between the parties and certainly no "community of interest in the marketing of motor vehicles or services." *See* 815 ILCS 710/2(i).

## III.    ARGUMENT

This Court has subject matter jurisdiction over the claims asserted in this matter, which center on whether an oral contract exists between the parties and the jurisdictional power of an administrative agency.    Both of these issues fall within the power of this Court, and there is no basis for the Court to abdicate its authority over the matter.    The factual allegations that demonstrate the lack of jurisdiction by the IMVRB boil down quite simply:    there is no existing "franchise agreement" for the IMVRB to consider, the existing Protest #1 and #2 are moot, and no hearing was set or conducted by the IMVRB in Protest #1 and #2 in accordance with regulatory requirements.

"When ruling on a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the district court must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995) (Court determined threshold issue of whether plaintiff was Federal employee and therefore entitled to relief only through procedures available under the Federal Employees' Compensation Act).    Because the facts of this case demonstrate subject matter jurisdiction for this Court to rule on the claims asserted by NNA, M'Lady's motion to dismiss should be denied.

A/72403109.1

A.    **The Claims in the Complaint Raise Issues of Contract and Subject Matter Jurisdiction, Over which this Court has Jurisdiction.**

This Court has jurisdiction over the requests for declaratory relief sought by NNA in the Complaint.  The IMVRB has, at most, concurrent jurisdiction which does not preclude NNA from filing its claims before this Court and does not divest this Court of its subject matter jurisdiction.

1.    **A Declaration that there is No Written or Oral Franchise Agreement Under the Franchise Act is Within the Jurisdiction of this Court.**

This Court has subject matter jurisdiction over the claims for declaratory relief asserted in the Complaint.  *See MedImmune, Inc. v. Genentech, Inc.*, 127 S.Ct. 764, 777 (2007) (reversing dismissal of declaratory judgment action for lack of subject matter jurisdiction, holding that plaintiff need not break or terminate its agreement before seeking a declaration that the underlying patent was invalid, unenforceable or not infringed).  In fact, M'Lady does not appear to argue that this Court lacks subject matter jurisdiction over the claims asserted in the Complaint, but rather asserts that filing the Complaint was somehow improper solely because M'Lady initiated the IMVRB protests described above.

M'Lady's assertion, however, wholly ignores the principle of concurrent jurisdiction which, under Illinois law, provides that, at most, the IMVRB has concurrent jurisdiction and does not divest this Court of subject matter jurisdiction.  "The courts of Illinois have original jurisdiction over all justiciable matters."  *Employers Mutual Cos. v. Skilling*, 644 N.E.2d 1163, 1165 (Ill. 1994), citing Ill. Const. 1970, art. VI, §9.  "While the legislature generally cannot deprive courts of this jurisdiction, an exception arises in administrative actions.  Because it establishes administrative agencies and statutorily empowers them, the legislature may vest exclusive jurisdiction in the administrative agency."  *People v. NL Industries*, 604 N.E.2d 349, 355 (Ill. 1992).  "However, if the legislative enactment does divest the circuit courts of their

original jurisdiction through a comprehensive statutory administrative scheme, it must do so _explicitly_." *Employers Mutual Cos.*, 644 N.E.2d at 1165 (emphasis added).

The requirement that any divestment of original jurisdiction from the Illinois courts be explicit has been strictly construed. For example, in *Employers Mutual Cos.* the defendant moved to dismiss for lack of subject matter jurisdiction on the grounds that the Industrial Commission was the proper forum to resolve a claim centered around insurance coverage pursuant to a workers' compensation policy. 644 N.E.2d at 1164. The issue before the Court in *Employers Mutual Cos.* was "one of jurisdiction. Is jurisdiction exclusive with the administrative agency, or is it concurrent with the circuit court?" 644 N.E.2d at 1165. The relevant provision of the Worker's Compensation Act stated that "**_[a]ll questions arising under this Act_**, if not settled by agreement of the parties interested therein, **_shall_**, except as otherwise provided, _be determined by the Commission_." *Id*, quoting 820 ILCS 305/18 (emphasis added). The Illinois Supreme Court held that this Act's "pronouncement … is _insufficient_ to divest the circuit courts of jurisdiction." *Id.* at 287 (emphasis added). *See also Village of Itasca v. Village of Lisle*, 817 N.E.2d 160, 166 (Ill. App. Ct. 2004) (Statute which provided that the Illinois Department of Revenue "has the power to administer and enforce all the rights, powers, and duties contained in the [Tax Act] to collect all revenues thereunder" did not divest Illinois courts of subject matter jurisdiction.). Therefore, pursuant to the holding of the Illinois Supreme Court in *Employers Mutual Cos.* an Illinois court may not be divested of its jurisdiction in favor of an administrative agency unless the administrative agency is granted sole and exclusive jurisdiction in the statute and the statue explicitly states that the Illinois courts are divested of their jurisdiction under the act. *Employers Mutual Cos.*, 644 N.E.2d at 1165.

Here, the relevant statutory scheme is the Illinois Motor Vehicle Franchise Act, 815 ILCS 710 *et seq* (the "Franchise Act"). The Franchise Act contains <u>no</u> provision divesting Illinois courts of original jurisdiction over any motor vehicle franchise issues, nor does it vest sole and exclusive jurisdiction with the IMVRB. *See* 815 ILCS 710 *et seq*. *See also Rolls-Royce v. Luxury Motors, Inc*., 2004 WL 1375540*2 (N.D.Ill. June 17, 2004) ("the issue of whether the Defendants failed to comply with the [Franchise Act] is not within the exclusive jurisdiction of the IMVRB. *See* 815 ILCS 710 *et seq."*)

To the contrary, the Franchise Act specifically contemplates that matters may be heard by not only the IMVRB, but by arbitrators (815 ILCS 710/12(a)) and by the Illinois courts (815 ILCS 710/13 and 815 ILCS 710/12(e)). The Act also provides that "[a]ny person who engages directly or indirectly in purposeful contacts within this State in connection with the offering or advertising for sale or has business dealings with respect to a motor vehicle within the State shall be subject to the provisions of this Act and *shall be subject to the jurisdiction of the courts of this State*." 815 ILCS 710/3. The provisions of the Franchise Act that vest (concurrent) jurisdiction with the IMVRB are even less firm than the relevant provisions of the Worker's Compensation Act at issue in *Employers Mutual Cos.* The Illinois Supreme Court held that jurisdiction was not exclusive to the administrative agency under the Workers' Compensation Act, which stated that "*[a]ll* questions arising under this Act, … *shall,* … *be determined by the Commission*." 820 ILCS 305/18 (emphasis added). The relevant provision of the Motor Vehicle Franchise Act states only that "[i]f the franchiser and the franchisee have not agreed to submit a dispute … to arbitration … then a proceeding before the Motor Vehicle Review Board … shall be commenced upon receipt by the Motor Vehicle Review Board of a timely notice of protest… ." 815 ILCS 710/12(b). Unlike the Worker's Compensation Act, the Franchise Act does not demand that *all* issues *shall* be determined by the IMVRB, but rather simply states that a proceeding shall have

8

been commenced by filing a timely protest. In *Rolls-Royce v. Luxury Motors, Inc*., the District Court specifically held that "the issue of whether the Defendants failed to comply with the [Illinois Motor Vehicle Franchise Act] is not within the exclusive jurisdiction of the IMVRB. *See* 815 ILCS 710 *et seq."  Rolls-Royce*, 2004 WL 1375540*2.

Accordingly, the jurisdictional power vested in the IMVRB by the legislature falls well short of the sole and exclusive jurisdiction that explicitly divests the Illinois courts of jurisdiction, and as such this Court has jurisdiction that is, at most, concurrent with the IMVRB. Accordingly, M'Lady's motion to dismiss should be denied.

> **2.    Because the Declaratory Relief Requested in the Complaint is Within the Expertise of this Court, the Doctrine of Primary Jurisdiction Does Not Apply.**

In its Complaint, NNA seeks a declaration that there was no meeting of the minds between the parties and, therefore, no oral franchise. If, as NNA contends, this Court answers this threshold question in the affirmative, then the IMVRB is without jurisdiction and it becomes axiomatic that the remaining issues raised in the Complaint must be adjudicated by this Court. This basic question is not outside the expertise of this Court and accordingly the doctrine of primary jurisdiction does not apply.

"The doctrine of primary jurisdiction provides that where a court has jurisdiction over a matter, it should in some instances stay the judicial proceedings pending referral of a controversy, or some portion of it, to an administrative agency having expertise in the area." *Employers Mutual Cos.*, 644 N.E.2d at 1165, citing *NL Industries*, 604 N.E.2d at 354. "No fixed formula exists for applying the doctrine of primary jurisdiction." *Village of Itasca*, 817 N.E.2d at 167. Rather a general rule applies that "when an agency's technical expertise is not likely to be helpful, or there is no need for uniform administrative standards, courts should not relinquish their authority over a matter to an agency." *Id* at 168. In addition, if the dispute involves issues

9

of law then "[i]t is the particular province of the courts to resolve questions of law …
[a]dministrative agencies are given wide latitude in resolving factual issues but not in resolving
matters of law." *Employers Mutual Cos.*, 644 N.E.2d at 1166 (holding that primary jurisdiction
did not apply to request for declaratory judgment).

The United States Supreme Court addressed the doctrine of primary jurisdiction in *Nader
v. Allegheny Airlines, Inc.*, 426 U.S. 290 (1976).  In *Nader*, the Supreme Court reversed the
Court of Appeals and held that the doctrine of primary jurisdiction did not apply to an action
involving the Federal Aviation Act and a claim regarding a passenger "bumped" from a flight
because, although the Civil Aeronautics Board sets the regulations regarding boarding priority of
passengers and compensation for denied boarding,

> [t]he action brought by petitioner does not turn on a determination of the
> reasonableness of a challenged practice[,] a determination that could be facilitated
> by an informed evaluation of the economics or technology of the regulated
> industry.  *The standards to be applied* in an action for fraudulent
> misrepresentation *are within the conventional competence of the courts*, and the
> judgment of a technically expert body is not likely to be helpful in the application
> of these standards to the facts of this case.

426 U.S. 290, 305-306 (1976) (emphasis added).

The Complaint filed by NNA here, which involves claims of the type this Court has
adjudicated on countless occasions, is not like the matters presented in *Kerr-McGee Chemical
Corp. v. Department of Nuclear Safety*, 561 N.E.2d 1370 (Ill. 1990) in which the court found
that the doctrine of primary jurisdiction necessitated referral of the case to the appropriate
agency.  In *Kerr-McGee*, the issues were "highly technical" involving federal statutes and
regulations on nuclear safety.  Here, the issues of contract and jurisdiction are standard fare for
this Court and do not give rise to primary jurisdiction.  *Kellerman v. MCI Telecommunications
Corp.*, 493 N.E.2d 1045, 1053 (Ill. 1986) ("The legal and factual issues that are involved in

these cases are standard fare for judges, and, consequently, must be deemed to be 'within the conventional competence of the courts.'") (citations omitted).  *See also Steward v. Allstate Insurance Co.*, 415 N.E.2d 1206 (Ill. 1980) (no primary jurisdiction on claim under Illinois Insurance Code for breach of insurance agreement).  In addition, the question of whether the IMVRB waived jurisdiction in failing to set or conduct hearings in accordance with its statutory mandate is a question of law that should not be referred to an administrative agency. *Employers Mutual Cos.*, 644 N.E.2d at 1166 (issues of law are the "province of the courts," not administrative agencies).

In *Rolls-Royce v. Luxury Motors, Inc.*, the United States District Court for the Northern District of Illinois rejected a dealer's argument that "the IMVRB has specialized knowledge and expertise regarding automobile dealership agreements and governing law and …, thus, the [action] should be stayed so that the IMVRB may decide the [Franchise Act] issue."  *Rolls-Royce,* 2004 WL 1375540*2.  "To the contrary, claims relating to the IMVFA have been decided by the District Courts without the need for input from the IMVRB," as should the claims in this case be determined.  *Id*, citing *Servpro Indust., Inc. v. Schmidt,* 1997 WL 158316 (N.D.Ill. March 31, 1997); *Chrysler Credit Corp. v. Anthony Dodge, Inc.,* 1996 WL 509888 (N.D.Ill. Sept. 4, 1996); *Northwestern Buick, Inc. v. Nissan Motor Corp. in the U.S.A.,* 1990 WL 43316 (N.D.Ill. March 29, 1990).

Because the Court has jurisdiction to resolve this matter, and because the contract and jurisdictional issues before it do not implicate the doctrine of primary jurisdiction, M'Lady's motion to dismiss for lack of subject matter jurisdiction should be denied.

11

   **B.    Principles of Ripeness and Exhaustion of Remedies are Irrelevant to Actions in which the Court has Concurrent Jurisdiction with an Administrative Agency.**

Because the IMVRB lacks exclusive jurisdiction, the principles of ripeness and exhaustion of remedies do no apply.  As discussed above, "the doctrine of primary jurisdiction only applies when a court has either original or concurrent jurisdiction over the subject matter of the dispute." *Employers Mutual Cos.*, 644 N.E.2d at 1165.  In contrast, the "doctrine of exhaustion of remedies is applied *only* where the administrative agency has *exclusive jurisdiction* to hear the action." *Id* at 1166 (emphasis added).  As detailed in section III.A.1 *supra*, the Franchise Act does not vest the IMVRB with sole and exclusive jurisdiction over the subject matter of this action.  Accordingly, because this Court has concurrent, if not original, jurisdiction over this matter "the doctrine of exhaustion of remedies is inapplicable to the present case." *Id* at 1166. *See also*, *NL Industries*, 604 N.E.2d at 357 (Because the Illinois court was vested with concurrent jurisdiction to hear the action, "it was not necessary in this case for the State to have exhausted its administrative remedies before filing suit in the circuit court" as the doctrine applies only where an agency has exclusive jurisdiction.).

In its Motion to Dismiss, M'Lady states that it had "not found a single decision in which, absent an issue of federal law (*i.e.*, the plaintiff's civil rights were allegedly violated), a United States District Court reviewed a decision by the Board, let alone decided an issue under the Illinois Motor Vehicle Franchise Act that was pending before the Board."  M'Lady Memorandum in Support at p. 9.  In *Rolls-Royce v. Luxury Motors, Inc.* the District Court exercised jurisdiction over trademark claims, as well as claims brought under the Franchise Act that were simultaneously pending in an action before the IMVRB.  2004 WL 1375540*2-3.  The Court rejected the arguments in *Rolls-Royce* for dismissal of the District Court action, including arguments under the doctrines of primary jurisdiction and *Colorado River*.  (*See* sections III.A.2 and III.E.)

12

Putting aside the fact that there are no issues (other than a request for attorneys' fees) before the IMVRB for NNA to exhaust, whether or not NNA did in fact do so is irrelevant because the IMVRB does not have exclusive jurisdiction.[1]

**C.    The IMVRB Lacks Jurisdiction Over the Issues Raised in the Complaint Because: (1) There is No Franchise Agreement as Defined by the Act; (2) The Issues Raised in Protest #1 and Protest #2 are Moot or Irrelevant; and (3) The Board Waived Jurisdiction by Failing to Set and Conduct Hearings.**

In its motion to dismiss, M'Lady contends not only that this Court lacks subject matter jurisdiction, but that the IMVRB does have jurisdiction to determine the NNA's requests for declaratory relief raised in the Complaint. The second argument is as flawed as the first.

To begin with, NNA alleges that there is no oral franchise agreement, as there is no meeting of the minds on terms. *Ezekiel*, 66 F.3d at 897 ("When ruling on a motion to dismiss for lack of subject matter jurisdiction … the district court must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff."). Under the Franchise Act, the IMVRB is vested with concurrent jurisdiction over a variety of disputes. 815 ILCS 710/12(b)-(d). However, none of the bases for the IMVRB to hear a protest include the threshold declaration of whether or not an oral franchise exists. 815 ILCS 710/12(b)-(d). Instead, the statute contemplates issues of adding, selling or relocating franchises, and cancelling, terminating, refusing to extend or renew franchises, changing or modifying the obligations as a condition for offering a renewal of a franchise, and replacement or succeeding

---

[1] M'Lady cites *General Motors Corp v. Illinois Motor Vehicle Review Board*, 836 N.E.2d 903 (Ill. App. Ct. 2005) for the proposition that a court will decline to exercise jurisdiction on matters currently before an administrative agency if no final decision has been rendered. However, the facts and holding of *General Motors* are irrelevant to the analysis of this action. *General Motors* involved a full hearing before the IMVRB, with approximately 200 exhibits and 18 witnesses, from which a decision was issued that was then appealed to the Illinois court. The Appellate Court of Illinois held that, in this matter, the appeal of the attorneys' fees issue was not ripe as the IMVRB has not yet determined the amount of fees to be assessed. Thus, the issue in *General Motors* was not one of exhaustion of remedies, but rather appellate jurisdiction over a matter not yet decided by the agency.

13

franchise or selling agreements. 815 ILCS 710/12(c)-(d). Indeed, if a dispute does not arise under the provisions detailed in 815 ILCS 710/12(b)-(d) then a party is directed to file its dispute with the Illinois courts. 815 ILCS 710/12(b)-(e). Therefore, the IMVRB has no jurisdiction over NNA's request for a declaration that there is no oral franchise agreement.

Because Protest #2 is moot, it presents no issues for the IMVRB to decide and there is nothing for the IMVRB to do but dismiss the protest. As detailed more fully in the statement of facts, M'Lady filed Protest #2 based upon an offer of a Sales and Services Agreement that is no longer outstanding. NNA has confirmed with M'Lady that the offer is no longer outstanding and that there are no offers open between the parties. There is nothing remaining over which the IMVRB could assert jurisdiction.

With respect to Protest #1, both parties have agreed to dismissal of the protest save M'Lady's claim for attorneys' fees. However, M'Lady's ability to recoup statutory attorneys' fees is dependent on the threshold issue of whether the IMVRB has jurisdiction.

Finally, with respect to both Protest #1 and Protest #2, the IMVRB does not have jurisdiction because it failed to set and conduct hearings in accordance with 92 Illinois Administrative Code Section 1001.760(a)(2)(C), which provides

> The hearing officer may continue the hearing date more than 90 days from the date of the Board's initial order scheduling the hearing *only* if the parties agree to the continuance and the hearing officer finds that due to the complexity of the issue(s) involved meaningful hearing could not be held prior thereto.

92 Illinois Administrative Code Section 1001.760(a)(2)(C) (emphasis added).

On August 1, 2007, the Illinois Motor Vehicle Review Board issued its Order Scheduling a Hearing in Protest #2, which set a hearing for September 10, 2007. Complaint, ¶39. In the absence of an agreement by the parties and a finding by the hearing officer that the case presents complex issues requiring protracted litigation, the hearing on Protest #2 was required to take place no later than Wednesday, October 31, 2007. Complaint, ¶41. No hearing was conducted

and NNA did not agree to continue the hearing; M'Lady did not seek an order extending the hearing, and the Hearing Officer did not make any finding that the issue involved complex issues that precluded a hearing by October 31, 2007. Complaint, ¶42-44.

Similarly, in Protest #1, no hearing was timely set or held. On June 21, 2001, the United States District Court for the Northern District of Illinois entered an order staying M'Lady's Protest #1 before the IMVRB pending a final determination as to the whether NNA and M'Lady had agreed to submit disputes arising under the dealer agreement to arbitration. Complaint, ¶79. On May 11, 2007, the Court of Appeals issued its opinion in *Nissan North America, Inc. v. Jim M'Lady Oldsmobile, Inc. d/b/a Jim M'Lady Nissan*, 486 F.3d 989 (7th Cir. 2007), which lifted the stay and remanded the protest back to the Illinois Motor Vehicle Review Board. Complaint, ¶¶80-82. NNA moved to dismiss Protest #1, and M'Lady agreed by response dated August 16, 2007, but sought an order awarding attorneys' fees. Complaint, ¶84. Since August 16, 2007 M'Lady has presented no evidence regarding attorneys' fees, NNA did not agree to a continuance, more than 90 days have passed since the stay was lifted, and no hearing was scheduled or conducted. Complaint, ¶85-88.

M'Lady characterizes the requirement that a hearing be set and conducted in a timely manner a "discretionary procedure" of the Board. However, the clear statutory language states otherwise, requiring that a date "shall" be set within 60 days of the order and may only under certain circumstances be extended. None of those circumstances were met, the inaction divests the IMVRB of its jurisdiction, and accordingly M'Lady's motion to dismiss must be denied.

    **D.**    **The *Burford* Abstention Doctrine Does Not Apply as the Issues of State Law Do Not Transcend the Result in the Individual Case.**

Just as this Court previously denied M'Lady's efforts to obtain abstention under the *Burford* doctrine in the previous litigation with NNA before this Court, so should it here. In *Burford v. Sun Oil Co.,* 319 U.S. 315 (1943), the Supreme Court created an abstention doctrine

based upon the concept that a district court could abstain from the exercise of jurisdiction in limited circumstances that involve a "difficult issue of state regulation because of the complexity of the state law issue, the expertise of the state court, the predominance of local issues, and the need for coherent state doctrine in the area. … [with] abstention … appropriate where the importance of the issues of state law transcend the result in the individual case. *Adams v. Attorney Registration & Disciplinary Comm'n of Supreme Court*, 60 F. Supp. 390, 396 (N.D.Ill. 1984) (court declined to exercise abstention, which it held to be "a narrow exception to the duty of a federal court to adjudicate a controversy before it and is justified only in exceptional circumstances") *aff'd on other grounds*, 801 F.2d 968 (7th Cir. 1986) (citations omitted). M'Lady argued in its previous litigation with NNA that the *Burford* doctrine should apply. The District Court rejected this argument, which was affirmed by the Court of Appeals. *Nissan North America, Inc. v. Jim M'Lady Oldsmobile, Inc.*, 2001 WL 709482*6 (N.D.Ill. June 25, 2001), *rev'd on other grounds* 307 F.3d 601, 603 ("no difficulty with the district court's refusal to stay Nissan's petition to compel arbitration" based upon inapplicability of *Burford* and *Colorado River* doctrines). No Illinois court has applied the *Burford* abstention doctrine to any claim involving the Illinois Motor Vehicle Franchise Act. Indeed, quite the opposite, "claims relating to the IMVFA have been decided by the District Courts without the need for input from the IMVRB." *Rolls-Royce,* 2004 WL 1375540*2, citing *Servpro Indust., Inc.,* 1997 WL 158316; *Chrysler Credit Corp.,* 1996 WL 509888; *Northwestern Buick, Inc.,* 1990 WL 43316. Declining to apply the *Burford* doctrine here is even more appropriate, as no franchise agreement exists, and NNA merely seeks a declaration affirming the same. Illinois courts have declined to apply the *Burford* doctrine to claims involving the Illinois Motor Vehicle Franchise Act, a precedent that given the relief requested in the Complaint warrants no contrary decision here.

16

> **E.** ***Colorado River* Does Not Apply Because There Are No Parallel Proceedings and No Exceptional Circumstances Warranting Abstention.**

M'Lady also argues that this Court should stay this action under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976) in favor of the Protests filed before the IMVRB, despite the fact that neither Protest #1 or Protest #2 address the threshold jurisdiction issue raised in this matter -- the lack of an oral franchise agreement between the parties. While federal courts may stay an action and wait for a decision of parallel proceedings as a matter of "wise judicial administration," any such stay should only be granted in "exceptional cases." *See Finova Capital Corp. v. Ryan Helicopters U.S.A., Inc.,* 180 F.3d 896, 898 (7th Cir.1999), citing *Colorado River*, 424 U.S. at 817 (1976). This is not such an "exceptional case."[2]

---

[2] Nor should the Court, in its discretion, abstain from adjudicating NNA's request for declaratory relief pursuant to the Declaratory Judgment Act. *See* 28 U.S.C. §2201(a) ("any court of the United States, upon filing an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought"). "If a district court, in the sound exercise of its judgment, determines after a complaint is filed that a declaratory judgment will <u>serve</u> <u>no</u> <u>useful</u> <u>purpose</u>, it cannot be incumbent upon that court to proceed to the merits before staying or dismissing the action" *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995) (affirming abstention from request for declaratory relief when law suit involving identical issues was pending in another jurisdiction) (emphasis added).

However, "[i]f the declaratory judgment will clarify and settle the disputed legal relationships and afford relief from the uncertainty and controversy that created the issues, it is usually resolved rather than dismissed." *NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 578 (7th Cir. 1994) (affirming exercise of jurisdiction over declaratory action which sought clarification of contractual relationship between parties). Courts may consider the following factors to determine if "a declaratory judgment will settle the particular controversy and clarify the legal relations in issue:" "(1) whether the judgment would settle the controversy; (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for *res judicata*'; (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach on state jurisdiction, and (5) whether there is an alternative remedy that is better or more effective." *Id* at 579 (citations omitted). This Court should not abstain from exercising jurisdiction over this declaratory action because the declaratory relief requested by NNA would settle a controversy by clarifying the legal relationship of the parties on issues that are appropriately before and adjudicated by this Court.

The first inquiry under *Colorado River* is whether the two actions are in fact parallel, meaning that substantially the same parties are litigating substantially the same issues. *Finova Capital Corp.,* 180 F.3d at 898. In this action, the issues do not overlap. Indeed the only remaining issues before the IMVRB are whether M'Lady is entitled to attorneys' fees in Protest #1. Neither of the Protests addresses the issue of whether there is or is not an oral franchise agreement. Because the proceedings are not parallel, the Court should not abstain under the *Colorado River* doctrine.

Even if the actions were parallel, which they are not, the ten factors used to determine whether exceptional circumstances warrant a stay clearly balance in favor of abstention:

> (1) whether the state court has assumed jurisdiction over the property at issue;
> (2) the inconvenience of the federal forum;
> (3) the desirability of avoiding piecemeal litigation;
> (4) the order in which the courts obtained jurisdiction;
> (5) whether the source of governing law is state or federal;
> (6) the adequacy of the state court action to protect the federal plaintiff's rights;
> (7) the relative progress of the actions;
> (8) the presence or absence of concurrent jurisdiction;
> (9) whether the state court action is removable; and
> (10) whether the federal action was filed for vexatious or contrived purposes.

*Finova Capital Corp.,* 180 F.3d at 898. M'Lady concedes that factors 1, 2 and 9 are not applicable in this action. With respect to factor 3, as discussed above, the issues before the IMVRB do not overlap with the relief requested in this Complaint, and therefore there is no "piecemeal" litigation. Factors 4 and 7 concern the progression of the litigation. While the Protests were filed first, nothing has progressed before the IMVRB, and indeed both M'Lady and the IMVRB has been entirely inactive in both Protests for months. It is settled law that the District Court interprets the law and protects the interests of parties in disputes concerning the Franchise Act, with factors 5 and 6 weighing against abstention. *Rolls-Royce,* 2004 WL 1375540*2 ("claims relating to the IMVFA

have been decided by the District Courts") (citation omitted).  With respect to factor 8, M'Lady asserts that it is not applicable.  However, in its Complaint, M'Lady requests a declaration regarding issues of law, *i.e.*, whether the IMVRB has jurisdiction over Protests #1 and #2.  These issues of law are the province of the Court, not the administrative agency, and therefore concurrent jurisdiction of all issues rests only in this forum.  Finally, M'Lady argues that this action constitutes "vexatious" litigation because NNA brings its claims to this Court (which has concurrent jurisdiction) without exhausting remedies (that are inapplicable without exclusive jurisdiction by the administration agency).  Far from "vexatious," NNA merely seeks declaratory judgment through the forum that it contends has jurisdiction over all the issues raised in the Complaint and was the most appropriate forum to hear the dispute.

Accordingly, because there are no parallel proceedings and because the factors weigh against any finding of exceptional circumstances necessary to justify *Colorado River* abstention, M'Lady's motion to dismiss should be denied.

## IV.    CONCLUSION

For the foregoing reasons, NNA respectfully requests that the Court deny M'Lady's Motion to Dismiss in its entirety.

A/72403109.1

Respectfully submitted,

**NISSAN NORTH AMERICA,
INCORPORATED,**

By its attorneys,

_____
Bruce S. Terlep
Matthew D. Jacobson
**SWANSON, MARTIN & BELL, LLP**
2525 Cabot Drive, Suite 204
Lisle, Illinois 60532
(630) 799-6900

William N. Berkowitz, admitted *pro hac vice*
Mary B. Murrane, admitted *pro hac vice*
**BINGHAM MCCUTCHEN LLP**
150 Federal Street
Boston, MA  02110-1726
617.951.8000

Dated: February 8, 2007

20