UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NISSAN NORTH AMERICA, INC., ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | No. 07 C 6304 |
| ) | Hon. Joan Gottschall |
| ) | |
| JIM M'LADY OLDSMOBILE, INC. ) | |
| JIM M'LADY NISSAN, ) | |
| ) | |
| Defendant. ) | |

## AMENDED AGREED MOTION TO FILE 18-PAGE REPLY BRIEF INSTANTER

Defendant Jim M'Lady Oldsmobile, Inc. ("M'Lady") respectfully moves this Court to enter, by agreement of the parties, an order granting M'Lady to file, instanter, its 18-Page Reply In Support of its Motion to Dismiss Plaintiff's Complaint for Declaratory Judgment, a copy of which is attached hereto, and in support thereof states as follows:

1. On February 8, 2008, Plaintiff filed a 20-page Response in opposition to Defendant's Motion to Dismiss.

2. Defendant's Reply was due to be filed on March 7, 2008.

3. Due to prior commitments of counsel for M'Lady, M'Lady was unable to file its Reply by March 7, 2008.

4. Prior to March 7, 2008, counsel for M'Lady contacted counsel for Defendant who did not object to M'Lady filing its Reply today.

5. Counsel for Defendant also has not objected to M'Lady's filing a Reply brief in excess of 15 pages.

6. When granted leave to file, M'Lady will file the Reply with a table of contents and table of cases, as required by Local Rule 7.1.

WHEREFORE, Defendant Jim M'Lady Oldsmobile, Inc. requests an order by this Court granting M'Lady leave to file, instanter, its 18-Page Reply In Support of its Motion to Dismiss Plaintiff's Complaint for Declaratory Judgment.

Dated: March 13, 2008

Respectfully submitted,

JIM M'LADY OLDSMOBILE, INC.

By:   /s/ Aaron H. Stanton
         One of its Attorneys

Ira M. Levin
Aaron Stanton
Burke, Warren, MacKay & Serritella, P.C.
330 North Wabash Avenue, 22nd Floor
Chicago, Illinois 60611
(312) 840-7000
(312) 840-7900 (FAX)

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NISSAN NORTH AMERICA, INC., | ) | |
| Plaintiff | ) ) ) | |
| v. | ) ) | No. 07 C 6304 |
| | ) ) | Hon. Joan Gottschall |
| JIM M'LADY OLDSMOBILE, INC. d/b/a JIM M'LADY NISSAN, | ) ) ) | |
| Defendant. | ) ) | |

### REPLY IN FURTHER SUPPORT OF
### M'LADY'S 12(b)(1) MOTION TO DISMISS

Defendant Jim M'Lady Oldsmobile, Inc. d/b/a Jim M'Lady Nissan ("M'Lady") submits this Reply in Further Support of Its Motion to Dismiss Nissan North America, Inc.'s ("NNA") Complaint for Declaratory Judgment, under Federal Rule of Civil Procedure 12(b)(1), on the grounds that it is barred by the ripeness doctrine, the exhaustion of administrative remedies/primary jurisdiction doctrines, and/or the *Burford* abstention doctrine; or, in the alternative, should be stayed under the *Wilton/Brillart* abstention doctrine.

### INTRODUCTION

This lawsuit is a thinly veiled attempt to induce a federal court to grab and re-litigate an already pending state dispute from the state administrative agency charged by state statute with the duty to hear such disputes. This Court should reject NNA's invitation to usurp the jurisdiction of the state of Illinois and to multiply this dispute into duplicative, simultaneously pending proceedings.

In its Complaint, NNA asks the Court to declare that "NNA has 'good cause' to terminate M'Lady as a Nissan dealer." (Compl. at p. 19, prayer for relief.) Under the Illinois Motor

Vehicle Franchise Act ("IMVFA"), such "good cause" hearings are *expressly assigned* to the Illinois Motor Vehicle Review Board (the "Board"). 815 ILCS 710/12(b).[1] Moreover, this precise issue -- "good cause" -- is already pending before the Board, and has been pending since well before NNA filed this lawsuit. In addition, NNA itself *demanded* that M'Lady submit this dispute to the Board as part of NNA's notice to M'Lady, dated May 23, 2007, sent under the applicable provisions of IMVFA:

> This New Dealer Agreement is being submitted to Jim M'Lady pursuant to 815 ILCS 710/4(d)(6)(B). Please be advised that the execution of this written Dealership Agreement is a condition to the extension of the existing franchise relationship between NNA and M'Lady. *Please be advised that, pursuant to 815 ILCS 710/4(d)(6)(B), Jim M'Lady has 30 days from the receipt of such agreement to file with the Motor Vehicle Review Board a written protest against the proposed action.* If Jim M'Lady does not file a timely protest with the Board and also refuses to sign the written New Dealership Agreement within the following 60 days, NNA will have no other option but to terminate the existing franchise agreement in accordance with 815 ILCS 710/4 *et seq.*

(NNA's May 23, 2007 letter to M'Lady at p. 2, attached as <u>Exhibit C</u> to M'Lady's Memorandum in Support of its Motion to Dismiss ("Mem.")) (Emphasis added). On the face of it, NNA has no business to submit the very same dispute to this Court. Accordingly, M'Lady has moved to dismiss.

Faced with the threat of dismissal, NNA now seeks to recast its lawsuit, claiming that the issue here is the very existence of an oral franchise agreement, not the duplication of a good

---

[1] Section 12(b) specifically mandates that:

> If the franchiser and the franchisee have not agreed to submit a dispute involving Section 4, 5, 6, 7, 9, 10.1, or 11 of this Act to arbitration under subsection (a), *then a proceeding before the Motor Vehicle Review Board* as prescribed by subsection (c) or (d) of Section 12 and Section 29 of this Act for a remedy other than damages under paragraph (6) of subsection (d) or paragraph (6), (8), (10), or (11) of subsection (e) of Section 4 of this Act <u>***shall***</u> *be commenced upon receipt by the Motor Vehicle Review Board of a timely notice of protest.*

815 ILCS 710/12(b) (emphasis added).

cause hearing already under way before the Board. Putting aside the fatal fact that NNA's own Complaint before this Court presents the issue as a "good cause" dispute, NNA's argument still fails because the existence of an oral franchise agreement is an issue currently pending before the Board, *and was placed there by NNA itself*:

> An open question exists as to what terms govern any existing dealer relationship. The current relationship, whatever it may be, is an undefined aberration that was not intentionally entered into by either party. Arguably in the absence of a written dealer agreement, there is no dealer relationship.

(NNA Response to M'Lady Protest No. 2 (Exhibit D to Mem. at ¶ 14.) Thus, NNA cannot seriously argue that the issues here are somehow different from those in the prior pending action currently before the Board.[2]

What NNA is doing before this Court is clear -- forum shopping. Moreover, NNA is doing it in the face of a prior pending action in which NNA selected the forum and then jumped ship midstream in search of friendlier waters. The Board was created by the Illinois legislature specifically to handle this type of dispute and there is simply no basis for this federal court, or for that matter any Illinois state court, to interfere in an ongoing state administrative action. Having forced M'Lady to submit its protest to the Board in the first place (rather than dispute the existence of a contract in this Court or Illinois state court), NNA cannot now insist that this court usurp the adjudication of the Board's pending action. In addition, having itself argued to the Board that M'Lady's protest should be denied because of the absence of a franchise agreement,

---

[2] Although not necessary to the determination of M'Lady's motion to dismiss, NNA requests that both this Court (Compl. at 12, pray for relief) and the Board find that the parties do not have an existing "franchise agreement." However, NNA's May 23, 2007 letter to M'Lady contains an unqualified admission by NNA to **"the existing franchise relationship between M'Lady and NNA"** and the parties **"existing franchise agreement."** (Exhibit C at p. 2, last para. to Mem.) (Emphasis added). Therefore, NNA's request for a declaration that there is no franchise relationship cannot possibly be upheld; however, to the extent NNA wishes to argue this point it is squarely before the Board.

NNA cannot now ask this court to snatch that issue away from the Board while the Board is still deliberating.

The legal basis for M'Lady's dismissal argument is threefold.  <u>First</u>, the ripeness doctrine strictly prohibits a court from interfering in an ongoing administrative action in which the same issues are currently pending.  Instead, courts must wait until the agency has rendered a final administrative decision before taking action.  The ripeness doctrine is enforced by both Illinois and federal courts, but it is especially important in the case of a federal district court sitting in diversity, where the interference is not only with an administrative agency, but with the sovereignty of a state.  Contrary to NNA's assertions, the ripeness doctrine applies regardless of whether the agency has exclusive or concurrent jurisdiction.

<u>Second</u>, the court must dismiss this lawsuit because NNA has not exhausted its administrative remedies.  Agencies with special expertise have primary jurisdiction even when they do not have exclusive jurisdiction.  Pursuant to the Illinois Supreme Court's decision in *Fields Jeep-Eagle, Inc. v. Chrysler Corp.*, the Board has primary jurisdiction in this case because it is deciding a protest under Section 4(d)(6) of the IMVFA.  The existence of an oral franchise agreement between the parties is an essential element of the protest, and therefore integral to the Board's decision.  NNA must therefore exhaust its administrative remedies (by completing the protest matter before the Board) before it can take the issue to a court.  Indeed, NNA was the party that placed the existence of an oral franchise agreement (or lack thereof) at issue before the Board; it should not be permitted flee that forum for this one, simply because it hopes for a more favorable outcome.

<u>Third</u>, the Court should dismiss this action pursuant to the *Burford* abstention doctrine. This lawsuit unreasonably disrupts a previously filed protest, now pending before the Board.  As

4

explained in M'Lady's initial memorandum (and not meaningfully contested by NNA), the *Burford* factors militate in favor of abstention.

In the alternative, if this Court is not inclined to dismiss this case, it should issue a stay. As the Supreme Court has held, "it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494-95 (1942).

Finally, in a further attempt to convince this Court to take the case away from the Board, NNA clouds the actual issues before this Court by spending a significant amount time -- both in its Complaint and Response -- trying to link the current issues here to a prior federal case between the parties before this Court -- Case No. 01 C 1290. However, as set forth by M'Lady below and in its Memorandum, the issues in the prior federal case were confined to an arbitration request under the Federal Arbitration Act, which is not at issue here.

This Court should thus dismiss NNA's Complaint for Declaratory Judgment because it is an improper attempt to circumvent M'Lady's previously filed protests currently pending before the Board, which should be left free from "judicial interference until [it] has [issued a] formalized administrative decision." *General Motors Corp. v. Illinois Motor Vehicle Review Board*, 836 N.E.2d 903, 920 (Ill. App. Ct. 2005).

**ARGUMENT**

I. **NNA'S Request For Declaratory Relief Is Not Ripe for Adjudication in Light of the Pending Action Before the Illinois Board.**

Contrary to NNA's contention (Response at 12), the ripeness doctrine does not require the Board to have exclusive jurisdiction over the 2007 Protest for this Court to decline to exercise jurisdiction over NNA's Complaint. *See, e.g., General Motors Corp.*, 836 N.E.2d at 920

(refusing to exercise jurisdiction under the ripeness doctrine because the same issue currently pending before the Board). Indeed, in *Shell Petroleum N.V. v. Graves*, 709 F.2d 593, 597 (9th Cir. 1983), the court held that "although there is *not an administrative exhaustion requirement* for [Section] 1983 claims," the plaintiff's Section 2201 request for declaratory relief was *not ripe* because the issues were pending before an administrative body which provided an "efficient" remedy. (Emphasis added).

Even where federal courts have jurisdiction to hear a declaratory judgment action, they have broad discretion to dismiss Section 2201 declaratory judgment actions where another matter is currently pending in another forum that involves the same issues. *See Nat'l Health Federation v. Weinberger*, 518 F.2d 711, 712 (7th Cir. 1975). In exercising its discretion to hear a Section 2201 complaint, courts "should be [] guided by [the] broad principles of convenience, expediency and efficiency." *Id.* The Seventh Circuit in *National Health Federation,* affirming a Rule 12(b)(1) dismissal of a Section 2201 complaint, held that dismissal was appropriate because similar issues were currently pending in other forum. *Id. See also* 22A *Am. Jur. 2d Declaratory Judgments* § 139 (2d ed. 2008).

The Supreme Court defines "ripeness" as "a justiciability doctrine . . . designed to *protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.*" *Nat'l Park Hospitality Assoc. v. Dep't of Interior*, 538 U.S. 803, 807-08 (2003) (emphasis added) (vacating district court's ruling on the grounds that the matter was not ripe).

The ripeness doctrine is particularly applicable in declaratory judgment actions seeking a ruling on an issue currently pending in a separate state proceeding that will affect the decision-making process of the other adjudicating body. "Federal courts have discretion to decline to hear

6

a declaratory judgment action, even though the subject matter is within their jurisdiction." *Tempco Elec. Heater Corp. v. Omega Eng., Inc.*, 819 F.2d 746, 747 (7th Cir. 1987). In *Tempco*, the plaintiff filed a Section 2201 action seeking a declaration that it was not infringing upon defendant's trademark. *Id.* Four days later, the defendant filed an infringement action in a different forum. *Id.* Affirming the district court's dismissal of the declaratory judgment action, the Seventh Circuit noted that a declaratory judgment action is appropriate in two situations:

> (1) The controversy has ripened to a point where one of the parties could invoke a coercive remedy (i.e. a suit for damages or an injunction) but has not done so; and (2) Although the controversy is real and immediate, it has not ripened to such a point, and it would be unfair or inefficient to require the parties to wait for a decision.

*Id.* at 750. Consequently, because neither of these two situations were present in *Tempco*, the district court properly refused to exercise jurisdiction over the declaratory judgment action. *Id.*

Likewise, in *Eckells v. City of East St. Louis*, 163 N.E.2d 107, 109 (Ill. App. Ct. 1959), reversing a grant of declaratory judgment with directions to dismiss because the issue was pending in a previously filed administrative action, the court held that "declaratory judgment proceedings cannot be commenced subsequently in the circuit court to obtain findings and opinions *to affect, control or guide the outcome of the proceeding before the administrative body*." (Emphasis added.) To hold otherwise, the court noted "would open the door to abuses which could result in multiple litigation and unavoidable interference and conflict between different adjudicating bodies." *Id.* See also *CHA-Tonie Hotel Apartments Bldg. Corp. v. Shogren*, 204 F.2d 256, 259 (7th Cir. 1953) (affirming motion to dismiss declaratory judgment action, the Seventh Circuit held that "the declaratory judgment procedure will not be used to preempt or prejudge issues that are committed for initial decision to an administrative proceeding").

7

In *General Motors Corp.*, 836 N.E.2d at 907-08, the Illinois Appellate Court applied the ripeness doctrine in refusing to rule on an issue that was currently pending before the Board under the IMVFA. The plaintiff (General Motors Corporation) requested that the Illinois trial court hold that "the protesting dealers are not entitled to attorney fees and costs." The appellate court held that this issue was not ripe because "the [Motor Vehicle] *Review Board has yet to decide the issues raised* by [the plaintiff with respect to attorneys' fees] and thus [the plaintiff] has not felt the effect of the Review Board's decision." *Id.* at 920 (emphasis added). In so holding, the court noted that to rule otherwise would result in unnecessary and improper "judicial interference" before the Board "has formalized an administrative decision" on currently pending issues before the Board.[3] *Id.*

Here, as detailed above and in M'Lady's Memorandum, NNA's Complaint for Declaratory Judgment seeks to have this Court, not the Board, decide the ***very same issues*** that are currently pending before the Board. Ignoring its own filings before the Board (Exhibits D-F, Mem.), NNA has not offered a single persuasive reason for this Court to decide the same issues currently pending before the Board in the 2007 Protest. NNA has also not alleged that either of the two situations in *Tempco* are present. Indeed, the very fact that the same issues are currently pending before the Board resolves the two *Tempco* concerns because the Board will decide the issues before this Court.

Moreover, in addition to seeking a "good cause" ruling by this Court, NNA requests a ruling by this Court that the Board lacks jurisdiction to hear the Protests because the Board "failed to conduct a hearing" and/or M'Lady has not sought a hearing within 90 days, as

---

[3] NNA contends that *General Motors Corp.*, 836 N.E.2d 903, was limited to appellate jurisdiction and not one of ripeness. (Response at 13, n.1) This misconstrues *General Motors Corp.* The Illinois appellate court there specifically declined to hear the attorney fee issue pending before the Board under "the ripeness doctrine," which the court noted "seeks to . . . protect agencies from judicial interference until the agency has formalized an administrative decision." *Id.* at 920.

8

allegedly required by 92 Ill. Adm. Code § 10001.760(a)(2)(C). (Compl. at pp. 18-19.) There is simply no basis for this Court step into a dispute on the proper interpretation of Illinois administrative procedures under the IMVFA. NNA fails to recognize that once the Board hears these issues the very specific Illinois statutory scheme *offers a review process exclusively through the Illinois state court system*; initially, through administrative review in either the Cook or Sangamon county circuit court, and then the Illinois appellate courts. 815 ILCS 710/31.

Furthermore, the cases cited by NNA in its response are distinguishable from this case. None of these cases involved the ripeness doctrine or a declaratory judgment action seeking a determination of an issue that would affect an administrative body's decision in ruling on a protest under the applicable statute that the administrative body was vested to decide and interpret. Instead, the cases cited by NNA involved the court deciding a tangential issue before the administrative agency, which would not affect the agency's decision of the underlying administrative complaint, or did not even involve a pending case before an administrative agency.

In *Employers Mutual Ins. Comp. v. Skilling*, 163 Ill. 2d 284, 286-86 (Ill. 1994), the defendant/employee filed a workers' compensation claim against his employer before the Illinois Industrial Commission ("the Commission"). The employer's workers' compensation carrier was granted leave by the Commission to be added as a "party-respondent" and then moved the Board to rule that it had no obligation to defend or indemnify the employer or to pay benefits to the employee because the relevant policy only covered accidents in Wisconsin. *Id.* The carrier subsequently filed a declaratory judgment action in Illinois circuit court seeking a ruling that it had no obligation under the policy to the employer or employee. *Id.* at 286. The Illinois Supreme Court held that although the Board had concurrent jurisdiction to hear the coverage

9

issue, the circuit court was not required to dismiss the action in deference to the Commission under the exhaustion of remedies doctrine. *Id.* at 288-89. In so ruling, the court noted that the question of whether the claim fell within the policy was a pure legal issue not encompassed within the underlying claim before the Commission – the employee's claim for monetary damages under the workers' compensation act. *See id.*

NNA's reliance upon *Rolls-Royce PLC v. Luxury Motors, Inc.*, No. 03 C 5953, 2004 WL 1375540 (N.D. Ill. June 17, 2004), is likewise misplaced. The manufacturer in *Rolls-Royce* filed an action seeking to enjoin a dealer from using its trademarks or holding itself out as an authorized dealer. *Id.* at *2. The dealer moved to stay the federal action under the doctrine of primary jurisdiction on the grounds that the dealer previously filed a currently pending complaint before the Board alleging that the manufacturer violated the IMVFA "by failing to tender a renewal of the franchise agreement." Id. at *1. Denying the motion to stay, the court held that the defendant had not provided any support for its assertion that the doctrine of primary jurisdiction applies to claims under the IMVFA.[4]

In contrast to *Employers Mutual* -- which dealt with a tangential issue before the administrative body -- and *Rolls-Royce PLC* -- where the district court could decide the trademark issue before it without affecting the underlying protest before the Board -- whether NNA and M'Lady are operating under a valid oral franchise agreement is, as detailed above, an essential element to and inextricably inter-wound with the currently pending 2007 Protest. Indeed, NNA itself requested the Board to dismiss the 2007 Protest on the grounds that the parties do not have a valid oral franchise agreement. (Exhibit D at ¶ 20, Exhibit F at ¶ 6 to Mem.)

---

[4] The other case NNA relies upon -- *People v. NL Industries*, 152 Ill.2d 82 (Ill. 1992) -- did not even involve a current pending administrative action. Instead, the state sued the defendant directly in the circuit court under the Illinois Environmental Protection Act. 152 Ill.2d at 86.

Therefore, unlike *Employers Mutual* and *Rolls-Royce PLC*, where the court's ruling on the declaratory judgment action would not affect the administrative body's ruling on the underlying claim before it (the employee's workers' compensation claim and the claim for failure to renew a dealership under the IMVFA), a ruling by this Court on NNA's Declaratory Judgment Complaint will improperly interfere with the Board's ruling on the 2007 Protest. This case thus falls squarely within the ripeness doctrine, and this Court should exercise its discretion and allow the Board to decide all issues currently before it that will affect the outcome of the 2007 Protest under Section 4 of the IMVFA, including whether the parties are currently operating under a valid oral franchise agreement and whether the Board has jurisdiction under the IMVFA.[5]

## II. Exhaustion of Remedies/Primary Jurisdiction Doctrines Also Requires Dismissal.

Contrary to NNA's contentions (Response at 7-9), the Board has primary jurisdiction over issues affecting the Board's determination of "good cause" under Section 4 and 12 of the IMVFA, and thus, the NNA must exhaust its administrative remedies. The doctrine of primary jurisdiction "is really two doctrines." *Arsberry v. State of Illinois*, 244 F.3d 558, 563 (7th Cir. 2001). One, "exclusive agency jurisdiction" applies when the judicial action involves an issue within the "exclusive jurisdiction of the regulatory agency." *Id.* Two, separate and apart from "exclusive jurisdiction," courts have broad discretion to allow agencies with specialized knowledge to decide issues arising under the state statute the agency administers, even if "the agency hasn't been given exclusive jurisdiction." *Id.*

Here, the issues presently before this Court and the 2007 Protest under Section 4(d)(6) and 12(c) of the IMVFA, including whether there is an oral franchise agreement between the

---

[5] Even if *Employers Mutual* was not distinguishable, which it is, as detailed below, a federal court presented with the same situation as in *Employers Mutual* would have broad discretion, under *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995), to stay the federal declaratory judgment action in favor of letting the state tribunal decide the coverage issue in the parallel state proceeding.

11

parties, fall within the primary jurisdiction of the Board based on the Illinois Supreme Court's ruling in *Fields Jeep-Eagle, Inc. v. Chrysler Corp.*, 163 Ill. 2d 462 (1997). The plaintiffs in *Fields Jeep-Eagle, Inc.* challenged Sections 4(e)(8) and 12(c) of the IMVFA on the grounds that they violated the separation of powers clause by impermissibly delegating to courts "non-judicial functions of fact finding" in determining "good cause" under Section 12(c). *Id.* at 468. Affirming the trial court's motion to dismiss, the Illinois Supreme Court held that "through sections 4(e)(8) and 12(c) of the [IMVFA], the General Assembly has impermissibly delegated for judicial examination matters which are for legislative or administrative determination." *Id.* at 479. In so holding, the Illinois Supreme Court noted that the IMVFA intended to address a "complex and important state concern" in need of a "coherent state doctrine" -- the "distribution and sale of vehicles within this State vitally affects the general economy of the State and the public interest and welfare, and that in order to promote the public interest and welfare, and in the exercise of its police powers, it is necessary to regulate motor vehicle [franchises]." *Id.* at 464 (*quoting*, 815 ILCS 710/1.1).

Thus based on *Fields Jeep-Eagle, Inc.*, the Board has primary jurisdiction to decide all issues that affect a "good cause" determination under section 12(c) of the IMVFA. Moreover, leaving the Board free of interference is particularly apt in a declaratory action involving the issues of "good cause" under Section 4 because Section 12(b), which is set forth above in note 1, the Board "***shall***" hear "good faith" disputed under Section 4, if the parties do not agree to submit the dispute to arbitration. 815 ILCS 710/12(b) (emphasis added). Similarly, Section 18 states that the "Board *shall* have the following powers . . . (a) to conduct hearings, by or though its duly authorized administrative hearing officer, on protests filed under Sections 4 and 12 of the Act." 815 ILCS 710/18(b) (emphasis added). If unhappy with a "final decision" by the Board in

exercising its discretion in determining good cause, the parties can then seek judicial review before select Illinois circuit courts and then the Illinois appellate court. 815 ILCS 710/31.

Here, as detailed above, the issue before this court -- whether the parties have a valid oral franchise agreement -- is an essential element and dispositive to the Board's decision of the currently pending 2007 Protest under Section 4(d)(6) of the IMVFA. To determine whether NNA acted without "good cause," the Board will have to look to the 11 factors set forth in Section 12(c) of the IMVFA, including whether "there has been a material breach . . . of the *existing franchise agreement*." 815 ILCS 710/12(c) (emphasis added). Indeed, as detailed above, NNA's response and motion to dismiss the 2007 Protest assert that the Board should dismiss/deny the 2007 Protest for lack of an existing oral franchise agreement.

Accordingly, under *Fields Jeep-Eagle, Inc.*, the Board not this Court has primary jurisdiction over "good cause," which includes whether the parties have a valid oral franchise agreement. This Court should thus dismiss this case under the doctrines of primary jurisdiction and/or failure to exhaust administrative remedies.

### III.     The *Burford* Abstention Doctrine Also Requires Dismissal.

This Court should also dismiss this action under the *Burford* abstention doctrine. NNA's response (at 15-16) does not address the four *Burford* factors, which as detailed in M'Lady's Memorandum (at 10-11), weigh in favor of this Court dismissing NNA's Complaint. Instead, citing cases that did not even involve *Burford*, NNA contends that *Burford* is not applicable to the IMVFA because:

> claims relating to the IMVFA have been decided by the District Courts without the need for input from the IMVRB. *Rolls-Royce*, 2004 WL 1375540*2, citing *Servpro Indust., Inc.*, 1997 WL 158316; *Chrysler Credit Corp.*, 1996 WL 509888; *Northwestern Buick, Inc.*, 1990 WL 43316.

(Response at 16.)

This contention misconstrues the issue under *Burford*. The question here and under *Burford* is whether a ruling by this Court on NNA's Complaint will disrupt the currently pending, previously filed proceedings before the Board on M'Lady's 2007 Protest. As detailed above and in M'Lady's Memorandum at 10-11, a ruling by this Court will unreasonably disrupt the Board's decision of the 2007 Protest. The cases cited above by NNA in its response (at 16) did not even involve *Burford* and should not even be considered by this Court because: (1) *Servpro Industries, Inc.*, *Chrysler Credit Corp.*, and *Northwestern Buick, Inc.* did not even involve a currently pending action before the Board under the IMVFA; and (2) as detailed above, the issue before the court in *Rolls-Royce PLC* would not have affected the Board's decision on the underlying IMVFA case. Here, in contrast, as explained above and in the Memorandum, a ruling by this Court on NNA's Complaint for Declaratory Judgment, regardless of how the Court rules, will unduly disrupt the Board's decision of the 2007 Protest under Section 4 of the IMVFA.

### III. <u>Alternatively, This Court Should Stay This Action</u>.

As detailed in M'Lady's Memorandum (at 11-14), in the event that this Court does not dismiss NNA's Complaint, which it should, it should nevertheless stay this action until the Board rules on M'Lady's two, previously filed Protests currently pending before the Board.

In arguing that this Court should not issue a stay, NNA relies upon *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995). (Response at 17, n. 2.) In *Wilton*, a unanimous Supreme Court held that district courts possess broad discretion in "determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Id.* at 282. In affirming the district court's stay of a declaratory judgment action seeking a declaration of insurance coverage, in favor of a concurrently pending

14

action in state court on the same issue between the same parties, the Supreme Court held that the "discretionary" standard set forth in *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494-95 (1942), and not the "exceptional circumstances" test in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813 (1976), control motions to stay declaratory judgment actions in federal court in favor of parallel state proceedings. 515 U.S. at 286.

Consequently, in determining whether to exercise its discretion over NNA's Complaint for Declaratory Judgment, this Court need not consider the *Colorado River* "exceptional circumstances." Instead, this Court should apply the *Brillhart* factors, which are very similar to the parallel proceeding inquiry under *Colorado River* and include but are not limited to:

> whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court. This may entail inquiry into the scope of the pending state court proceeding and the nature of defenses open there. The federal court may have to consider whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, whether such parties are amenable to process in that proceeding, etc.

*Brillhart*, 316 U.S. at 495. The Supreme Court also noted that:

> it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit *where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties*. Gratuitous interference with the orderly and comprehensive disposition of state court litigation should be avoided.

*Id.* (Emphasis added.)

NNA's only response to the above factors is that:

In this action, the issues do not overlap. Indeed, the only remaining issues before the IMVRB are whether M'Lady is entitled to attorneys' fees in Protest #1. Neither of the Protests address the issue of whether there is or is not an oral franchise agreement.

15

(Response at 18.) As detailed above, this statement is not true. Whether NNA and M'Lady are operating under a valid oral franchise agreement is an essential element to and inextricably interwound with the Board's decision on whether NNA violated Section 4 of the IMVFA. Indeed, contrary NNA's statements to this Court, NNA's response to the 2007 Protest "seeks a ruling by the Board that no agreement exists between M'Lady and Nissan, since no written dealer agreement exists between the parties." (Exhibit D at ¶ 20 to Mem.)

In *General Motors Corp. v. M&G Management*, No. 02 C 6558, 2003 WL 21501782 (N.D. Ill. June 25, 2003), a court in this district was faced with almost identical issue as in this case and stayed the automobile manufacturer's Section 2201 action under *Wilton*. The two defendant automobile dealers in *General Motors* entered into a purchase agreement for a GM dealership. *Id.* at *1-2. After GM refused to approve the transaction, GM filed a Section 2201 action in the Northern District, while as week later, one of the dealers filed a state court action seek the same relief by the state court. *Id.* at *2. Holding that the federal action was parallel to the currently pending state court action and should be stayed under *Wilton*, the court noted that: (1) both proceedings: (a) "ar[o]se from the same factual circumstances"; and (b) "involve the identical core issue" and "present purely state law issues and implicates no federal interests"; (2) allowing "GM's action to go forward would result in piecemeal litigation, or worse, a decision by this Court running headlong into that of the state court"; and (3) "considerations of judicial economy and comity point GM to the sate forum to resolve the only real question, a state law question" on contractual interpretation. *Id.* at *4.

Accordingly, if this Court does not dismiss this action under the ripeness doctrine or *Burford*, it should stay this action under *Wilton* and *Brillhart* until the Board has had an opportunity to make a final ruling on the same issues currently before this Court.

IV.    **The Prior Action Between the Litigants Does Not Justify This Court Interceding In a Purely State Law Matter Before the Board.**

NNA further attempts convince this Court to snatch the currently pending protests away from the Board by arguing that a prior action before this Court between the same parties -- Case No. 01 C 1290 ("the Prior Action") -- gives this Court reason to interfere with the Board's authority. This contention likewise fails.

The Prior Action, which involved separate and distinct contractual issues has no bearing on the issues raised in NNA's Complaint or the currently pending Protests before the Board. As this Court well remembers, NNA brought the Prior Action under the Federal Arbitration Act ("FAA") seeking to compel arbitration of a franchise dispute under a 1992 "written Dealer Agreement" between the parties. *Nissan North America, Inc. v. M'Lady Oldsmobile, Inc.*, 2004 WL 609279 (N.D. Ill. March 25, 2004). On remand from the Seventh Circuit (307 F.3d 601), this Court entered summary judgment in favor of M'Lady and held that because the 1992 Dealer Agreement, with the arbitration clause NNA was seeking to enforce, had expired and the parties subsequent oral agreement did not contain an arbitration provision, NNA could not compel arbitration under the FAA. This decision was affirmed by the Seventh Circuit in 486 F.3d 989.

Not one of the two decisions by this Court or the two decisions by the Seventh Circuit in the Prior Action addressed the issues currently before this Court and the Board. More importantly, however, had NNA prevailed on the Prior Action, the underlying franchise termination dispute in the Prior Action as not and would not have been heard by this Court. Rather, even if NNA had prevailed, the "good cause" hearing in the Prior Action would have been held before the Board or an arbitrator. Here, there is no arbitration issue and the termination issues are likewise squarely before the Board, not this Court.

17

Consequently, the Prior Action does not give this Court any justification for ignoring the ripeness doctrine or other applicable doctrines that mandate that this Court dismiss or stay this action and let the Board properly decide the issues currently pending before it in the previously filed Protests between the parties to this litigation.

## CONCLUSION

For the reasons set forth above and in M'Lady's previously filed Memorandum in Support of Its Motion to Dismiss, Defendant Jim M'Lady Oldsmobile, Inc. d/b/a/ Jim M'Lady Nissan requests that this Court dismiss Plaintiff NNA's Complaint for Declaratory Judgment, or, in the alternative, to stay this matter until the Board rules on M'Lady's currently pending Protests under the Illinois Motor Vehicle Franchise Act.

Dated: March 13, 2008

Respectfully submitted,

JIM M'LADY OLDSMOBILE, INC.

By: __/s/ Ira M. Levin__
    One of its Attorneys

Ira M. Levin
Aaron Stanton
Burke, Warren, MacKay & Serritella, P.C.
330 North Wabash Avenue, 22nd Floor
Chicago, Illinois 60611
(312) 840-7000
(312) 840-7900 (FAX)
11021/1/460490

18