UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NISSAN NORTH AMERICA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 07 C 6304 |
| | ) | |
| v. | ) | Judge Joan B. Gottschall |
| | ) | |
| JIM M'LADY OLDSMOBILE, INC. | ) | |
| d/b/a JIM M'LADY NISSAN, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the defendant's motion to dismiss for lack of subject matter jurisdiction. For the reasons stated below, the motion is granted and the case is dismissed.

### I. BACKGROUND[1]

This case is the latest installment in a more than seven-year-old dispute between a car manufacturer, Nissan North America, Inc. ("Nissan"), and a car dealership, Jim M'Lady Oldsmobile, Inc. d/b/a Jim M'Lady Nissan ("M'Lady"). Nissan and M'Lady initially entered into a franchise agreement on May 21, 1992. The agreement was extended multiple times. However, the relationship became strained, in part because of M'Lady's failure to meet a deadline to complete construction of a Nissan showroom. The long-running dispute came to a head in late 1999 when Nissan attempted to terminate M'Lady's franchise agreement. In October 2000, M'Lady filed a notice of protest with the Illinois Motor Vehicle Review Board (the "Board") regarding the proposed termination of its franchise agreement. Nissan submitted

---

[1] The facts are largely taken from, and more fully set forth in, previous court opinions. *See Nissan N. Am., Inc. v. Jim M'Lady Oldsmobile, Inc.*, 486 F.3d 989 (7th Cir. 2007); *Nissan N. Am., Inc. v. Jim M'Lady Oldsmobile, Inc.*, 307 F.3d 601 (7th Cir. 2002). Other facts are taken from the complaint, and are treated as true for purposes of this motion.

the dispute to an arbitrator pursuant to a written agreement to arbitrate contained in a contract extension that had, by its own terms, expired in April 1999. M'Lady objected to arbitration and Nissan filed a federal lawsuit (case no. 01 C 1290) seeking to compel.

The arbitration case went to the Seventh Circuit twice. It was resolved in May 2007 when the Seventh Circuit affirmed this court's grant of summary judgment in favor of M'Lady, concluding that there was insufficient evidence of an agreement to arbitrate. *Nissan N. Am., Inc. v. Jim M'Lady Oldsmobile, Inc.*, 486 F.3d 989, 990 (7th Cir. 2007). The franchise dispute returned to the Board for resolution. The parties' attempts to work out a deal were unsuccessful and, in July 2007, M'Lady filed a second notice of protest with the Board. A few months later, Nissan filed this lawsuit. Now, Nissan invokes federal diversity jurisdiction for a declaratory judgment action. M'Lady has filed a motion to dismiss, asserting that this court lacks subject matter jurisdiction over the matters raised. The matter is now fully briefed.[2]

## II. ANALYSIS

Nissan asks the court to: find that the parties had no oral or written franchise agreement; determine whether a franchise agreement exists between the parties within the meaning of the Illinois Motor Vehicle Franchise Act, 815 Ill. Comp. Stat. 710/1 *et seq.* ("IMVFA"); determine whether the Board has jurisdiction over the parties' dispute given the alleged lack of an oral or written franchise agreement and its failure to follow its own procedural guidelines; find that the Board protests have been abandoned and should be dismissed; and determine that "good cause"

---

[2] On April 22, 2008, Nissan filed a motion for leave to file a sur-reply in support of its opposition to the defendant's motion to dismiss (docket no. 36). It failed to notice the motion for presentment in accordance with Local Rule 5.3(b); consequently, the motion was never granted. Nevertheless, M'Lady filed an objection to the proposed sur-reply (docket no. 38), which also responded to the substance of the sur-reply. Given the brevity of both filings, the court exercises its discretion to grant the motion to file a sur-reply *nunc pro tunc* (April 22, 2008) and considers the objection as a sur-sur reply.

exists for Nissan to terminate its relationship with M'Lady and to discontinue sales.[3] M'Lady argues that the court has no jurisdiction because of: (1) issues of ripeness and exhaustion of administrative remedies in light of the pending Board protests on the same issues; (2) the *Burford* abstention doctrine; (3) the *Colorado River* abstention doctrine.

**A.     Legal Standard**

Rule 12(b)(1) provides that a party may assert the defense of lack of subject matter jurisdiction by motion or in a responsive pleading. Fed. R. Civ. P. 12(b)(1). "It is proper for the district court to look beyond the jurisdictional allegations in the complaint and to view whatever evidence has been submitted in determining whether subject matter jurisdiction exists under Rule 12(b)(1)." *Roman v. U.S. Postal Serv.*, 821 F.2d 382, 385 (7th Cir. 1987) (citing *Grafon Corp. v. Hausermann*, 602 F.2d 781, 782 (7th Cir. 1979)). When deciding a motion to dismiss for lack of subject matter jurisdiction, "a district court must accept as true all well-pleaded factual allegations of the complaint and draw all reasonable inferences in favor of the plaintiff." *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). Nevertheless, the burden of proof lies with "the party asserting jurisdiction," namely, the plaintiff. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003); *see Kontos v. U.S. Dep't of Labor*, 826 F.2d 573, 576 (7th Cir. 1987) (requiring the nonmoving party to "submit affidavits and other relevant evidence to resolve the factual dispute regarding the court's jurisdiction").

---

[3] The court notes that the legislature has explicitly committed to the Board the issue of whether "good cause" exists to terminate a franchise. *See* 815 Ill. Comp. Stat. 710/12(e) (expressly excepting the ability of a party to seek a remedy in court for disputes that arise "under paragraph (6) of subsection (d) . . . of Section 4 of this Act"); *id.* 710/4(d)(6) (prohibiting the cancellation or termination of a franchise without good cause and notice). Such factual determinations are entrusted to an administrative body, not the courts, due to concerns over the separation of powers. *See Fields Jeep-Eagle, Inc. v. Chrysler Corp.*, 645 N.E.2d 946, 954 (Ill. 1994) (holding unconstitutional sections 4(e)(8) and 12(c) of the IMVFA which required a determination of whether "good cause" existed for the establishment or relocation of a franchise).

**B.** **Arguments**

This case arises in the declaratory judgment context. *See* 28 U.S.C. § 2201. As a preliminary matter, the court notes that Nissan has alleged that the parties are of diverse citizenship[4] and that the amount in controversy exceeds $75,000, which satisfies diversity jurisdictional requirements. *See id.* § 1332. M'Lady does not challenge the allegations; therefore, the court will treat them as true for purposes of this motion. Thus, the issue is not whether the court has the power to decide the issues presented, but whether circumstances are such that it should exercise its discretion not to adjudicate the controversy. *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 719 (1996) (finding abstention appropriate where "denying a federal forum would clearly serve an important countervailing interest"); *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995) (noting that a court has "discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites").

As the Seventh Circuit has observed, abstention is an "amorphous concept," and the bases for abstention frequently merge together. *Hartford Cas. Ins. Co. v. Borg-Warner Corp.*, 913 F.2d 419, 425 (7th Cir. 1990). In this case, Nissan asks the court to declare that no franchise exists between it and M'Lady and that the Board lacks jurisdiction, even though it has raised those exact issues as a defense to M'Lady's protest filed with the Board.[5] Such a duplication of litigation typically implicates *Colorado River* abstention. *See Colo. River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817 (1976). However, given the potential public policy ramifications

---

[4] Nissan alleges that it is a California corporation with its principal place of business in either California or Tennessee and that M'Lady is a Delaware corporation with its principal place of business in Illinois. Compl. ¶¶ 1-2.

[5] Nissan did not make the court aware of this fact; M'Lady did, via exhibits to their motion to dismiss. Because this is a Rule 12(b)(1) motion, the court may consider any evidence that bears on the jurisdictional issue. *Roman v. U.S. Postal Serv.*, 821 F.2d 382, 385 (7th Cir. 1987).

of the legal issues presented in this case, *Burford* abstention seems the best fit. *See Burford v. Sun Oil Co.*, 319 U.S. 315 (1943) (considering abstention in the context of state regulations on oil exploration). "[T]he *Burford* doctrine is not concerned with the rights of the parties in the case at hand but rather is inspired by concerns of federalism." *Int'l Coll. of Surgeons v. City of Chicago*, 153 F.3d 356, 361 (7th Cir. 1998). Hence, *Burford* abstention is appropriate in only two situations: (1) "federal courts should abstain from deciding 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar,'" *id.* at 362 (quoting *Quackenbush*, 517 U.S. at 726-27); and (2) federal courts "should also abstain from the exercise of federal review that 'would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern,'" *id.* (quoting *Quackenbush*, 517 U.S. at 726-27). M'Lady asserts that both situations apply.[6] The court begins with the second situation.

      M'Lady argues that the stated purpose of the IMVFA is evidence that the legislature was attempting to address a complex and important public concern. The IMVFA lays out, in thirty-two sections, rules applying to franchise agreements including: the formation and termination of agreements, acceptable locations for franchises, dealer delivery obligations, warranty agreements, permissible franchise restrictions, and resolution of disputes. *See* 815 Ill. Comp. Stat. 710/3-32. The preamble reads:

> The Legislature finds and declares that the distribution and sale of vehicles within [Illinois] vitally affects the general economy of the State and the public interest and welfare, and that in order to promote the public interest and welfare, and in the exercise of its police power, it is necessary to regulate motor vehicle manufacturers, distributors, wholesalers and factory or distributor branches or representatives, and to regulate dealers of motor vehicles doing business in this

---

[6] M'Lady actually uses a four-prong test from a district court case; however, the factors are the same as those outlined by the Seventh Circuit. *See Adams v. Att'y Registration & Disciplinary Comm'n*, 600 F. Supp. 390, 391 (N.D. Ill. 1984).

> State in order to prevent frauds, impositions and other abuses upon its citizens, to protect and preserve the investments and properties of the citizens of this State, and to provide adequate and sufficient service to consumers generally.

*Id.* 710/1.1; *see Gen. Motors Corp. v. State Motor Vehicle Review Bd.*, 862 N.E.2d 209, 219-20 (Ill. 2007) (interpreting § 12(c) of the IMVFA in accordance with its stated purpose). Additionally, the Illinois Supreme Court has found that the IMVFA serves the legitimate public interests of promoting fair dealing and protecting small businesses from harmful franchising practices. *Gen. Motors Corp.*, 862 N.E.2d at 227.

Absent any meaningful argument from Nissan in opposition, the court concludes that the IMVFA is evidence of an effort by the Illinois legislature to establish a coherent policy with respect to a matter of substantial public concern, namely automobile franchising practices. However, the *Burford* inquiry does not end there. The Seventh Circuit has outlined "two essential elements in order to justify abstention under the second prong of the *Burford* doctrine," namely that the state offer a forum in which claims can be litigated and that the forum must be "special – it must stand in a special relationship of technical oversight or concentrated review to the evaluation of those claims." *Property & Cas. Ins. Ltd. v. Cent. Nat'l Ins. Co. of Omaha*, 936 F.2d 319, 323 (7th Cir. 1991).

The IMVFA designates the Board as the initial place to which disputes are taken. *Id.* 710/16-18. The Board has the power to review notices of protest and to make factual determinations regarding whether certain franchise actions are in the public interest. *See, e.g., id.* 710/12(d) (outlining the factors to determine whether good cause has been established for terminating a franchise); *Gen. Motors Corp.*, 862 N.E.2d at 226 (observing that the Board was established in part to determine whether certain franchise actions were in the public interest). The IMVFA also grants the Illinois Circuit Courts of Cook County and Sangamon County the power of review over final decisions. 815 Ill. Comp. Stat. 710/31. Thus, Illinois does offer a

forum in which disputes may be litigated. However, it is unclear whether the Cook and Sangaman County courts are sufficiently specialized to allow for *Burford* abstention. *See Int'l Coll. of Surgeons*, 153 F.3d at 365 (concluding that the necessary specialized expertise was not present where the decisions of the Landmarks Commission were reviewable by the Circuit Court of Cook County). Although the facts seems to support abstention, in an abundance of caution, the court also considers the applicability of the first prong of *Burford*, namely whether the case involves "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar." *Quackenbush*, 517 U.S. at 726-27.

    Nissan asks the court, in part, to determine that it has no franchise agreement with M'Lady. Embedded within this request is a statutory construction issue: do non-written agreements, including oral and implied agreements, fall within the scope of "franchise" agreements as defined in § 710/2(i)[7] of the IMVFA? The answer to this statutory construction question has broad public interest implications that reach far beyond the case at bar because it determines what types of contractual relationship fall within the ambit of the IMVFA. The court would be rendering this decision without the benefit of input from the Board or Illinois state courts to help determine the number of car dealerships such a ruling might affect, the ramifications on Illinois commerce, or the impact on the public interest. It may have to delve deeply into principles of Illinois contract law and unearth legislative intent to answer the question. Of note, neither party has pointed the court to any opinion (state, federal or Board) that has interpreted § 710/2(i), which makes any argument that this is an area of settled state law

---

[7] Section 710/2(i) supplies a definition of "franchise": [A]n oral or written arrangement for a definite or indefinite period in which a manufacturer, distributor, or wholesaler grants to a motor vehicle dealer a license to use a trade name, service mark, or related characteristic, and in which there is a community of interest in the marketing of motor vehicles or services related thereto at wholesale, resale, leasing, or otherwise. 815 Ill. Comp. Stat. 710/2(i).

7

questionable.  Indeed, the *unsettled* construction of this specific section of the IMVFA was noted by the Seventh Circuit, in dicta, when it observed:

> [Nissan] protests that franchise agreements must be in writing . . . .  Illinois law *appears to permit* oral franchise agreements, however.  *See* 815 ILCS 710/2(i). But *even if* oral franchise agreements are unenforceable under Illinois law, that fact is irrelevant to the dispute we have before us, which is whether these parties had a written agreement to arbitrate.  Without such an agreement, *it is for the Board to decide whether M'Lady has enforceable franchise rights*.

*Nissan N. Am., Inc.*, 486 F.3d at 995 (emphasis added, citation in original).  The Seventh Circuit thereby recognized two issues important to the resolution of this matter: (1) the scope of the Illinois statute is not crystal clear; and (2) determination of whether it encompasses the relationship between Nissan and M'Lady is a factual determination entrusted to the Board.

The section of the IMVFA at issue, § 710/2(i), has rarely been cited in cases and the courts have never interpreted its scope.  *See Nissan N. Am., Inc.*, 486 F.3d at 995 (observing that "Illinois law appears to permit oral franchise agreements" but that the issue was irrelevant to whether the parties had an agreement to arbitrate); *Falkner Motor Sales, Inc. v. Toyota Motor Sales, U.S.A. Inc.*, No. 93 C 1346, 1993 WL 524765, at *3 (N.D. Ill. Dec. 14, 1993) (concluding that an individual plaintiff was not a "franchise owner" within the meaning of the statute); *Northwestern Buick, Inc.*, 1990 WL 43316, at *3-4 (citing *Knauz v. Toyota Motor Sales, USA, Inc.*, 720 F. Supp. 1327, 1331 (N.D. Ill. 1989) for the principle that the IMVFA does not cover those who have applied for, but have not yet been granted, franchises).  Of note, the Illinois state courts have never addressed the statutory construction issue Nissan raises; in fact, research did not uncover any state case that even cited the relevant statutory section.  As such, this situation is analogous to that in *Kelly Services, Inc. v. Johnson*, 542 F.2d 31 (7th Cir. 1976), where the Seventh Circuit held that it was error for the district court not to abstain.  *Id.* at 33.

In *Kelly Services, Inc.*, the issue was whether "temporary help companies" are subject to the regulatory provisions of the Illinois Private Employment Agencies Act. *Id.* at 32. No Illinois court had construed the provision, although the Attorney General of Illinois had issued a formal opinion concluding that temporary help companies were included in the scope of the statute. *Id.* The court noted that "the questions concerning regulation are rooted in the State's interest in protecting its citizens from unscrupulous agencies or employers." *Id.* Because the issues "touch[ed] matters of traditional state concern and ha[d] not been subject to scrutiny by a state court," the court concluded that the federal courts must "stay their hand lest they provoke needless conflict with the administration by a state of its own affairs." *Id.* (citing *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943) and *Ala. Pub. Serv. Comm'n v. Southern R.R. Co.*, 341 U.S. 341 (1951)).

Similarly, in this case, a certain category of businesses is subject to the provisions of a specifically-targeted state statute. No Illinois court has construed the relevant section of the statute, namely what constitutes a franchise agreement, and even the administrative agency responsible for adjudicating disputes has not yet had an opportunity to address the issue. As demonstrated by the stated purposes of the IMVFA and the recent commentary of the Illinois Supreme Court in *General Motors Corp.*, the statute at issue has legitimate government purposes, including protecting the public and small businesses from harmful franchise practices. Given that Nissan asks the court to "attribute[] a given meaning to the state statute which [goes] to the heart" of the IMFVA, "[d]elay, misunderstanding of local law, and needless federal conflict with the State policy[] are the inevitable product of this double system of review." *Burford*, 319 U.S. at 327 (lamenting the legislative confusion engendered by a federal court statutory interpretation that was later contradicted by a state appellate court). Nissan has a forum

9

for its defenses with the Board and, contrary to its assertion, this decision does not render the IMVFA unconstitutional by stripping the court of its diversity jurisdiction.[8] *See id.* at 334-35 (Douglas, J., concurring) (rejecting any contention that abstention to avoid federal court participation in "the fashioning of the state's domestic policy" implies that the enforcement of state rights has been limited to the state courts). Given these facts, the court concludes that the first prong of the *Burford* doctrine is satisfied.

Although Nissan has made only cursory arguments in response to M'Lady's substantive *Burford* abstention arguments, it puts forth two reasons why the court should not abstain. First, it urges the court not to abstain because the district court (Judge Guzman) in the earlier case refused to apply the *Burford* abstention doctrine, implying that this court should do likewise. However, the cases do not involve the same legal issues. The issue before Judge Guzman was whether M'Lady should be compelled to arbitrate a dispute, an issue that falls within the ambit of a federal statute, the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. In contrast, here, Nissan invokes the power of the federal courts on the basis of diversity of citizenship and a prayer for declaratory relief. *See* 28 U.S.C. § 1332 (requiring diversity of citizenship and a minimum amount in controversy for federal jurisdiction); *id.* §§ 2201-02 (defining the scope of a federal court's declaratory judgment powers); *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 (1993) (noting the "implicit limitation" that judicial review for injunctive and declaratory judgment remedies is discretionary). The issues are squarely, and deeply, rooted in state legal principles of contract and, because there is no claim for damages, the court has considerable discretion whether to entertain the suit. Therefore, Nissan's argument is unpersuasive.

---

[8] To the extent that Nissan's argument goes to whether the IMVFA mandates that an appeal be brought in a state, rather than federal court, the issue is not ripe in the context of this case and the court declines to address the issue.

10

Nissan next argues that no Illinois court has applied the *Burford* abstention doctrine to any claim involving the IMVFA, implying that this court should not be the first to do so. Only one case it cites directly addresses the issue of abstention. In *Rolls-Royce PLC v. Luxury Motors, Inc.*, 03 C 5953, 2004 WL 1375540 (N.D. Ill. June 17 2004), the court declined to abstain in a case alleging violation of the IMVFA and trademark law because "claims relating to the IMVFA have been decided by the District Courts without the need for input from the IMVR [Board]." *Id.* at *2. In support of its conclusion, the court in *Rolls-Royce* relied on three other cases from this district. *See Servpro Indust., Inc. v. Schmidt*, No. 94 C 5866, 1997 WL 158316 (N.D. Ill. Mar. 31, 1997) (determining breach of contract and trademark claims on summary judgment); *Chrysler Credit Corp. v. Anthony Dodge, Inc.*, No. 92 C 5273, 1996 WL 509886 (N.D. Ill. Sept. 4, 1996) (determining claims of reasonableness and breach of contract on summary judgment); *Northwestern Buick, Inc. v. Nissan Motor Corp. in U.S.A.*, No. 89 C 9062, 1990 WL 43316 (N.D. Ill. Mar. 29, 1990) (dismissing case for lack of standing where the plaintiff was not yet a franchisee of the defendant). However, these cases were all filed prior to the expansion of the role of the Board in 1995,[9] a fact that the court in *Rolls-Royce* did not address. The early cases are factually distinguishable in that Illinois had yet to establish a comprehensive non-judicial review system for franchise actions and there were not, therefore, currently pending parallel actions before the Board to consider. In light of the factual distinctions between the posture of the cases, the court rejects Nissan's argument and concludes

---

[9] The Illinois Supreme Court found that the provision of the IMVFA that granted courts discretion to determine whether certain franchise actions were in the public interest violated the doctrine of separation of powers because the authority to determine public interest is vested in the legislature and may not be delegated. *Fields Jeep-Eagle, Inc. v Chrysler Corp.*, 645 N.E.2d 946, 954 (Ill. 1994). Subsequently, procedures were instituted granting the Board fact-finding functions as an administrative board. *See* 815 Ill. Comp. Stat. § 710/29; *Gen. Motors Corp. v. State Motor Vehicle Bd.*, 862 N.E.2d 209, 226 (Ill. 2007).

that abstention is appropriate.  In light of this ruling, the court does not fully reach M'Lady's arguments on ripeness, exhaustion, and primary jurisdiction, or Nissan's arguments on concurrent jurisdiction.

Although in some situations a stay is appropriate, that is not the situation here.  Nissan has raised before the Board, as defenses to M'Lady's protest regarding Nissan's attempted termination of the franchise agreement, the issues of whether it has a franchise agreement with M'Lady and whether the Board has jurisdiction.  In November 2007, upon filing this case, Nissan filed a motion to stay the Board proceedings pending resolution of this case.  The matter will now return to the Board for resolution.  Once the Board rules, it will have necessarily resolved the issues that Nissan seeks to have this court determine and the declaratory judgment claims will be moot.  Therefore, a stay is inappropriate and the case is dismissed.

### III. CONCLUSION

For the reasons above, the court grants the defendant's motion to dismiss.  The case is terminated.

ENTER:

\_\_\_/s/_____
JOAN B. GOTTSCHALL
United States District Judge

DATED: August 29, 2008